UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| PEERLESS INDUSTRIES, INC., | |
|---|---|
| Plaintiff, | Case No. 1:11-cv-1768 |
| vs. | Honorable Joan H. Lefkow |
| CRIMSON AV, LLC, and VLADIMIR GLEYZER, | Magistrate Judge Susan Cox |
| Defendants. | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50

Defendants, CRIMSON AV, LLC ("Crimson") and VLADIMIR GLEYZER ("Gleyzer'), by and through their attorneys, Johnson & Bell, Ltd., hereby move this Honorable Court for judgment as a matter of law on Plaintiff's claim and motion for preliminary injunction. In support of their motion, Crimson and Gleyzer state as follows:

### I. Introduction

A partial hearing on Plaintiff's Motion for Preliminary Injunction was held in this matter on June 7, 2011. Plaintiff was permitted to present its case-in-chief and closed their case. Because of time constraints, Crimson and Gleyzer were not permitted to present their case and call witnesses. A preliminary injunction may not issue in Plaintiff's favor absent Crimson and Gleyzer being afforded the opportunity to present their defense.

Regardless, Plaintiff has thus far utterly failed in its burden of establishing the elements necessary for issuance of a preliminary injunction and the Court should enter judgment on Plaintiff's claim for injunctive relief as a matter of law.

*First*, Plaintiff has failed to establish a likelihood of success on the merits. Plaintiff seeks a preliminary injunction on the basis of its tortious interference claim against Crimson and Gleyzer. *See* Motion, at ¶¶ 21-25. The testimony and evidence adduced in this matter

have established that Crimson has at all times functioned as Sycamore's agent. Sycamore provides all Crimson's funding and controls its operations. Conversely, Crimson has the ability to bind Sycamore with Sycamore's approval. As a matter of law, an agent cannot tortiously interfere with a principal's contract and Plaintiff's tortious interference claim must fail as a result.

Even assuming *arguendo* that Crimson is <u>not</u> Sycamore's agent and is a distinct legal entity, Plaintiff's claim must still fail as the Court is without the authority to enter the relief requested by Plaintiff. During opening arguments, counsel for Plaintiff asked the Court to extend the restrictive period under which *Sycamore* may sell "Similar Products" beyond the one-year after termination provided for in the Supply Agreement. The Supply Agreement is between Plaintiff and Sycamore, not Crimson. Sycamore is not a party to this litigation and the Court is without authority to enter an injunction affecting or altering the contract rights of Sycamore under the Supply Agreement.

Further, Plaintiff has failed to establish Sycamore sold any "Similar Products" to Crimson during the one-year restrictive period in the Supply Agreement. The testimony of James Walters and Nicholas Belcore failed to establish the sale of any "Similar Products" as that term is defined in the Supply Agreement. Mr. Walters testified that he has never seen the Supply Agreement and that he has "no knowledge" of the Supply Agreement. Mr. Belcore testified that he could not tell the difference between a "Peerless Product" and a "Similar Product" as those terms are defined in the Supply Agreement. Mr. Walters and Mr. Belcore's testimony was unclear to say the least as neither could articulate any standard for determining what a "Similar Product" is.

*Second*, even if Plaintiff did elicit testimony regarding "Similar Products" allegedly sent by Sycamore to Crimson, there would still be no basis for entering a preliminary

injunction. The only evidence adduced in this matter established that the Supply Agreement was terminated as of December 19, 2009. Thus, Sycamore was free to sell "Similar Products" anytime after December 19, 2010. There is simply no basis for injunctive relief.

## II. Argument

### A. Plaintiff Has Not Established A Likelihood Of Success On The Merits; Its Claims And/Or The Relief It Seeks Are Barred As A Matter Of Law

#### 1. The Evidence Adduced At Hearing Establishes That Crimson Is Sycamore's Agent; An Agent (Crimson) Cannot Tortiously Interfere With A Principle's (Sycamore) Contract As A Matter Of Law

The evidence adduced thus far at the preliminary injunction hearing established that Crimson is Sycamore's agent. Specifically, Mr. Gleyzer testified that:

- Sycamore provides all of the funding for Crimson;

- Sycamore controls Crimson and directs its operations; and

- Crimson can bind Sycamore with Sycamore's approval.

"The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742, 745 (7th Cir. 1998). Under this standard, there is no doubt that Crimson is Sycamore's agent. Plaintiff presented no evidence at the preliminary injunction hearing on June 7, 2011 to refute Mr. Gleyzer's testimony.

The agency relationship between Crimson and Sycamore defeats any claim for tortious interference with contract by Plaintiff against Crimson. To state a claim for tortious interference with a contract, "Illinois law requires that the contract exists between the plaintiff and a third party other than the defendant...In other words, *a party or its agent cannot tortiously interfere with its own business relationship.*" *Ellsworth v. URS Constr.*

*Serv.*, 2005 U.S. Dist. LEXIS 12383, at *19 (Mar. 11, 2005) (emphasis added).[1] Mr. Gleyzer's testimony established that Crimson has at all times functioned as Sycamore's agent. Crimson cannot therefore tortiously interfere with Sycamore's contract with Plaintiff – *i.e.*, the Supply Agreement.

### 2. If Crimson Is Not Sycamore's Agent And Is A Wholly Distinct Separate Entity, The Court Is Without Jurisdiction To Enter The Relief Sought By Plaintiff – Extending The Restrictive Covenant In The Supply Agreement Beyond The Prescribed Term Thereby Determining And Altering The Contractual Rights Of A Non-Party And Enjoining A Non-Party

Assuming *arguendo* that Plaintiff had presented some evidence that Crimson was not Sycamore's agent, the Court would be without jurisdiction to enter the relief sought by Plaintiff – *i.e.*, extending the restriction on "Similar Products" beyond the one year stated in the Supply Agreement. Counsel for Plaintiff asked the Court during his opening statement to alter the Supply Agreement between Plaintiff and *Sycamore* to extend the restrictive period beyond the one-year restriction.[2] Sycamore is thus an indispensable party to this litigation and the relief requested by Plaintiff may not be entered unless Sycamore is made a party to this litigation. The relief requested by Plaintiff is improper and the Court may not enter an order extending the one-year restriction in the Supply Agreement unless Sycamore is party to this case.

"The precedent supports the proposition that a contracting party is the paradigm of an indispensable party." *United States ex rel. Hall v. Tribal Devel. Corp.*, 100 F.3d 476, 479

---

[1] A limited exception to the principle that an agent cannot tortiously interfere with the contract of a principal applies if the agent acts maliciously. No evidence of malicious conduct by Crimson or Gleyzer was adduced at the preliminary injunction hearing. Indeed, Mr. Gleyzer testified that he was careful to respect the terms of his own non-compete agreement with Plaintiff and did not start work at Crimson until August 2010 as a result.

[2] Plaintiff provided as sole support for its request *JAK Productions, Inc. v. Wiza*, 986 F.2d 1080 (7th Cir. 1993) which is a case decided under Indiana law. Regardless, both parties to the contract at issue in *JAK* were parties in the pending litigation.

4

(7th Cir. 1996) (quoting *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F.Supp. 518, 527 (D. Conn. 1991)); *see also Neil v. Zell*, 2010 U.S. Dist. LEXIS 80744, at *10 (N.D. Ill. Aug. 9, 2010) ("Indeed, no principle is more deeply embedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable"); *TFG, Inc. v. Tapy*, 1987 U.S. Dist. LEXIS 9013, at *2, n. 2 (N.D. Ill. Sep. 25, 1987) ("JAT is an indispensable party under Fed.R.Civ.P. 19 because it is a party to the contract which TFG seeks to rescind and has rights and duties under it").

Plaintiff seeks to alter the contract terms of the Supply Agreement by extending the restriction on the sale of "Similar Products" beyond one year following termination. Plaintiff may not ask the Court to alter the terms of the Supply Agreement in an action in which Sycamore is not a party. *Hall, Neil, TFG supra*.[3]

In the end, either: (1) Crimson is the agent for Sycamore in which case Plaintiff's claim for tortious interference must fail because an agent cannot tortiously interfere with a principal's contract as a matter of law; or (2) Sycamore is a distinct legal entity from Crimson in which case the Court is without jurisdiction to entertain the relief sought by Plaintiff (*i.e.*, altering the Supply Agreement to extend the one-year restriction on "Similar Products") because Sycamore is a party to the Supply Agreement and therefore a necessary party to enter any such relief. Either way, Plaintiff has not – and cannot – establish a likelihood of success on the merits of its claim.

---

[3] Further, the relief requested by Plaintiff would have the effect of enjoining Sycamore (a non-party) from selling its products despite the fact that no restriction in the Supply Agreement remains and injunctive relief should be denied on this basis. *See Nat'l Spiritual Assembly of the Baha'is of the United States under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Baha'is of the United States of America, Inc.*, 547 F.Supp.2d 879, 885 (N.D. Ill. 2008) ("As a general rule, a court may not enter an injunction against a person who has not been made a party to the case before it")

### 3. Plaintiff Has Put Forth No Credible Evidence That Crimson/Sycamore Has Sold "Similar Products" As That Term Is Defined In The Supply Agreement During The Restricted Period[4]

Even if Plaintiff could navigate the hurdles of the agency relationship between Sycamore and Crimson and Sycamore's absence from this lawsuit, its motion for preliminary injunction still must fail as it has failed to put forth any evidence that "Similar Products" were sold during then restricted period – *i.e.*, one year following the termination of the Supply Agreement.[5]

#### a. Mr. Walters and Mr. Belcore's testimony is insufficient to establish that any Crimson product is a "Similar Product" to any of Plaintiff's products

In an attempt to establish that some of Crimson's products are "Similar Products" to Plaintiff's products, Plaintiff presented the testimony of James Walters and Nicholas Belcore. Mr. Walters and Mr. Belcore's testimony regarding what constitutes a "Similar Product" was confusing, at best, and nonsensical, at worst.

As an initial matter, neither Mr. Walters nor Mr. Blecore could define what a "Similar Product" under the Supply Agreement is. In fact, Mr. Walters testified that he has never read the Supply Agreement, has no knowledge of the Supply Agreement, and cannot state what the standard is for articulating a reasonable judgment as to when a product is similar to one of Plaintiff's products:

> Q. Did you – as part of your work on this case, did you have occasion to review the supply agreement between Peerless and Sycamore:
>
> A. No.

---

[4] As will be demonstrated *infra* Section II(B)(1), the only evidence put forth at the June 7, 2011 hearing established that the Supply Agreement terminated on December 19, 2009.

[5] Of course, Plaintiff has now abandoned its claim that Crimson sold any "Peerless Products" – despite making that argument in its Complaint, its Motion for Preliminary Injunction, and its Answers to Interrogatories.

*See* Walters Dep. Ex. A, at p. 9.

> Q. You would claim that that's a Peerless product as defined in the supply agreement with sycamore:
>
> The Witness: I have no knowledge of the Sycamore contract.

*Id.*, at p. 26 (objections omitted)

> Q. But you never seen the supply agreement or how similar products are defined under the supply agreement, right?
>
> The Witness: I have not seen the supply agreement.

*Id.*, at p. 87 (objections omitted).

> Q. Can you tell me what the standard is for articulating what a reasonable judgment is at Peerless – as to similarity of product?
>
> The Witness: I do not.

*Id.*, at pp.163-64 (objections omitted).

Mr. Belcore similarly testified that he could not tell the difference between a "Peerless Product" and a "Similar Product":

> Q: You said Peerless product or a like product. Is there a distinction to be drawn there between a Peerless product and a like product?
>
> A: Between Peerless and Peerless like?
>
> Q: Right, where is a Peerless like a Peerless product?
>
> A: I assume there is a distinction or it wouldn't be designated as such, but I couldn't articulate the differences.

*See* Belcore Dep., Ex. B, at p. 37.

Obviously, if Mr. Walters has never seen the Supply Agreement and has no knowledge of it and Mr. Belcore cannot tell what the difference is between a "Peerless Product" and a "Similar Product" is, they cannot possibly render any credible testimony regarding whether any Sycamore/Crimson products are covered as "Similar Products" under the Supply Agreement.

Moreover, the inherent unreliability of Mr. Walters' testimony and the completely

7

arbitrary determination about what constitutes a "Similar Product" was demonstrated by the fact that Mr. Walters changed his testimony from his deposition (just four days earlier) to include the A55 and the A80 because he subsequently noticed a washer and the spacing on certain brackets of those models that was the same as the washer and spacing on Plaintiff's products. What constitutes a "Similar Product" is an indefinite standard that even Plaintiff's own witnesses cannot articulate and agree upon. Indeed, Mr. Walters and Mr. Belcore's set forth very different standards for what constitutes "Similar Products" in their testimony. Mr. Walters testified that he evaluated it "*from a mechanical side* when something looks like it or if it is assembled similarly or it's made similarly" (*see* Walters Dep., Ex. A, at p. 86); whereas, Mr. Belcore defined similarity as "a product that one of our customers would look at and say Peerless made that" (*see* Belcore Dep., Ex. B, at p. 40).

Yet, Plaintiff asks the Court to determine that Sycamore has shipped "Similar Products" and thereby enjoin them from conducting any future business with Crimson as a consequence. Plaintiff's request is entirely unreasonable given its own inability to intelligibly articulate what constitutes a "Similar Product."

### 4. The Supply Agreement Between Plaintiff And Sycamore Is Overly Broad And Unenforceable As A Matter Of Law

Plaintiff seeks an injunction to prohibit the sale of "Similar Products" as that term is defined in the Supply Agreement. "Similar Products" are defined as follows:

> "Similar Products" means any mounts for any audiovisual equipment or monitors which, in Buyer's reasonable judgment, has substantially the same appearance as or reflects or contains any part of the design of any Peerless Product. During the term of this Agreement and for one (1) year thereafter, Supplier shall not sell or otherwise provide any Similar Products to anyone other than Buyer in the "Territory" …

*See* Supply Agreement, D's Ex. 1, at § 2.

In the end, Plaintiff is asserting an overly broad, unreasonable clause that is not "tempered" to allow Crimson to continue to exist. Such a "blanket bar" is unenforceable. *See*

8

*Oce North America, Inc. v. Brazeau*, 2010 U.S. Dist. LEXIS 25523 * 26 (N.D. Ill. 2010), (citing *Cambridge Engineering, Inc. v. Mercury Partners*, 879 N.E.2d 512 (1st Dist. 2007)).

In its initial motion for preliminary injunction, Plaintiff seeks an injunction barring Crimson and Gleyzer from selling any products supplied by Sycamore. While Plaintiff narrowed its scope of products at the preliminary injunction hearing on June 7, 2011, the covenants contained in the Supply Agreement are overly broad. Further, Mr. Gleyzer has testified that the enforcement of Plaintiff's injunction and granting the relief it seeks would be devastating to Crimson. *See* Gleyzer Aff., Ex. C, at ¶ 25 ("Granting the injunction sought by Peerless would …put Crimson out of business and would prevent it from having any financial resources to mount a defense to this unfounded litigation. … The result is to cause the loss of jobs of the people who work at Crimson and take bread off my family's table"). The restriction on "Similar Products" is overly broad and is not capable of being modified by the court. *Oce North America*, 2010 U.S. Dist. LEXIS 25523, at *28-29 (court declined to modify the clause because when a clause is "patently unfair" or requires "drastic modifications" that would "discourag[e] the narrow and precise draftsmanship which should be reflected in written agreements…The Court will not re-write this agreement to save plaintiff from the consequences of the one it drafted").[6]

---

[6] The overly broad nature of the covenant (as well as its inherently subjective and indeterminate nature) was evidenced by Mr. Walters during his testimony where he stated that Sycamore would be prohibited from making a copying the product one of Plaintiff's competitors:

> Q: If Sycamore copied this product that is in Exhibit 16 and Crimson were to offer it for sale, would it fall under the supply agreement between Peerless and Sycamore as being either a Peerless product or a similar product of Peerless?
>
> THE WITNESS: Like I said before, it would be a blatant copy.
>
> BY MR. DULIN: Q. If Sycamore made a copy of another competitor's product, would they be prohibited from doing so under the Supply Agreement?
>
> THE WITNESS: They should.

*See* Walters Dep., Ex. A, at pp. 245:2-246:6).

### B. Plaintiff Has An Adequate Remedy At Law And Is Not Entitled To Injunctive Relief As The One-Year Restriction On "Similar Products" Has Expired

Plaintiff's request for injunctive relief is entirely dependent upon its wholly unsupported contention that the Supply Agreement was not terminated until March 23, 2010 thereby extending the restriction on Sycamore's selling "Similar Products" until March 23, 2011. Plaintiff offered no evidence (testimony, affidavits, or documents) to support its claim. The only evidence adduced firmly established that the Supply Agreement was terminated on December 19, 2009 and that any restriction on "Similar Products" expired on December 19, 2010. The only "sale" of a Sycamore product in the restricted period was for $20.70 and it has not been established that "sale" even involved a "Similar Product." There is simply no basis for the injunctive relief sought by Plaintiff as the one-year restriction on "Similar Products" has long since expired and there has been no evidence of any sale of a "Similar Product" during the restricted period.

Further, injunctive relief is not appropriate because Plaintiff has failed to establish an inadequate remedy at law. The only evidence adduced at the hearing concerning an inadequate remedy at law was the self-serving and conclusory testimony of Mr. Belcore regarding his speculation Plaintiff's customers perceptions and the possible effect on Plaintiff's business. Mr. Belcore's testimony was entirely insufficient to establish an inadequate remedy at law.

#### 1. The One-Year Restriction Expired On December 19, 2010 And There Is No Basis For The Injunctive Relief Plaintiff Seeks

The Supply Agreement provides in relevant part that "This Agreement shall take effect and the term of this Agreement shall commence on the date first above written, and such term shall continue and this Agreement shall remain in effect *until either party notifies the other that*

*it elects to terminate the Agreement.*" *See* Supply Agreement, D's Ex. 1, at § 12. At the preliminary injunction hearing on June 7, 2011, Plaintiff submitted no evidence concerning the date when the Supply Agreement was terminated. Indeed, Mr. Belcore testified that he had no understanding of when the Supply Agreement was terminated. *See* Belcore Dep., Ex. B, at p. 39.

In contrast, Defendants have submitted ample evidence that the Supply Agreement was terminated – by Plaintiff – on December 19, 2009. This evidence includes: (1) the Supplemental Declaration of Mr. Jin (D's Ex. 7); and (2) Plaintiff's own documentation produce in this litigation (D's Ex. 7(a) and (b)). Both of these items are appropriately considered by the Court in ruling on Plaintiff's motion for preliminary injunction.

Under Federal Rule of Civil Procedure 43(c), "When a motion relies on facts outside the record, the court may hear the matter on affidavits ..." Under the operation of 28 U.S. § 1746, unsworn declarations may be used in the place of affidavits. Further, at preliminary injunction hearings, the Court has broad discretion and the evidentiary requirements are less formal than at trial. *Sierra Club v. F.D.I.C.* 992 F.2d 545, 551 (5th Cir.) (cited by *Heidelberg Harris Inc. v. Mitsubishi Heavy Indust.*, 1996 U.S. Dist. LEXIS 258 (N.D. Ill. 1996)).

Affidavits are appropriately considered at a preliminary injunction hearings. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171-1172 (7th Cir. 1997) (court affirmed preliminary injunction based solely on declarations, holding that affidavits are "fully admissible" in preliminary injunction proceedings, and that it would be "error" to conclude that affidavits are inadmissible in such hearings). Further, simply objecting to an affidavit or declaration in a preliminary injunction hearing on the basis of hearsay will not bar the declaration. *Goodman v. Ill. Dept. of Fin. & Prof. Reg.*, 430 F.3d 432, 439 (7th Cir. 2005).

Mr. Jin's Supplemental Declaration is thus appropriately to be considered by the Court as evidence for purposes of deciding Plaintiff's motion for preliminary injunction and establishes that

11

the Supply Agreement terminated on December 19, 2009, when Plaintiff notified Sycamore of its intent to terminate the Supply Agreement. *See* Jin Dec., D's Ex. 7, at ¶ 4 ("On December 19, 2009, Peerless notified Sycamore that Peerless was terminating the Supply Agreement").

Even if the Court decides that it will not consider Mr. Jin's Supplemental Declaration, the documents attached to the Declaration firmly establish that the Supply Agreement was terminated on December 19, 2009. These emails from Plaintiff's President, Mr. Campagna, were produced by Plaintiff in this litigation (they bear a "P" Bates No. designation) and there can be no foundational objection to them or any dispute as to their authenticity as a result. *Fenje v. Feld*, 301 F.Supp. 781 (N.D. Ill. 2003) (documents produced by an opponent during discovery may be treated as authentic); *see also Int'l Paper Co. v. Androscoggin Energy LLC*, 2002 U.S. Dist. LEXIS 18386, at *5(N.D. Ill. Sept. 26, 2002) ("A party's very act of production is implicit authentication") (quoting *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982)). The two letters attached to Mr. Jin's Supplemental Declaration are admissible evidence and conclusively establish that the contract was terminated upon receipt of notice of termination – *i.e.*, December 19, 2009.

As demonstrated in Def.'s Ex. 8, a *de minimis* "sale" of Sycamore product for $20.70 occurred on November 18, 2010. However, no evidence has been adduced that this "sale" was of a "Similar Product." This is the only "sale" of Sycamore Product within the restricted period – *i.e.*, between December 19, 2009 and December 19, 2010.[7] Simply, Plaintiff has not established that there was any sale of "Similar Products" within the restricted period.[8] There is no basis for a preliminary injunction as a result.

---

[7] The December 11, 2010 shipment of product was not shipped until March 29, 2011 (*see* D's Ex. 8) and is not considered a sale until that time. *See* UCC § 2-401 ("...title passes to buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods...").

[8] Of course, aside from failing to establish the timing of any sale of "Similar Products" within the restricted period, Plaintiff has also failed to establish that any of Crimson's products are "Similar Products" as defined in the Supply Agreement. *See* Section II-A(3) *supra*.

### 2. The Testimony Adduced At The Preliminary Injunction Hearing Regarding Customer Goodwill Was Entirely Speculative And Insufficient To Establish An Inadequate Remedy At Law

Plaintiff attempts to establish an inadequate remedy at law by summarily stating in its motion for preliminary injunction that "Peerless stands to lose ... substantial customer goodwill and damaged relationships with its customers and distributors. These harms are 'difficult, if not impossible, to measure." *See* Motion at p. 12.

Plaintiff supplies no affidavit or other documentary evidence to support this assertion. Rather, at the preliminary injunction hearing, Plaintiff presented the self-serving and conclusory testimony of Mr. Belcore to establish loss of goodwill. Mr. Belcore's testimony consisted of nothing more than rank speculation as to how some unidentified customers of Plaintiff might react to the introduction of Crimson's products into the marketplace. Mr. Belcore's testimony is insufficient to establish loss of good will and an inadequate remedy at law. *Medline Indus. v. Grubb*, 670 F. Supp. 831, 838 (N.D. Ill. 1987) (where plaintiff did not call any customers to testify regarding diversion or loss of goodwill, but rather presented testimony of corporate officers and employees with no knowledge of loss of goodwill, preliminary injunction was denied based on the failure to demonstrate an inadequate remedy at law), *see also Cintas Corp. v. Perry*, 2004 U.S. Dist. LEXIS 17842, at * 60 (N.D. Ill. Aug. 19, 2004) (where plaintiff failed to allege loss of any single customer or evidence of any loss of good will due to employee's activities, no inadequate remedy existed and magistrate recommended a denial of the preliminary injunction).

### C. The Court May Not Enter A Preliminary Injunction Without Affording Crimson And Gleyzer An Opportunity To Present A Defense

Should the Court determine that Plaintiff has met its burden of establishing the *prima facie* elements necessary for a preliminary injunction, the Court should still not enter the relief

requested by Plaintiff as Crimson and Gleyzer have not been afforded the opportunity to present their defense to Plaintiff's claims. Plaintiff presented and closed its case on June 7, 2011. The Court thereafter adjourned the proceedings before Crimson and Gleyzer presented their defense and indicated that it would issues a ruling by Friday, June 10, 2011. Any ruling other than denying Plaintiff's motion would not be proper at this juncture.

In *Swiderek v. Medeco Security Locks, Inc.*, 680 F.2d 37 (7th Cir. 1981), the Seventh Circuit held that:

> Rule 65(b) provides that no preliminary injunction shall be issued without notice to the adverse party. Notice implies the opportunity to be heard. Hearing requires trial on the issue or issues of fact. Trial on the issue of fact necessitates opportunity to present evidence *and not by only one side of the controversy*.

*Swiderek*, 680 F.2d at 38 (emphasis added) (quoting *Sims v. Greene*, 161 F.2d 87 (3rd Cir. 1947)). Further, in ruling upon a preliminary injunction motion, a district court is required to make findings of fact and "finding facts requires the exercise by an impartial tribunal of its function of weighing and appraising evidence offered, *not by one party to the controversy alone, but by both.*" *Sims*, 161 F.2d at 89 (emphasis added).

In the present case, Crimson and Gleyzer have not been afforded an opportunity to present their evidence to be weighed by the Court. Significantly, Crimson and Gleyzer would offer Mr. Gleyzer's testimony in their case. Mr. Gleyzer would refute Mr. Walters and Mr. Belcore's testimony concerning "Similar Products." For example, Mr. Walters cites the fact that Crimson's CA1 and Plaintiff's ACC560 have the "same 1.5 NPT" as a basis for concluded that they are "Similar Products." *See* Pl.'s Ex. 43, at p. 9. Mr. Gleyzer could provide testimony that "NPT" is simply a United States standard for tapered threads used on threaded pipes and nothing proprietary or unique to Plaintiff. *See* http://en.wikipedia.org/wiki/National_pipe_thread. Mr. Gleyzer would also render testimony that: (1) many of Plaintiff's products identified in Pl.'s Ex. 43 were never made by Sycamore for Plaintiff and therefore Sycamore would have no basis for

crafting a similar design to Plaintiff's products; and (2) most of the similarities noted by Mr. Walters in Pl.'s Ex. 43 are simply industry standard features contained on most products in the industry.

The point is that the Court has only heard one side of a story. Crimson and Gleyzer maintain that Plaintiff has thoroughly failed to meet its burden for a preliminary injunction. If the Court is inclined to rule that Plaintiff has met its burden, issuing injunctive relief without affording Crimson and Gleyzer the opportunity to present their case would not be proper. *Swiderek, Sims supra.*[9]

### III.  Conclusion

By its own admission, Plaintiff is a large player in the audiovisual mounting industry with over $90 million in sales annually. *See* Belcore Dep., Ex. B, at p. 15. In contrast, Crimson is a new company that has made a total of less than $80,000 in sales. See D's Ex. 8. This lawsuit is brazen attempt to thwart Crimson's entry into the marketplace by asserting a convoluted theory to extend a restrictive covenant that has long since expired. Plaintiff has presented no basis for doing so and Crimson and Gleyzer respectfully request that judgment as a matter of law be entered on Plaintiff's motion for preliminary injunction.

CRIMSON AV, LLC and<br>
VLADIMIR GLEYZER<br><br>
By:  /s/ Victor J. Pioli

---

[9] At the conclusion of the hearing on June 7, 2011, counsel for Plaintiff indicated that Plaintiff sought to prevent Crimson from displaying brochures and product literature at the InfoComm trade show. To the extent that the Court may be inclined to grant any injunctive relief, it should not prohibit the distribution of any product literature. As Mr. Belcore testified, "the problem with reviewing things online [and on paper] is in the absence of seeing the physical product, you can only make one dimensional observations." *See* Belcore Dep., at p. 58. Thus, there is little, if any, danger of customer confusion based on written materials and no basis for enjoining their use.

Joseph R. Marconi (#01760173)
Victor J. Pioli (#6256527)
Christopher W. Loweth (#6276635)
JOHNSON & BELL, LTD.
33 W. Monroe Street
Suite 2700
Chicago, Illinois 60603
(312) 372-0770