# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1768 | **DATE** | 8/24/2012 |
| **CASE TITLE** |  | Peerless Industries, In. vs. Crimson AV, LLC | |

**DOCKET ENTRY TEXT**

Defendants' motion for judgment on the pleadings [#73] is granted. Counts IV and VII of the third amended complaint are dismissed with prejudice. Defendants' request for costs and attorney's fees is denied. Status hearing is set for 11/27/2012 at 8:30 a.m. See statement below.

■[ For further details see text below.]   Notices mailed by judicial staff.

# STATEMENT

  Peerless Industries, Inc. is a leading manufacturer of audio-visual mounts; Crimson AV, LLC is a new competitor; and Vladimir Gleyzer is a former Peerless employee who is now the managing director at Crimson. Peerless has filed a seven count complaint against Crimson and Gleyzer (collectively, "defendants") asserting statutory and common law claims arising from Crimson's manufacture and sale of television mounts. On April 28, 2011, Peerless filed a motion for a preliminary injunction seeking to enjoin defendants from selling or offering to sell products received in breach of a supply agreement between Peerless and Sycamore Manufacturing Co., Ltd., a former Peerless supplier that now works with Crimson. After a hearing, the court denied Peerless's motion on the ground that Peerless had not shown that the supply agreement's non-competition provision was valid and enforceable. *See* Dkt. #52. Presently before the court is defendants' motion for judgment on the pleadings as to Peerless's claims for tortious interference with contract and civil conspiracy. Dkt. #73. Defendants' main argument is that the court's preliminary injunction ruling establishes that the non-competition provision is invalid and that therefore these claims cannot succeed as a matter of law.

Legal Standard

  A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *N. Ind. Gun & Outdoor Shows, Inc.* v. *City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A grant of judgment on the pleadings is appropriate where "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Forseth* v. *Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (quoting *Thomason* v. *Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)). In considering a Rule 12(c) motion, the court must accept all well-pleaded allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Id.* at 371.

**STATEMENT**

Analysis

    I.      Tortious Interference with Contract

Peerless must plead the following in order to state a claim for tortious interference with contract: (1) the existence of a valid and enforceable contract between the plaintiff and another, (2) defendants' awareness of the contract, (3) defendants' intentional and unjustified inducement of a breach of the contract, (4) subsequent breach of contract caused by the defendants' conduct, and (5) damages. *Dopkeen* v. *Whitaker*, 926 N.E.2d 794, 797, 399 Ill. App. 2d 682, 339 Ill. Dec. 319 (2010); *Burrell* v. *City of Mattoon*, 378 F.3d 642, 651–52 (7th Cir. 2004).[1] Peerless alleges that defendants induced Sycamore to breach the non-competition provision of the Sycamore-Peerless supply agreement by selling "Similar Products" in North America.[2]

The court, in denying Peerless's motion for a preliminary injunction, concluded that the provision in the supply agreement that bars Sycamore from selling Similar Products is unenforceable under Illinois law. Although the court's decision relied in part on the testimony offered at the preliminary injunction hearing, the same conclusion could have been reached by reference to the pleadings alone. The relevant portions of the court's opinion are reproduced below:

> It is well-established that to be enforceable, a restrictive covenant must be reasonable. *Bus. Records Corp.* v. *Lueth*, 981 F.2d 957, 961 (7th Cir.1992); *Hamer Holding Group, Inc.* v. *Elmore*, 560 N.E.2d 907, 915, 202 Ill. App. 3d 944, 148 Ill. Dec. 310 (1990); *Union Trust & Sav. Bank of E. St. Louis* v. *Kinloch Long-Distance Tel. Co. of Mo.*, 258 Ill. 202, 207, 101 N.E. 535 (1913). The terms of a restrictive covenant (1) must not be greater than necessary to protect the employer, (2) must not be oppressive to the employee, and (3) must not injure the general public. *Liautaud* v. *Liautaud*, 221 F.3d 981, 987 (7th Cir. 2000) (collecting Illinois cases). Courts must also consider the propriety of the restrictions in terms of their length in time, their territorial scope, and the activities they restrict. *Cambridge Eng'g, Inc.* v. *Mercury Partners 90 BI, Inc.*, 879 N.E.2d 512, 522, 378 Ill. App. 3d 437, 316 Ill. Dec. 445 (2007); *Lueth*, 981 F.2d at 961. Whether a restrictive covenant is reasonable is a question of law to be decided by the court. *Liautaud*, 221 F.3d 986. Reasonableness cannot be determined in the abstract, however, and it necessarily depends on the unique facts and circumstances of each case. *Id.* at 987.
>
> The parties agree that all of the products at issue must be considered under the provision in the supply agreement that bars Sycamore from selling Similar Products for one year after termination of the agreement. The language of the competition provision is very broad. It bars Sycamore from selling any audiovisual equipment that has substantially the same appearance as or reflects or contains "any part of the design of any Peerless Product." Thus, the feature of the Peerless Product that appears in the Similar Product need not be aesthetically or functionally significant to the Peerless Product or the Similar Product. Nor does it need to be likely that one product could not be distinguished from the other in the marketplace. Finally, the determination of whether any equipment can be considered a Similar Product shall be made according to Peerless's "reasonable judgment."
>
>                                                 ∗ ∗ ∗[3]
>
> [T]he scope of products that Sycamore is barred from providing is unworkably difficult to determine. . . .[4] It is unfairly burdensome to expect Sycamore to review not only all of its products, but also all of Peerless's current and prior products, in enough detail so as to identify "any" part of "any" Peerless Product that is "reflect[ed]" in a Sycamore product. Finally, if

the determination of what constitutes a Similar Product shall be made solely according to "Peerless' reasonable judgment," then the non-competition provision may like the sword of Damocles restrain Sycamore from producing any competing product rather than risk liability. Dkt. #52 at 5–8.

Peerless argues that the court's conclusion was preliminary and that it should be entitled to produce additional evidence regarding issues related to the non-competition provision, including the broad range and appearance and functionality of audio-visual products in the marketplace, the scope of Sycamore's product distribution and sales, the scope of Peerless's sales of "products analogous to Sycamore's Similar Products," "[t]he identification of Peerless' product line with the functional and identifying features contained in Sycamore's Similar Products," and Sycamore's interpretation of the supply agreement and its understanding of the business reasons underlying the agreement. None of this evidence would narrow the broad scope of the term "Similar Products," however. As the court noted in its prior opinion, the supply agreement's definition of "Similar Products" uses subjective terms such as "substantially the same appearance" and "reflects" and is limited solely by reference to Peerless's "reasonable judgment." While Peerless is correct that the court's prior ruling was preliminary, the court sees no reason not to adhere to its prior conclusion that term "Similar Products" is not reasonably defined.

Peerless also argues that the court should exercise its authority to "blue pencil" provisions of the non-competition provision that are overly broad. *See CUNA Mut. Life Ins. Co.* v. *Kuperman*, No. 97 C 6228, 1998 U.S. Dist LEXIS 622, at *27 (N.D. Ill. Jan. 20, 1998). Due to the technical nature of the non-competition provision at issue, however, it is not clear that the definition of "Similar Products" can be brought into conformity with Illinois law simply by adding or deleting a few offending terms. *Cf. id.* (court used its equitable power to limit non-competition agreement's prohibition to targeted marking to members of the "Motorola Employees Credit Union"). Moreover, Peerless has suggested no workable alternative to the definition contained in the supply agreement. The court therefore declines to exercise its discretion to modify the terms of the non-competition provision.

For the reasons set forth in its prior opinion, the court concludes that the provision in the supply agreement barring the sale of "Similar Products" is unenforceable. Defendants' motion for judgment on the pleadings as to Peerless's claim for tortious interference with contract will be granted.

II. Civil Conspiracy

"Civil conspiracy is an intentional tort defined as a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose of a lawful purpose by unlawful means." *Farwell* v. *Sr. Servs. Assocs., Inc.*, 970 N.E.2d 49, 58, 361 Ill. Dec. 49 (Ill. Ct. App. 2012). To state a claim for civil conspiracy, a plaintiff must allege (1) an agreement to accomplish an unlawful purposes, and (2) a tortious act committed in furtherance of the agreement. *Id.* Peerless alleges that defendants agreed to sell Similar Products in violation of the supply agreement's non-competition provision and that, in furtherance of this agreement, defendants sold Similar Products in North America.[5] Because the court has concluded that the non-competition provision banning the sale of Similar Products is unenforceable under Illinois law, however, an agreement to sell Similar Products would not be an agreement to accomplish an unlawful purpose. Therefore defendants' motion for judgment on the pleadings as to Peerless's civil conspiracy claim will be granted.

III. Attorney's Fees

Defendants request an award of costs and attorney's fees in connection with their answer to Peerless's third amended complaint and their motion for judgment on the pleadings. Under the well-established American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Travelers Cas. & Sur. Co. of Am.* v. *Pacific Gas & Elec. Co.*, 549 U.S. 443, 448, 127 S. Ct. 1199,

**STATEMENT**

167 L. Ed. 2d 178 (2007) (citation omitted). Defendants have set forth no justification for the award of attorney's fees on these routine pre-trial motions. Their request for attorney's fees is denied.

1. The parties agree that Illinois law governs Peerless's supplemental state law claims. Federal courts, reasoning by analogy to diversity cases, apply the choice of law rules of the forum state to supplemental state law claims. *Baltimore Orioles, Inc.* v. *Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986). Under Illinois law, a choice of law analysis is only required if there is a conflict of laws and the difference will affect the outcome of the case. *Townsend* v. *Sears, Roebuck & Co.*, 879 N.E.2d 893, 898, 227 Ill. 2d 147, 316 Ill. Dec. 505 (2007). The facts do not indicate that the law of any other jurisdiction would apply to Peerless's claims. Pursuant to a choice of law provision in the purchase agreement, Illinois law governs the non-competition provision. None of the parties challenge the validity of the choice of law provision or argues that choosing Illinois law is contrary to Illinois' fundamental public policy. *See Huthwaite, Inc.* v. *Randstad Gen. Partner (US)*, *LLOC*, No. 06 C 1548, 2006 WL 3065470, at *5 (N.D. Ill. Oct. 24, 2006).

2. The court assumes familiarity with the facts alleged in the complaint and the relevant provisions in the supply agreement. The supply agreement is described in detail in the court's ruling on Peerless's motion for a preliminary injunction.

3. The omitted portion summarizes the testimony of Nicholas Belcoure and James Walters, two Peerless employees. The court concluded that neither Belcoure nor Walters had demonstrated that there is a workable definition of Similar Products that is necessary to protect Peerless's business interest. The cited testimony is not necessary for the court's ruling on defendants' motion for judgment on the pleadings.

4. The omitted portion cites the testimony of Walters in further support of the court's conclusion that the scope of the products included in the non-competition provision is too difficult to determine. The summary of Walters's testimony is not necessary for the court's ruling on defendants' motion for judgment on the pleadings.

5. Peerless's third amended complaint alleges that defendants agreed to sell "Peerless Products and/or Similar Products" in violation of the supply agreement. In response to defendants' motion to dismiss, Peerless focuses only on the allegations regarding the sale of Similar Products. The court therefore concludes that Peerless's civil conspiracy claim is based only on the alleged sale of Similar Products. This conclusion is supported by the fact that Peerless's claim for tortious interference with contract alleges that Sycamore breached the supply agreement only by selling Similar Products.