# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PEERLESS INDUSTRIES, INC.,    )
    )
       Plaintiff,    )
    )      Case No. 1:11-cv-1768
    vs.    )
    )      Hon. Joan H. Lefkow
CRIMSON AV, LLC    )
    )      Magistrate Judge Susan E. Cox
       Defendant.    )
    )
    )

## PEERLESS' MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I

James D. Dasso (IL Bar No. 6193545)
Aaron J. Weinzierl (IL Bar No. 6294055)
Jonathan W. Garlough (IL Bar No. 6295597)
A. Taylor Corbitt (IL Bar No. 6299553)
FOLEY & LARDNER LLP
321 North Clark Street,
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700

4819-6550-7859.4

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iii

    Introduction ....................................................................................................................... 1

    Undisputed Facts .............................................................................................................. 1

    Summary Judgment Standard ......................................................................................... 2

    Argument ......................................................................................................................... 2

I.    The Court Should Grant Summary Judgment Of Infringement........................................ 2

    A.    The Only Claim Limitation At Issue Is "Longitudinal Surface Directly Joining." ................................................................................................................. 2

    B.    The Court Should Give This Limitation Its Plain Meaning.................................... 2

        1.    The Words of the Claim.............................................................................. 2

        2.    The Intrinsic Evidence ............................................................................... 4

    C.    Crimson's Construction Violates Fundamental Principles of Claim Construction........................................................................................................... 6

    D.    Properly Construed, Crimson Literally Infringes Claims 1-7 and 9-11 Of The '850 Patent. ................................................................................................... 8

II.    The Court Should Grant Summary Judgment That The Patent-in-Suit Is Not Invalid. ............................................................................................................................ 9

    A.    The '850 Patent is Presumed Valid...................................................................... 9

    B.    The Asserted Claims Are Not Invalid For Failure To Disclose The Best Mode Of Practicing The Invention. ..................................................................... 10

        1.    There Is No Evidence The Inventors Considered The Folded Tab Design To Be The Best Mode At The Time Of Filing. ........................... 10

        2.    There Is No Evidence The Inventors Concealed The Best Mode Of Practicing the Invention From The Public. ............................................... 12

    Conclusion ..................................................................................................................... 12

4819-6550-7859.4

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................2

*Atofina v. Great Lakes Chem. Corp.*,
441 F.3d 991 (Fed. Cir. 2006)..................................................................................4

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
381 F.3d 1371 (Fed. Cir. 2004)..............................................................................11

*Free Motion Fitness, Inc. v. Cybex Int'l*,
423 F.3d 1343 (Fed. Cir. 2005)................................................................................7

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
No. 09 C 4530, 2011 U.S. Dist. LEXIS 112672 (N.D. Ill. Sept. 9, 2011)................2

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
620 F.3d 1287 (Fed. Cir. 2010)........................................................................ 10-11

*In re Am. Acad. of Sci. Tech. Ctr.*,
367 F.3d 1359 (Fed. Cir. 2004)................................................................................6

*KCJ Corp. v. Kinetic Concepts, Inc.*,
223 F.3d 1351 (Fed. Cir. 2000)................................................................................7

*Kinik Co. v. ITC*,
362 F.3d 1359 (Fed. Cir. 2004)................................................................................4

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998)................................................................................6

*Mantech Envt'l Corp. v. Hudson Envt'l Servs., Inc.*,
152 F.3d 1368 (Fed. Cir. 1998)................................................................................7

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)(en banc), *aff'd*, 517 U.S. 370 (1996) ........................2

*Nystrom v. TREX Co.*,
424 F.3d 1136 (Fed. Cir. 2005)................................................................................3

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)............................................................................3-4

iii

*Pugh v. City of Attica,*
   259 F.3d 619 (7th Cir. 2001) ........................................................................2

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,*
   655 F.3d 1364 (Fed. Cir. 2011)...................................................................11

*Transclean Corp. v. Bridgewood Servs., Inc.,*
   290 F.3d 1364 (Fed. Cir. 2002)...................................................................10

*Uniloc USA, Inc. v. Microsoft Corp.,*
   632 F.3d 1292 (Fed. Cir. 2011)....................................................................2

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996).....................................................................3

*Whirlpool Corp. v. LG Elecs., Inc.,*
   423 F. Supp. 2d 730 (W.D. Mich. 2004) ....................................................7

## FEDERAL STATUTES

35 U.S.C. § 112 ................................................................................... 10-11

35 U.S.C. § 282 ......................................................................................10

## RULES

FED. R. CIV. P. 56(c) ................................................................................2

FED. R. CIV. P. 5(b)(2)(D) ......................................................................14

Local Rule 5.9 ........................................................................................14

Local Rule 56.1 ....................................................................................1, 6

## NON-PERIODICAL PUBLICATIONS

The New Shorter Oxford English Dictionary (Thumb Index Ed. 1993) ................................ 3-4, 8

McGraw-Hill Dictionary of Scientific and Technical Terms (6th Ed. 2003) ...................................3

iv

## Introduction

Plaintiff Peerless Industries, Inc. ("Peerless") owns United States Patent No. 7,823,850 ("'850 Patent"). The '850 Patent discloses an improved mounting bracket used in systems for mounting devices such as flat panel televisions. This improved bracket provides clear information to the installer when the mounting bracket and the remainder of the system are not properly aligned. This helps ensure that the installer can mount the device correctly on the first attempt, which is important with the expense and weight of large flat screen televisions. (Peerless Statement of Material Facts ("PSMF") ¶¶ 6-7).

Count I of the Third Amended Complaint alleges that seven products made and sold by Defendant Crimson AV, LLC ("Crimson") infringe claims 1-7 and 9-11 of the '850 Patent. Crimson claims that its products do not infringe for the sole reason that, Crimson claims, they do not have a "longitudinal surface directly joining" the two sides of the bracket. Crimson does not dispute that its products meet each of the other claim elements. Because the undisputed evidence shows that the accused products in fact meet "longitudinal surface directly joining" claim limitation, the Court should grant summary judgment on infringement. Because Crimson has no evidence raising any material dispute with respect to the validity of the '850 Patent, the Court also should enter summary judgment on validity.

## Undisputed Facts

Pursuant to Local Rule 56.1, Peerless has filed a separate Statement of Material Facts ("PSMF") with this motion for summary judgment. Peerless incorporates those facts by reference in this brief.

## Summary Judgment Standard

A court may enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

## Argument

### I.  The Court Should Grant Summary Judgment Of Infringement.

#### A.  The Only Claim Limitation At Issue Is "Longitudinal Surface Directly Joining."

To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). Crimson does not contest that its F46 and related product lines meet each and every element of the present claims, with the sole exception of a "longitudinal surface directly joining." (PSMF ¶ 19). Crimson has waived its right to now assert non-infringement on any other basis. *See, e.g., Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 09 C 4530, 2011 U.S. Dist. LEXIS 112672 (N.D. Ill. Sept. 9, 2011).

#### B.  The Court Should Give This Limitation Its Plain Meaning.

##### 1.  The Words of the Claim

Claim construction is a question of law, *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 970-71 (Fed. Cir. 1995)(en banc), *aff'd*, 517 U.S. 370 (1996). Claim construction analysis

2

begins with the words of the claim. *See Nystrom v. TREX Co.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The Court should give claim language the ordinary and customary meaning that it would have had to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005). A court may consult technical and other dictionaries to determine a term's meaning to a person of ordinary skill in the art when there is no definition for the term in the intrinsic record. *Phillips,* 415 F.3d at 1318 ("Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention. Such evidence, we have held, may be considered if the court deems it helpful in determining 'the true meaning of language used in the patent claims.'").

The claim limitations at issue require a "longitudinal surface directly joining" either "the side portions to each other" (claim 1) or "each of the pair of first ramped surfaces to each other" (claim 9). (PSMF ¶¶ 10-11). The language "longitudinal surface directly joining" can and should be given the plain meaning. To the extent any further construction is necessary, a "longitudinal surface directly joining" is a surface formed from one or more parts spanning between. This plain language is consistent with dictionary definitions. The term "longitudinal" means "extending or proceeding in the direction of the length." 1 The New Shorter Oxford English Dictionary (Thumb Index Ed. 1993) (PSMF ¶ 20).[1] The term "join" means to "put together" or to

---

[1]  Crimson admits the Court should give the words used in claim limitations at issue their plain meaning. (CSMF, ¶ 30) Peerless therefore has used definitions from non-technical dictionaries. Technical dictionaries do not use the terms in the claim limitation differently. For example, the McGraw-Hill Dictionary of Scientific and Technical Terms (6th Ed. 2003)

"connect." "Direct" means "straight, undeviating in course, not circuitous or crooked." (*Id.*) The plain meaning of "a longitudinal surface directly joining" the two sides means just what it says, a surface that spans between. Nothing in the claim language requires "a single, fully-bridging plate," as Crimson contends. (Dkt. 135 at 10 (emphasis added)).

### 2.     The Intrinsic Evidence

The Court next should examine the claim limitation in light of the specification and prosecution history. *Phillips*, 415 F.3d at 1315. "The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history." *Kinik Co. v. ITC*, 362 F.3d 1359, 1365 (Fed. Cir. 2004). The "primary focus" in determining the meaning of a claim limitation is to "consider the intrinsic evidence of record, *viz.*, the patent itself, including the claims, the specification, and, if in evidence, the prosecution history, from the perspective of one of ordinary skill in the art." *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991 (Fed. Cir. 2006) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005)).

The specification refers to numbered item 120 in Figures 3 as an example of the longitudinal surface. ('850 Patent, 4:4-9) As shown in Figure 3, that exemplary longitudinal surface 120 is the front face of the metal piece which runs between the two side portions 104 of the bracket having a hole in it. (*Id.*)

---

defines "longitudinal" as "pertaining to the lengthwise dimension" and does not contain definitions of "join" or "direct." (PSMF ¶ 20).

4



This is consistent with the plain words of the claim limitation.

Additionally, nothing in the specification restricts this claim limitation to only a surface that is a part of the structure shown in the preferred embodiment. To the contrary, the specification expressly states that the surface could be formed from a different structure. (PSMF ¶¶ 8-9). As the specification notes, the structure "may comprise the same type of material as the rest of the mounting bracket 100 and *may* be welded . . . or fastened in other conventionally-known manners." (PSMF ¶ 12). Additionally, nothing in the specification redefines the longitudinal surface as a 3-dimensional object made of a single piece of metal. Indeed, the specification expressly states that "all of the individual items which together make up a mounting bracket may be formed from *a single piece of material, or they can be formed as different components* which are coupled to each other using conventional processes." ('850 Patent, 6:31-

5

35) (emphasis added). Other conventional processes were known to exist. Crimson itself contends that a "folded tab" construction of brackets (creating them from a single piece of material) was known at the time of the '850 Patent. (Crimson's Local Rule 56.1 Statement of Material Facts ("CSMF"), at ¶ 32). Thus, "longitudinal surface directly joining" should not be construed to exclude alternative embodiments when alternative embodiments were expressly contemplated, and where Crimson contends they existed.

The specification, which discloses five embodiments, states that description of the invention in the specification has "been presented for purposes of illustration and description" and "is not intended to be exhaustive or to limit the present invention to the precise form disclosed." (PSMF ¶ 9). The specification further notes that "modifications and variations are possible in light of the above teachings or may be acquired from practice of the present invention" and that the disclosures allow one skilled in the art to practice the invention "with various modifications as are suited to the particular use contemplated." (*Id.*) Accordingly, the claims should not be construed to be limited to any single embodiment.

Crimson concedes that "there is NO prosecution history at all in P'850 that discusses the structure . . . of the bridge plate 120." (Dkt. 135, at 7) Therefore, nothing in the prosecution history limits the plain words of the claim limitations.

## C. Crimson's Construction Violates Fundamental Principles of Claim Construction.

The Federal Circuit has repeatedly "cautioned against reading limitations into a claim from the preferred embodiment described in the specification, even if it is the only embodiment described, absent clear disclaimer in the specification." *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1369 (Fed. Cir. 2004); *see also Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) (reversing district court because it improperly read limitations into the claims);

6

*Mantech Envt'l Corp. v. Hudson Envt'l Servs., Inc.*, 152 F.3d 1368, 1375 (Fed. Cir. 1998) (similar). Despite this admonition, Crimson nevertheless seeks to import a limitation by claiming that the "specification itself clearly limits the bridge plate to a single, fully-bridging plate." (Dkt. 135 at 10).

First, and as discussed above, nothing in the specification limits the claims to the embodiments disclosed. While Crimson focuses on the singular article "a" before "longitudinal surface," it is well-established that, in patent claim drafting, "a" or "an" connotes "one or more." *E.g., KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351 (Fed. Cir. 2000) ("a disclosure of a preferred or exemplary embodiment encompassing a singular element does not disclaim a plural embodiment."); *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1350 (Fed. Cir. 2005) ("'A' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising'"); *Whirlpool Corp. v. LG Elecs., Inc.*, 423 F. Supp. 2d 730, 745 (W.D. Mich. 2004) ("Unless the claim is specific as to the number of elements, the article 'a' receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article.").

Second, nothing in the specification redefines the surface (a 2-dimensional plane or edge) as a particular object having three dimensions. While Crimson wants to substitute "bridge plate" for the claimed "surface," there is no basis for doing so. Moreover, the redefinition Crimson attempts renders the claims nonsensical. Substituting Crimson's construction into the claim language, the "guiding surface," which Crimson admits is a 2-dimensional surface, would somehow include a 3-dimensional part. (*See* PSMF ¶¶ 21-22). Under Crimson's construction, Claim 1 would read as follows:

A mounting bracket, comprising:

\*      \*      \*

7

> a guiding surface for guiding the positioning of one of the one or
> more retaining portions, the guiding surface including *a one-
> piece full-width bridge-plate* directly joining the side portions
> to each other.

(Crimson Ex. A, CSMF ¶ 29, Crimson Br. at 8) (Crimson revision in emphasis). Therefore,

"surface" should be read as one of skill in the art would have understood it, as a plane, and as

Crimson admits "surface" should, as a portion formed by one or more parts. (CSMF ¶ 30, Ex. G

¶ 44) (admitting "[t]he term 'surface' is a feature or attribute of a thing or part, not the name of a

part itself"); *see also* The New Shorter Oxford English Dictionary (Thumb Index Ed. 1993)

(PSMF Ex. G) (defining "surface" as the outermost limiting part). The term "surface" does not

mean only a "plate." On the contrary, the '850 Patent uses the term "plate" in a manner not

interchangeable with the term "surface." (*e.g.*, '850 Patent, 3;34, 6:17, 20, 22, 5: 51, 52, 58, 60).

Finally, Crimson's contention that the "full width" between the bracket sides must be

joined by a single piece relies on the same misplaced argument that the claims must be limited

by the specification. (Dkt. 135, at 10). Crimson claims that it avoids infringement because the

upper and lower "plates" in its products extend only between 90 to 94 percent across the space

between the brackets. (CSMF ¶ 32). Nothing in the claim language requires the surface which

joins the side portions to be made of a single part any more than the surface of a table cannot be

formed by multiple leaves or the surface of a hardwood floor by more than one piece of wood.

The Court therefore should hold that the claim limitations only require that "A longitudinal

surface directly joining," should, therefore, be given its plain meaning and not be redefined and

limited to a portion of a single embodiment of the invention.

### D.  Properly Construed, Crimson Literally Infringes Claims 1-7 and 9-11 Of The '850 Patent.

The plain meaning of "a longitudinal surface directly joining" the two sides is exactly

that, a surface formed from one or more parts spanning between the side portions. The

undisputed facts demonstrate, as shown in the annotated photograph, Crimson's products meet this limitation (PSMF ¶ 23):



F46 Product Image

Further, Crimson admits that its products feature (a) an upper tab that is folded over from the left side wall to the right wall, and (b) a second lower tab that is folded beneath the upper tab. (CSMF ¶¶ 33-34)  Together, these two tabs form a single "longitudinal surface" that spans between and "joins" the two sides of the bracket. The structure therefore satisfies the claim limitations at issue.

Because the undisputed facts show that Crimson's products meets the only disputed claim limitations and Crimson admits its products meet the remainder of the claim limitations, the Court should grant summary judgment to Peerless on its claims of infringement of the '850 Patent.

## II. The Court Should Grant Summary Judgment That The Patent-in-Suit Is Not Invalid.

### A. The '850 Patent is Presumed Valid.

9

The law presumes the validity of duly issued patents. 35 U.S.C. § 282. An accused infringer can overcome this presumption only with "clear and convincing evidence" of invalidity. *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002). The USPTO properly issued the '850 Patent. (PSMF, ¶ 5). Crimson can overcome the presumption of validity only with clear and convincing evidence. Crimson has no such evidence.

**B.    The Asserted Claims Are Not Invalid For Failure To Disclose The Best Mode Of Practicing The Invention.**

Crimson attacks the invalidity of the '850 Patent claiming that it does not disclose the "best mode" of practicing the invention, as required by 35 U.S.C. § 112. (Dkt. 135, page 8) A party seeking to invalidate a patent based on the best mode requirement must prove (1) that the inventors possessed a best mode of practicing the claimed invention at the time of filing, and (2) the inventors concealed that best mode from the public. *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1296 (Fed. Cir. 2010). This first step is subjective and focuses on whether the inventors had a preference at the time of filing the application. *Id.* (citing *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1286 (Fed. Cir. 2000)). The second step is an objective inquiry to determine whether the inventors concealed that best mode. *Id.* The undisputed facts show that Crimson cannot prove either prong.

**1.    There Is No Evidence The Inventors Considered The Folded Tab Design To Be The Best Mode At The Time Of Filing.**

The first prong of the two-part best mode inquiry requires that Crimson show that Peerless inventors considered the "folded tab" structure to represent the best mode of practicing the invention at the time of filing. Although Crimson has taken the deposition of both of the surviving inventors, it does not submit any testimony from either inventor suggesting that they viewed the "folded tab" construction to represent the "best mode." The invention disclosed in the '850 Patent was directed at an "improved mounting bracket which provides clear information to

10

the installer when the mounting bracket and the remainder of the mount are not properly aligned." ('850 Patent, 2:28-31) To the extent that an additional function (such as safety screw retention), which is not claimed, is disclosed elsewhere in the prosecution history or related patents, that additional function need not meet the "best mode" requirements of § 112. *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc*., 381 F.3d 1371, 1379 (Fed. Cir. 2004) ("subject matter that is not part of the invention that is claimed need not be included in the specification, and thus is not subject to the best mode requirement.").[2] Crimson therefore has failed to show that the inventors had a preferred mode of practicing the invention as of October 14, 2005. Without such a showing, the Court need not even reach the second prong. *See Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1296 (Fed. Cir. 2010).

Crimson claims that because Peerless filed the provisional application that resulted in U.S. Patent No. 7,722,002 ("'002 Patent"), which disclosed a folded-tab structure, before the non-provisional application that became the '850 Patent, Peerless has failed to meet the best mode requirement. (Dkt. 135, at 7-8) However, Peerless filed the application for the '850 Patent before the application for the '002 Patent. Where, as here, a utility patent application claims priority to a provisional application, the filing date of the non-provisional application is the date of the provisional application. *See, e.g., Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1371-1373 (Fed. Cir. 2011) (reversing denial of JMOL of no best mode violation since patentee showed it was entitled to claim priority to a provisional patent application with a filing date prior to the development of the alleged best mode).

---

[2] Moreover, Crimson's contention that the safety screw retention was known in the art prior to the filing of the application which issued as the '850 Patent, precludes a finding of a "best mode" violation as the safety screw retention is thus inherently disclosed by the hole shown in Figure 3. *See supra*.

11

### 2. There Is No Evidence The Inventors Concealed The Best Mode Of Practicing the Invention From The Public.

Even if the inventors had contemplated the "folded tab" design to be the "best mode," Crimson has no evidence that Peerless sought to conceal the "folded tab" structure from the public. Crimson cites no evidence of any such intent and never explains how Peerless could conceal something that Crimson contends was known in the art.

### <u>Conclusion</u>

Each element of the invention set forth in the granted claims of the '850 Patent is literally present in the accused products. Rather than compare its products with the plain language of the granted claims, however, Crimson would have this Court impermissibly narrow those claims by importing the limitations of a single embodiment of the '850 specification. Crimson has not provided any support for its argument that the specification describes one embodiment, a court should narrow the claims to encompass only that embodiment. That construction is the linchpin of Crimson's entire non-infringement position, and is contrary to settled law. The undisputed facts demonstrate the Crimson's products infringe the '850 Patent. The Court therefore should grant summary judgment to Peerless.

12

Dated:  February 28, 2013

Respectfully submitted,

By:   /s/   James Dasso

James D. Dasso (IL Bar No. 6193545)
Aaron J. Weinzierl (IL Bar No. 6294055)
Jonathan W. Garlough (IL Bar No. 6295597)
A. Taylor Corbitt (IL Bar No. 6299553)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  jdasso@foley.com;
aweinzierl@foley.com;
jgarlough@foley.com;
tcorbitt@foley.com

13

4819-6550-7859.4

## CERTIFICATE OF SERVICE

I, A. Taylor Corbitt, an attorney, hereby certify that on February 28, 2013, I caused to be filed electronically the foregoing PEERLESS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I OF THE THIRD AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

  /s/   Taylor Corbitt

James D. Dasso (IL Bar No. 6193545)
Aaron J. Weinzierl (IL Bar No. 6294055)
Jonathan W. Garlough (IL Bar No. 6295597)
A. Taylor Corbitt (IL Bar No. 6299553)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  jdasso@foley.com;
aweinzierl@foley.com;
jgarlough@foley.com;
tcorbitt@foley.com

4819-6550-7859.4