# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PEERLESS INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:11-cv-1768 |
| | ) | |
| CRIMSON AV, LLC | ) | Hon. Joan H. Lefkow |
| | ) | |
| Defendant. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| | ) | |

## LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS

### Parties

1. Plaintiff Peerless Industries, Inc. ("Peerless") is a company organized and existing under the laws of the state of Delaware and having a principal place of business at 2300 White Oak Circle, Aurora, IL 60502. (Dkt. 55, ¶ 2)

2. Defendant Crimson AV ("Crimson") is an Illinois Limited Liability Company having a principal place of business in Schiller Park, Illinois. (Dkt. 61, ¶ 3)

### Jurisdiction and Venue

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) based on Peerless' claim of patent infringement. (Dkt. 55, ¶ 5)

4. Venue is proper in this court pursuant to 28 U.S.C. § 1440(b). (Dkt. 55, ¶ 6)

### The '850 Patent

5. The U.S. Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 7,823,850 ("'850 Patent") on November 2, 2010. ('850 Patent, Ex. A) The '850 Patent claims priority to Provisional Patent Application 60/727,105, which was filed on October

14, 2005. (*Id.* at 1:6-8[1]). Peerless owns all right, title, and interest in the '850 Patent by assignment from inventors William Phuong Lam, Dugan O'Keene, and Gary Monaco (together, "Inventors"). (*Id*. at 73)

6. The invention disclosed in the '850 Patent responds to problems experienced in the installation of flat-panel televisions. Particularly for televisions with large screens, their weight can become prohibitively great. ('850 Patent, Ex. A, 1:49-51) Users therefore must "easily, safely, and securely mount the devices without having to make substantial adjustments. With the weights involved and the high costs of flat screen televisions, it is extremely important that the device be mounted correctly on the first attempt; if the device is not correctly mounted on the first try, there is a high risk of damaging the device and causing injury to those installing it." (*Id*. at 1:52-59). Installation of large flat screen televisions is particularly difficult because the installer must match the device with the wall mount "blind"—in other words, he or she cannot see the position of the position of the retaining portions of the mount. (*Id*. at 2:10-20)

7. The invention disclosed in the '850 Patent seeks to address these problems. The invention "provides for an improved mounting bracket that which provides clear information to an installer when the mounting bracket and the remainder of the mount are not properly aligned." ('850 Patent, Ex. A, 2:28-48). The '850 patent contains the following summary of the invention:

> A system of the present invention includes one or more ramping surfaces extending away from the correct mounting positions on the mounting bracket. … If the mounting bracket is position too high and/or two low relative to the rest of the mount, one of the mount's retaining portions will come into contact with a ramp. The contact of the ramp against the retaining portion will cause the mounting bracket to slide, providing a clear indication to the user that the mounting bracket is not properly aligned with the retaining portion.

---

[1] This Statement of Facts cites to the text of the '850 Patent by the column number and line numbers, separated by a colon. The citation "1:6-8" thus refers to Column 1, lines 6 through 8 of that patent.

2

(*Id*. at 2:31-42)

8. The '850 Patent discloses a number of embodiments of the invention. Figures 3-7 show only "one embodiment of the present invention." ('850 Patent, Ex. A, 3:28-30, Figs. 3-7) Figure 8 depicts "a mount bracket constructed in accordance with a second embodiment of the present invention." (*Id*. at 3:13-15, 5:62-63, Fig. 8); Figure 9 is a sketch of "a mount bracket constructed in accordance with a third embodiment of the present invention" (*Id*. at 3:16-18, 6:4-5, Fig. 9); Figure 10 portrays "a mount bracket constructed in accordance with a fourth embodiment of the present invention." (*Id*. at 3:19-21, 6:14-15, Fig. 10); and Figure 11 "is a side view of a mounting system including a mounting bracket constructed in accordance with a fifth embodiment of the present invention." (*Id*. at 3:22-24, Fig. 11)

9. The specification expressly states that other embodiments of the invention may exist and that the individual aspects of the invention may formed from a single piece or material or as components coupled to each other using conventional processes:

> The foregoing description of embodiments of the present invention have been presented for purposes of illustration and description. It is not intended to be exhaustive or to limit the present invention to the precise form disclosed, and modifications and variations are possible in light of the above teachings or may be acquired from practice of the present invention. *For example, all of the individual items which together make up a mounting bracket may be formed from a single piece of material, or they can be formed as different components which are coupled to each other using conventional processes.* …. The embodiments were chosen and described in order to explain the principles of the present invention and its practical application to enable one skilled in the art to utilized the present invention in various embodiments and with various modifications as are suited to the particular use contemplated.

('850 Patent, Ex. A, 6:25-43 (emphasis added)).

10. Independent Claim 1 contains the following claim limitation: "a guiding surface for guiding the positioning of one of the one or more retaining portions, the guiding surface

3

including a longitudinal surface directly joining the side portions to each other." ('850 Patent, Ex. A, 7:1-4 (Claim 1)

11. Independent Claim 9 contains a similar claim limitation: "a guiding surface configured to guide the positioning of one of the one or more retaining portions, the guiding surface including a longitudinal surface directly joining each of the pair of first ramped surfaces to each other." 7:51-55 (Claim 9).

12. The '850 Patent expressly does not limit the claim language to any particular embodiment. The specification states, "The guiding portion 110, which is positioned below the upper hook 108 in one embodiment of the invention, includes a longitudinal surface 120. The longitudinal surface *may* comprise the same type of material as the rest of the mounting bracket 100 and *may* be welded to the pair of side portions 104 or fastened in other conventionally-known manners." ('850 Patent, Ex. A, 4;4-9 (emphasis added))

### Gleyzer's Involvement in the Patenting Process

13. From 2002 to 2004, Vladimir Gleyzer, currently president of Crimson AV, served as Direct of Design of AVMs at Peerless. He managed the Design-Engineering and Quality Control departments at Peerless. From 2004 to 2007, Gleyzer served as Vice President of AVM Product Development. He managed the Operations, Product Design-Engineering, Quality Control and Market departments at Peerless. (Declaration of V. Glezyer in Support of Defendant Crimson's Motion for Summary Judgment of Non-Infringement of Plaintiff's US Patent 7,823,850 ("Gleyzer Decl."), excerpts of which are attached as Ex. B, ¶ 4)

14. Gleyzer directed and managed the work of the Inventors that resulted in the development of Peerless mounts in which the brackets disclosed in the '850 Patent were disclosed. (Gleyzer Decl., ¶ 7)

4

15.     Gleyzer was the individual at Peerless who noted the improvement in ease of mounting with the patented design over the prior art designs, and suggested that Peerless patent the design. (Lam Dep., Ex. C, 152:19-154:2)

**Folded Tab Configuration Known In The Art**

16.     Prior to October 14, 2005, participants in the audio-visual mount industry used a variety of systems for securing a television set to the mount. This included a safety system that featured an upper tab folded from one side of the bracket and a second lower tab folded from the other side of the bracket. The tabs had holes that aligned when they were folded. One of the tabs would be threaded for a safety screw. Crimson has referred to this system as a "box-fold tab construction." (CSMF ¶ 31-33, 36)

17.     Further, the known folded tab configuration and the welded piece shown in Figure 3 as one embodiment of the claimed invention were similarly known in the art to have the same function of securing a safety screw.   (CSMF ¶ 31, 59, 62).

**Claim Limitations At Issue**

18.     On July 12, 2011, Peerless filed its Third Amended Complaint, alleging, among other causes of action, that Crimson infringed claims 1-7 and 9-11 of the '850 Patent through its manufacture, use, sale, and offer for sale of its AV television mounts bearing the identifications "C63," "C63-36," "C63D-36," "C63-D60A," "F46," "F55," and "F63." (Dkt. 55, ¶ 38)

19.     The only two claim elements that Crimson contends that its products do not meet are the  "longitudinal surface directly joining the side portions to each other" element in Claim 1, and  the "longitudinal surface directly joining pair of first ramped surfaces" element in Claim 9. (Initial Invalidity and Non-Infringement Contentions, dated August 29, 2011, Ex. D at 5, 8; First Supplemental Invalidity and Non-Infringement Contentions, dated September 12, 2011, Ex. E, at

5, 8; Second Supplement to its Initial Invalidity and Non-Infringement Contentions, dated October 24, 2012, Ex. F, at 5, 8)

20. In common parlance, the term "longitudinal" means "extending or proceeding in the direction of the length." The New Shorter Oxford English Dictionary (Thumb Index Ed. 1993) (Exhibit G).[2] The term "join" means to "put together" or to "connect." "Direct" means "straight, undeviating in course, not circuitous or crooked."

21. Crimson construes the term "guiding surface," as "the term 'guiding surface' should be given a broad interpretation, including: that the width of the guiding surface is not defined or limited, e.g., it may be no more than the width of the upturned metal side wall, that is, an edge as seen in side elevation (profile) since the patent claims use the term "surface" in reference to the 'ramped surface[s]' which are no wider than the metal side walls I 04, and functions to guide the bar 16 into the receiving region 112, and on which to rest as stated in Col 4, line 20. (See Crimson's Proposed Claim Terms to be Construed, at 4-5, attached as Ex. I).

22. Crimson construes the term "longitudinal surface directly joining" to mean a "directly joining, full width, one piece structure." (Crimson Br. at 2).

## Crimson's Products Meet The Only Limitations at Issue

23. As shown in Peerless' Final Infringement Contentions (attached hereto as Ex. G), each and every element of the asserted claims are literally met by Crimson's products. With regard to the claim element at issue, the "longitudinal surface directly joining," the upper tab of Crimson's product forms a surface running lengthwise that spans in a straight, non-circuitous

---

[2] Crimson admits the Court should give the words used in claim limitations at issue their plain meaning. (CSMF, ¶ 30) Peerless therefore has used definitions from non-technical dictionaries. Technical dictionaries do not use the terms in the claim limitation differently. For example, the McGraw-Hill Dictionary of Scientific and Technical Terms (6th Ed. 2003) defines "longitudinal" as "pertaining to the lengthwise dimension" and does not contain definitions of "join" or "direct." (Exhibit H).

line ("directly") from one side portion to the other. The upper surface is joined to the second side portion via the lower surface, to which it is connected. (Ex. J)

Dated: February 28, 2013

Respectfully submitted,

By: /s/ James Dasso_____
James D. Dasso (IL Bar No. 6193545)
Aaron J. Weinzierl (IL Bar No. 6294055)
Jonathan W. Garlough (IL Bar No. 6295597)
A. Taylor Corbitt (IL Bar No. 6299553)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jdasso@foley.com;
aweinzierl@foley.com;
jgarlough@foley.com;
tcorbitt@foley.com

## **CERTIFICATE OF SERVICE**

      I, A. Taylor Corbitt, an attorney, hereby certify that on February 28, 2013, I caused to be filed electronically the foregoing *Peerless' Local Rule 56.1 Statement of Material Facts* with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                                  /s/   Taylor Corbitt