UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PEERLESS INDUSTRIES, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 11 C 1768 |
| | ) |
| **CRIMSON AV LLC and** | ) |
| **VLADIMIR GLEYZER,** | ) |
| | ) |
| **Defendants.** | ) |

**OPINION AND ORDER**

Plaintiff, Peerless Industries, Inc. ("Peerless"), filed a third amended complaint against defendants, Crimson AV ("Crimson") and Vladimir Gleyzer, alleging that Crimson infringed claims 1–7 and 9–11 of United States Patent Number 7,823,850 (the '850 patent).[1] Presently before the court are the parties' motions for summary judgment. Crimson's motion seeks a declaration of noninfringement while Peerless's motion seeks a declaration of infringement and validity of the '850 patent.[2] For the reasons stated below, Crimson's motion for summary judgment of nonfringement [dkt. 134] is denied, and Peerless's motion for summary judgment is granted as to infringement [dkt. 170] and is moot as to validity.

---

[1] The United States Patent and Trademark Office ("PTO") issued the '850 patent on November 2, 2010. The '850 patent claims priority to Provisional Patent Application 60/727,105, which was filed on October 14, 2005. The inventors of the '850 patent, William Lam, Dugan O'Keene, and Garry Monaco, assigned all rights, title, and interest in the '850 patent to Peerless.

[2] The court has jurisdiction under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1400(b) and § 1391(b).

**BACKGROUND**[3]

**I.     Background of the Invention**

The invention of the '850 patent relates to mounting brackets for flat panel televisions. The invention claims to be an improvement over prior art in that it is designed to guide the installer, who cannot see behind the panel, to ensure proper alignment on the brackets. In common parlance, it consists of an elongated metal plate that contacts the back of the flat screen (or a wall or other surface). It has perpendicular sides that are shaped to accomplish the guiding purpose of the invention. When the mounting bracket is positioned too high or too low, one of the "retaining portions"[4] will come into contact with a "ramping surface." This contact will cause the retaining portion to slide along the ramping surface, indicating to the installer that the mounting bracket is not properly aligned with the retaining portion. The invention reduces the likelihood that an installer will misalign the mounting bracket, which could cause the television to fall from its mounted position.

The '850 patent discloses several embodiments of the invention. In one embodiment, detailed in Figures 3–7, the ramping surface on the mounting bracket includes an upper hook and a "lower guiding portion." The upper hook receives the first retaining portion while the second retaining portion rests on the lower guiding portion. The guiding portion is a longitudinal surface that joins the side portions at the top of the lower ramping surface. The longitudinal

---

[3] The facts in the background section are taken from the parties' Local Rule 56.1 statement of facts and construed in the light most favorable to the nonmovant. In accordance with its regular practice, the court has considered the parties' specific objections and responses and has included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to the resolution of this motion.

[4] The retaining portion comprises bars that align with the brackets to secure a television to the mount.

surface can be formed as one piece with the rest of the mounting bracket or may be a separate component which is coupled to the side portions of the bracket. '850 patent, 3:65–4:3. The space between the upper hook and the lower guiding portions is referred to as the "receiving region" for two retaining portions. When properly aligned, the first retaining portion fits within the upper hook while the second retaining portion rests on the guiding portion.

**II.    Claims at Issue**

Claims 1 and 9 are at issue. The parties dispute whether Crimson's allegedly infringing product includes a "longitudinal surface directly joining" the side portions of the mounting bracket. Independent claims 1 and 9 contain this limitation:

Specifically, claim 1 provides in relevant part,

a mounting bracket, comprising:

>             \*\*\*
> a guiding surface for guiding the positioning of one of the one or more retaining portions, the guiding surface including a longitudinal surface directly joining the side portions to each other.

'850 patent, 7:1–4.

Claim 9 details in part,

a mounting bracket, comprising:

> \*\*\*
> a guiding surface configured to guide the positioning of one of the one or more retaining portions, the guiding surface including a longitudinal surface directly joining each of the pair of first ramped surfaces to each other.

'850 patent, 7:51–54.

The specification describes the longitudinal surface as follows:

> The guiding portion **110**, which is positioned below the upper hook **108** in one embodiment of the invention, includes a longitudinal surface **120**. The longitudinal

3

> surface **120** may comprise the same type of material as the rest of the mounting bracket **100** and may be welded to the pair of side portions **104** or fastened in other conventionally-known manners.

'850 patent, 4:4–9.

### III. Prosecution History

In the original application, only a dependent claim (claim 8) contained language detailing "a guiding surface" to guide the positioning of the retaining portions including a "longitudinal surface" directly joining the side portions of ramped surfaces. On April 27, 2010, the examiner rejected the main claims as barred by anticipatory prior art but advised that dependent claim 8 would be allowable if rewritten in independent form "including all of the limitations of the base claim and any intervening claims." Dkt. 136–7 at 42.

On June 6, 2010, Peerless's patent attorney amended the application, summarizing the amendment:

> Applicant has amended independent claims 1, 25 and 30 to describe the feature of a guiding surface including a longitudinal surface directly joining each of a plurality side portions to each other. As the Examiner has already indicated, via his indication of allowability of claim 8, that this feature is patentable over the prior art of record, Applicant submits that the incorporation of this feature into independent claims 1, 25 and 30 should place these claims in condition for allowance as well.

*Id*. at 31. On September 16, 2010, the examiner issued a notice of allowance finding that the combined elements, including the longitudinal surface directly joining the side portions or ramped surfaces together, were not known in the prior art.

### IV.   Crimson's Allegedly Infringing Products

Peerless claims that Crimson infringes claims 1–7 and 9–11 of the '850 patent through the manufacture, use, sale, and offer for sale of its F-46 AV television mount ("F-46 mount"). The F-46 mount employs a box-fold tab construction.[5] This product features an upper tab extending from the left side wall and a lower tab extending from the right side wall folded underneath the upper tab. The upper and lower tabs extend only between 90 to 94 percent across the space between the brackets. The tabs have holes that align when folded and a safety screw is placed in the holes, thereby connecting the right and left side walls. The safety screw also acts as a security device to hold the television set in the proper orientation and prevent theft. Crimson's box-fold tab construction was known in the prior art and based on the commercially available Sanus models VMPL/VMPL50.

### V.   The '002 Patent

On April 5, 2007, during the prosecution of the provisional application that matured into the '850 patent, Peerless filed another provisional application, SN60/791/063, for a Movable Extension Assembly for a Mounting System. This application ultimately issued as United States Patent Number 7,722,002 (the '002 patent). The '002 patent references the invention in the '850 patent as prior art and discloses a folded tab safety screw holder with a safety screw. The '002 patent provides:

> The lower guiding portion **110** includes a longitudinal surface **120** through which a fastener may be threaded . . . . [T]he movement upwards . . . causes it to . . . press against the wall mounting plate . . . imped[ing] the conventional adapter bracket **100** from being pulled away from the wall mounting plate.

---

[5]  Crimson's F-46 AV television mount is exemplary of other models of Crimson's products containing a box-fold tab construction.

'002 patent, 2:9–19. Although Figure 3 in the '850 patent illustrates a place for a fastener, the specification does not disclose a retaining screw (or corresponding number) in the longitudinal surface.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee notes (1963 amend.) While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

An accused infringer seeking summary judgment of non-infringement may meet its initial burden by providing evidence that would preclude a finding of infringement or by showing that the evidence fails to establish a material issue of fact essential to the patentee's case. *Vivid Techs.* v. *Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999). "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *U.S. Philips Corp.* v. *Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1374–75 (Fed. Cir. 2007) (internal quotation marks omitted).

**ANALYSIS**

I.   **Infringement**

Peerless argues that the F-46 mount's box-fold tab construction infringes the limitation in claims 1 and 9 for "a longitudinal surface directly joining" the bracket sides or ramped surfaces. Crimson contends that its folded tab design does not infringe because it does not constitute a single, full bridging plate connecting the two sides of the bracket.

Patent infringement occurs where a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). To prove direct infringement, the patentee must establish by a preponderance of the evidence that the asserted claims cover the accused device literally or under the doctrine of equivalents. *See Advanced Cardiovascular Sys., Inc.* v. *Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). Infringement entails a two-step analysis. *See SunTiger, Inc.* v. *Scientific Research Funding Grp.*, 189 F.3d 1327, 1334–35 (Fed. Cir. 1999). First, the court construes the claims at issue to determine their scope and meaning. *Dynacore Holdings Corp.* v. *U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004). Second, the court compares the construed claims to the alleged infringing device. *Id.* Unless every limitation of a patent claim is found in the accused product, either literally or under the doctrine of equivalents, there can be no infringement. *K-2 Corp.* v. *Salomon S.A.*, 191 F.3d 1356, 1362 (Fed. Cir. 1999).

### A. Claim Construction

Claims are construed from the point of view of one of ordinary skill in the art at the time of filing. *Trading Tech. Int'l* v. *eSpeed Inc.*, 595 F.3d 1340, 1351 (Fed. Cir. 2010). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *ICU Med., Inc.* v. *Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009) (internal quotation marks omitted). In construing a patent claim, the court should first look to intrinsic evidence, namely the patent itself, including the claims, specification, and prosecution history. *Bell Atl. Network Servs., Inc.* v. *Covad Comm'n Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Claims must be read in light of the specification of which they are a part. *Phillips* v. *AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). As such, the court should focus on how a person of ordinary skill would understand the claim "after reading the entire patent." *ICU Med., Inc.*, 558 F.3d at 1375 (internal quotation marks omitted). The court should also look to the patent's prosecution history when construing the meaning of a claim. *See Phillips*, 415 F.3d at 1317.

The parties agree that the only disputed term is the language providing for a "longitudinal surface directly joining" either the two bracket sides or the two ramped surfaces.[6] Both parties contend that the term should be given its plain and ordinary meaning and no further construction is necessary. Courts need not construe terms with ordinary and customary meanings. *See O2 Micro Int'l Ltd.* v. *Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). An

---

[6] Crimson does not dispute that its F-46 mounts and other related products meet each and every element of the claims at issue other than a "longitudinal surface directly joining."

ordinary and customary meaning "is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *Id*. at 1360.

Here, however, while the parties agree that the disputed term should be given its ordinary and customary meaning, they dispute whether the term comprehends a "surface formed by one or more parts that spans between" as set forth by Peerless or is "a single, fully bridging plate" as urged by Crimson. Because relying on the plain and ordinary meaning of the disputed term will not resolve the parties' dispute regarding the scope of the claim, further construction of the claim is necessary. *See, e.g.*, *O2 Micro* at 1361 ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute. . . . [When] the 'ordinary' meaning of a term does not resolve the parties' dispute . . . claim construction requires the court to determine what claim scope is appropriate in the context of the patents-in-suit.").

The claim recites a "guiding surface including a longitudinal surface directly joining" "the side portions to each other" (claim 1) or "the pair of first ramped surfaces to each other" (claim 9). Crimson argues that the claim language limits "a longitudinal surface" to one continuous surface because the claim uses the singular article "a" before "longitudinal surface." The Federal Circuit has noted that the use of the singular article "a" does not necessarily disclaim plural embodiments. *See KCJ Corp.* v. *Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("This court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'"); *Elkay Mfg. Co.* v. *Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed.

9

Cir. 1999) ("While the article 'a' or 'an' may suggest 'one,' our cases emphasize that 'a' or 'an' can mean 'one' or 'more than one,' depending on the context in which the article is used."). Here, the claim details "the guiding surface *including a* longitudinal surface;" the use of the open-ended transitional phrase "including a" does not limit the scope of the claim to a single longitudinal surface. *Cf. Lucent Tech., Inc.* v. *Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008) ("This court has consistently interpreted 'including' and 'comprising' to have the same meaning."); *Boeing Co.* v. *United States*, 57 Fed. Cl. 22, 27 (Fed. Cl. 2003) (distinguishing between transitional phrases such as "comprising" or "including" that do not exclude the possibility of additional structures and those close-ended phrases that do, such as "consisting of").

To determine whether such a singular limitation is appropriate, it is necessary to review the specification to determine whether the claim language is limited to one embodiment. *See Abtox, Inc.* v. *Exitron Corp.*, 122 F.3d 1019, 1024 (Fed. Cir. 1997); *N. Am. Vaccine, Inc.* v. *Am. Cyanamid Co.*, 7 F.3d 1571, 1575–76 (Fed. Cir. 1993). The specification describes the structure of the longitudinal surface. It details that the longitudinal surface may also be welded to the pair of side portions or fastened to the side portions. Moreover, the specification states that "all of the individual items which together make up a mounting bracket may be formed from a single piece of material or they can be formed as different components which are coupled to each other using conventional processes." '850 patent, 6:31–35. In Figure 3, the longitudinal surface is a single piece connecting the two side portions. The specification recites, however, that the embodiments detailed (such as in Figure 3) were presented for "purposes of illustration and

10

description" and were "not intended to be exhaustive or to limit the present invention to the precise form disclosed." *Id*. at 6:25–28;[7] *see also id*. at 6:29–31; 6:38–44.

Despite these explicit cautions, Crimson argues that the longitudinal surface is limited to the embodiment described in Figure 3. Limiting the claims to an embodiment disclosed in the specification, even if it is the only embodiment, is improper except when the patentee intended to limit the scope of the claim to that embodiment. *See Libel-Flarsheim Co.* v. *Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("[T]his court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."); *eSpeed*, 595 F.3d at 1352 ("[W]hen the specification uses a single embodiment to enable the claims, courts should not limit the broader claim language to that embodiment unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest execution or restriction." (internal quotation marks omitted)). Limitations present in the specification can limit a claim term "when a patentee sets out a definition and acts as his own lexicographer, or when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Woods* v. *DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1283 (Fed. Cir. 2012) (internal quotation marks omitted).

Here, there is no indication that the patentee acted as his own lexicographer defining longitudinal surface to encompass only one surface. Nor does the specification contain any language disavowing the use of connecting parts to form the longitudinal surface. *See Retractable Techs., Inc.* v. *Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("To

---

[7] The '850 patent also includes several other embodiments describing the tilting mechanism. The tilting mechanism permits the television set to be tilted downward when the television is mounted above viewing height.

disavow claim scope, the specification must contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." (internal quotation marks omitted)). While Figures 3–7 detail an embodiment of the invention where the longitudinal surface is one single surface, the specification is clear that the invention was not limited to that single embodiment. *See* '850 patent, 6:25–44.

Moreover, the prosecution history does not support a finding that Peerless clearly disavowed a broader claim scope than that embodied in Figure 3. Crimson's contention that the amendment placing the longitudinal surface language in the independent claims *limited* the scope of the claims to exclude prior art embodying the box-fold tab construction is not convincing. Notably, while the box-fold tab construction of Crimson's F-46 mount was known to one of ordinary skill in the art at the time the application was filed, the patent prosecution is silent regarding the structure of the longitudinal surface. In advising that the dependent claim could be allowed if written in independent form, the examiner did not suggest that inclusion of the longitudinal language in the independent claims was necessary. Nothing in the amendment indicates that issuance was premised on the longitudinal surface comprising a single fully bridging structure, nor was it a stated reason for allowance. Neither is there any evidence that Peerless disclaimed a structure containing two or more parts when making this amendment. *See Grober* v. *Mako Prods., Inc.*, 686 F.3d 1335, 1342 (Fed. Cir. 2012) ("This court has often stated that prosecution history limits claim meaning when an applicant clearly and unmistakably disclaims claim scope or meaning." (internal quotation marks omitted)); *Abbott Labs.* v. *Sandoz, Inc.*, 566 F.3d 1282, 1289 (Fed. Cir. 2009) ("[O]wing in part to the inherent ambiguities of prosecution history, the doctrine of prosecution disclaimer only applies to unambiguous

disavowals."). As such, the prosecution history does not limit the claims at issue to a single structure.

Crimson further argues that the longitudinal structure has a structural element containing a required function that limits its form. Crimson argues that the longitudinal surface is part of the guiding portion, which is configured for guiding the positioning of the retaining portions to indicate to the installer when the retaining portions are misaligned with the receiving region or do not fit within the receiving region. Crimson contends that the guiding surface (of which the longitudinal surface is a part) is limited by this described function such that it must comprise a single fully bridging connection between the sides.[8] The claims at issue, however, clearly define the longitudinal surface in structural terms and not by the function detailed in the specification. The Federal Circuit has warned against limiting a structural claim by incorporating functional limitations from the specification that are not recited in the claim language. *See Schwing GmbH* v. *Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002) ("Where a claim uses clear structural language, it is generally improper to interpret it as having functional limitations."); *Toro Co.* v. *White Consol. Indus., Inc.*, 266 F.3d 1367, 1371 (Fed. Cir. 2001) ("An invention claimed in purely structural terms generally resists functional limitation."). Accordingly, the functional limitations detailing the mounting process along the guiding surface do not limit the longitudinal surface's form.

The intrinsic evidence thus reveals that the longitudinal surface is not limited to a single, continuous surface. The specification teaches how the longitudinal surface could be welded or

---

[8]Crimson does not explain why such a configuration could not function as a guiding portion, nor is it obvious.

fastened to the side portions and, further, that the individual items making up the mounting bracket could be formed as different components coupled to one another using conventional processes, thus belying the argument that the longitudinal surface must be a single structure. After considering the claim terms and the patent as a whole, one of ordinary skill in the art would have understood the phrase "longitudinal surface directly joining" to mean a straight surface connecting the two sides or ramps together that is not limited to a single, unbroken surface.

Crimson argues that this type of construction renders the claim invalid in light of prior art. Because courts should construe claims to preserve their validity, argues Crimson, this type of construction should be rejected because it would render the asserted claims invalid due to the fact that the box-fold tab construction is prior art that covered a multi-layer bridge extending between the side portions of the bracket. This canon of claim construction, however, only is applicable when the court finds the claim language ambiguous. *See MBO Labs., Inc.* v. *Becton, Dickinson & Co.*, 474 F.3d 1323, 1332 (Fed. Cir. 2007) ("[V]alidity construction should be used as a last resort, not a first principle."); *Chef Am., Inc.* v. *Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("This court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity."). *But see Athletic Alternatives, Inc.* v. *Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) (adopting a narrower claim construction in order to avoid invalidating the claim). After considering the intrinsic evidence, the court finds that the claim unambiguously covers a structure connecting the side portions or ramping surfaces together. Limiting the surface to a single component is not supported by this evidence. *Elekta Instrument S.A.* v. *O.U.R. Scientific Int'l, Inc.*, 214 F.3d

1302, 1309 (Fed. Cir. 2000) ("[H]aving concluded that the amended claim is susceptible of only one reasonable construction, we cannot construe the claim differently from its plain meaning in order to preserve its validity. . . ."); *Lucent Techs., Inc.*, 525 F.3d at 1215 ("[W]here we conclude that the claim language is unambiguous, we have construed the claims to exclude all disclosed embodiments.").

### B.     Literal Infringement

To establish literal infringement, Peerless must show that every limitation in the '850 patent is present in the F-46 mount. *See Pozen Inc.* v. *Par Pharm., Inc.*, 696 F.3d 1151, 1167 n.11 (Fed. Cir. 2012). In a literal infringement analysis, "each limitation of the claim must be met by the accused device exactly, any deviation from the claim preclud[es] a finding of infringement." *Lantech, Inc.* v. *Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994). "[I]n every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Finjan, Inc.* v. *Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (internal quotation marks omitted). While literal infringement is a question of fact, "[w]here the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claims interpretations, the question of literal infringement collapses into claims construction and is amenable to summary judgment." *Gen. Mills, Inc.* v. *Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997); *see also MyMail, Ltd.* v. *Am. Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007) ("Because there is no dispute regarding the operation of the accused systems, that issue reduces to a question of claim interpretation and is amenable to summary judgment.").

Crimson's product includes an upper tab connected to the left side portion folded on top of a lower tab connected to the right side portion. Neither tab fully extends across the space between both side portions which, Crimson argues, demonstrates that the box-fold tab construction does not "directly join" the two sides together. When the tabs are folded together, however, they do form a surface connecting the side portions together. Although the surface in the F-46 mount does not comprise a single surface, claims 1 and 9 of the '850 patent do not limit the longitudinal surface to a single component. Crimson's box-fold tab design meets the limitation present in claims 1 and 9, as it directly connects the two portions to each other.[9] Accordingly, Peerless's motion for summary judgment of infringement is granted.

## II.     Invalidity

Peerless additionally moved for summary judgment seeking a declaration that the '850 patent is not invalid, which essentially is a request for a declaration of validity. In response, Crimson articulated that the '850 patent is invalid based on failure to disclose the best mode, the on-sale bar doctrine, anticipation, obviousness, and failure to name an inventor. A patent is presumed valid, *see* 35 U.S.C. § 282, and an accused infringer must establish by clear and convincing evidence that the claims at issue are invalid. *See Transclean Corp.* v. *Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002). Because the '850 patent carries a presumption of validity, Peerless's request for a declaration of validity is unnecessary as Crimson bears the burden of establishing that the patent is invalid. *Cf. Ball Aerosol & Specialty*

---

[9] Crimson's argument that its brackets have noninfringing uses is unavailing as the claims at issue are apparatus, not method claims. *Cf. IPXL Holdings, LLC.* v. *Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (single claim covering both apparatus and method of use is invalid as indefinite).

*Container, Inc.* v. *Ltd. Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009) ("[C]ourts do not declare patents to be valid, and only declare that they have not been proved to be invalid.").

## CONCLUSION

Crimson's motion for summary judgment of nonfringement [dkt. 134] is denied. Peerless's motion for summary judgment is granted as to infringement [dkt. 170] and is moot as to validity. A separate order will issue regarding the outstanding invalidity contentions. A status hearing is set for October 8, 2013 at 8:30 a.m.

Enter:

Dated: October 1, 2013

_____
JOAN HUMPHREY LEFKOW
United States District Judge