## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

| | | |
|---|---|---|
| PEERLESS INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 11 C 1768 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| CRIMSON AV LLC, and VLADIMIR | ) | |
| GLEYZER, | ) | |
| | ) | |
| Defendant | ) | |

## OPINION AND ORDER

Presently before the court are the objections filed by defendants, Crimson AV, LLC

("Crimson") and Vladimir Gleyzer ("Gleyzer"), to Judge Susan Cox's opinion of May 14, 2013.

(Dkt. 237).[1] The objections relate to the defendants' motion for *in camera* inspection (dkts. 230,

231) of a document plaintiff Peerless, Inc. ("Peerless") inadvertently disclosed to defendants

during discovery. For the foregoing reasons, defendants' objections are overruled and Judge

Cox's ruling of May 14, 2013 is adopted.[2]

## BACKGROUND

The court assumes the reader's familiarity with the background of this case, including

earlier decisions, as well as the underlying litigation and will set out facts only as necessary for

---

[1] Crimson and Gleyzer's objections were timely filed within 14 days of Judge Cox's rulings and are properly before the court. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

[2] This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

disposition of the remaining issues.[3]

Peerless brought suit against defendants based on their manufacture and sale of television mounts, seeking damages for patent infringement, trade dress infringement, tortious interference with contract, civil conspiracy, and violations of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and the Illinois Deceptive Trade Practice Act, 815 ILCS 510/1 *et seq.* (Dkt. 55.) This court dismissed Peerless's claims for tortious interference with contract and civil conspiracy (dkt. 110), granted Peerless summary judgment as to infringement of United States Patent 7,823,850, held that Peerless's motion for summary judgment as to validity of that patent was moot, and denied Crimson's motion for summary judgment as to noninfringment (dkt. 330).

The current dispute is one of many discovery-related disagreements that have plagued the parties in this case, which Magistrate Judge Cox has handled admirably. On May 14, 2013, Judge Cox denied defendants' motion for an *in camera* inspection of a certain privileged document ("the memorandum") that Peerless inadvertently produced during discovery.[4] (Dkt. 237.) The memorandum, which is not of record, allegedly contains an assessment of Peerless's suit by its attorneys, Foley & Lardner.[5] (Dkt. 230 at 2.) In their motion, defendants asked Judge

---

[3] In particular, the court laid out the relevant facts in this dispute in its October 1, 2013 Opinion and Order (dkt. 330) granting Peerless's motion for summary judgment as to infringement and denying Crimson's motion for summary judgment as to noninfringment.

[4] As Judge Cox notes in her ruling, as soon as defendants discovered that Peerless had produced the memorandum, which is labeled "Privileged and Confidential; Attorney-Client Privileged; Attorney Work Product," they contacted Peerless to inform it of its error in producing the document. (Dkt. 237.) There is no dispute over whether the memorandum itself is privileged, but instead whether the crime-fraud exception applies to render the memorandum admissible regardless of its privileged status.

[5] The court will refrain from quoting specific portions of the memorandum so as not to intrude on the attorney-client and attorney work product privileges.

Cox to engage in an *in camera* inspection of the memorandum, sought a ruling that the memorandum is discoverable under the crime-fraud exception to the attorney-client privilege or work product doctrine, and requested sanctions against Peerless's attorneys pursuant to 28 U.S.C. § 1927. (*Id.* at 1.) They argued before Judge Cox, as they do here, that the memorandum demonstrates that this litigation is a "sham" and that this suit constitutes "fraud upon the Court." (*Id.* at 6.) They also argued that Foley & Lardner attorneys suborned perjury when Peerless's Rule 30(b)(6) corporate representative testified in his deposition in a manner that defendants assert is inconsistent with the contents of the memorandum. (*Id.* at 10.)

In her ruling, Judge Cox stated that Defendants based their arguments on their assertion that the memorandum "demonstrates that the law firm representing plaintiff filed, and continues to pursue, a lawsuit against defendants knowing that it is without legal merit." (Dkt. 237 at 1.) She explained that defendants referenced portions of the memorandum to argue "that plaintiff's counsel recognized plaintiff did not have a strong patent infringement claim, and noted that litigation would only 'distract and delay' defendants['] entry into the market place." (*Id.*) She found that Peerless's "potential improper goal in pursuing this case," however, did "not constitute a crime or fraud." (*Id.*) She also declined to impose sanctions pursuant to 28 U.S.C. § 1927, finding that she had "no basis upon which to find that plaintiff's claims are 'entirely without support.'" (*Id.* (quoting *Brandon* v. *Advanced Corr. Healthcare, Inc.*, No. 06 C 1316, 2010 WL 4705513, at *1 (C.D. Ill. Nov. 12, 2010)).)

The magistrate judge acknowledged defendants' "concern throughout this litigation that the lawsuit was brought for an improper purpose" and "accept[ed] for purposes of this motion that defendants believe this document may shed some light on their concerns." (Dkt. 237 at 2.)

But she held that a single memorandum acknowledging weaknesses of the case did not support a

finding that Peerless brought a frivolous suit against defendants. (*Id.*) She also advised

defendants that the proper claim to make when a party pursues litigation to obtain a competitive

advantage is an abuse of process claim. (*Id.* at 1-2.) Based on her conclusion, she ordered

defendants to promptly return the memorandum to Peerless. (*Id.* at 2.) Defendants timely

objected to Judge Cox's order. (Dkt. 257.)

## LEGAL STANDARD

Rule 72(a) governs a district court's review of a magistrate judge's discovery-related

decision. Fed. R. Civ. P. 72(a); *Banks* v. *Enova Fin.*, No. 10 C 4060, 2012 WL 5995729, at *2

(N.D. Ill. Nov. 30, 2012). The district court may modify or set aside a magistrate judge's

decision of a nondispositive matter if it is "clearly erroneous or is contrary to law." Fed. R. Civ.

P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Under the clear error standard, the district court

may overturn a magistrate judge's determination only if it "is left with the definite and firm

conviction that a mistake has been made." *Weeks* v. *Samsung Heavy Indus. Co.*, 126 F.3d 926,

943 (7th Cir. 1997). "In general, a magistrate judge's choice between two permissible views of

the facts will not meet the clearly erroneous standard." *Banks*, 2012 WL 5995729, at *2; *Webb*

v. *CBS Broad., Inc.*, No. 08 C 6241, 2011 WL 842743, at *2 (N.D. Ill. Mar. 8, 2011).

Whereas a magistrate judge's factual findings are reviewed under the clear error

standard, *see Banks*, 2012 WL 5995729, at *2, judges in this district conduct a "full review" of a

magistrate judge's conclusions of law. *See, e.g., Henry* v. *Centeno*, No. 10 C 6364, 2011 WL

3796749, at *2 (N.D. Ill. Aug. 23, 2011) (determining that it would "conduct a full review" of

the magistrate judge's order where the magistrate judge's "legal determinations informed her

4

findings"); *Mayer* v. *Small*, No. 85 C 1502, 1989 WL 121207, at *2 (N.D. Ill. Oct. 2, 1989)

("[P]resumably, the 'contrary to law' prong of the[28 U.S.C.] 636(b)(1)(A) standard requires *de novo* review of questions of law."); *Jernryd* v. *Nilsson*, 117 F.R.D. 416, 417 (N.D. Ill. 1987)

("Because [the magistrate judge's] order is based upon legal conclusions and not on his findings of fact, the clearly erroneous standard does not apply and the scope of our review on this motion is plenary.").

A magistrate judge's decision regarding sanctions is reviewed *de novo*. *See Retired Chi. Police Ass'n.* v. *City of Chi.*, 76 F.3d 856, 868-89 (7th Cir. 1996). This is because "the power to award sanctions is like the power to award damages and thus belongs in the hands of the district judge." *Traharne* v. *Wayne Scott Fetzer Co.*, 156 F. Supp. 2d 690, 696 (N.D. Ill. 2001) (citing *Alpern* v. *Lieb*, 38 F.3d 933, 935 (7th Cir. 1994)).

A party may obtain discovery regarding any matter that is relevant and not privileged. *CSC Holdings, Inc.* v. *Redisi*, 309 F.3d 988, 995-96 (7th Cir. 2002) (quoting Fed. R. Civ. P. 26(b)(1)). Even privileged materials may be discoverable, however, because the attorney-client privilege and the work product privilege may be waived. *Vardon Golf Co.* v. *Karsten Mfg. Corp.*, 213 F.R.D. 528, 532, 534 (N.D. Ill. 2003).

## ANALYSIS

Defendants argue that Judge Cox erred in (1) failing to perform an *in camera* inspection of the memorandum; (2) concluding that the crime-fraud exception does not apply to strip the memorandum of its privileged status; and (3) refusing to impose sanctions pursuant to 28 U.S.C. § 1927. (Dkt. 257).

I.    *In Camera* Review and the Crime-Fraud Exception

    A.    Standard for Invoking Crime-Fraud Exception and *In Camera* Review

Federal courts recognize both the attorney-client privilege and the work product doctrine. *See, e.g., United States* v. *BDO Seidman, LLP*, 492 F.3d 806, 814-15 (7th Cir. 2007); *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir. 1980). The attorney-client privilege protects communications made (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship. *BDO Seidman*, 492 F.3d at 815. The purpose of the attorney-client privilege is to "encourage full disclosure by clients to their attorneys so that clients can obtain fully informed legal advice." *Apotex Corp.* v. *Merck & Co.*, 229 F.R.D. 142, 146 (N.D. Ill. 2005). As noted, there are circumstances in which a document loses these protections. An example of this is where a document "relate[s] to communications made in furtherance of a crime or fraud"—the so-called "crime-fraud exception." *Vardon*, 213 F.R.D. at 535. The party seeking to invoke the crime-fraud exception must "present *prima facie* evidence that 'gives colour to the charge' by showing 'some foundation in fact' . . . justify[ing] the district court in requiring the proponent of the privilege to come forward with an explanation for the evidence offered against it." *BDO Seidman*, 492 F.3d at 818 (quoting *United States* v. *Al-Shahin*, 474 F.3d 941, 946 (7th Cir. 2007)); *see also Vardon*, 213 F.R.D. at 535 (exception applies if (1) the party attempting to circumvent the privilege can make a *prima facie* showing of fraud, and (2) the communications in question are in furtherance of the misconduct). The party seeking to abrogate the privilege meets its burden if it brings forth sufficient evidence to justify the district court in requiring the proponent of the privilege to come forward with an explanation for the evidence offered against

it. *BDO Seidman*, 492 F.3d at 818. The privilege remains if the court "finds the [proponent of the privilege's] explanation satisfactory." *Id.* (quoting *United States* v. *Davis*, 1 F.3d 606, 609 (7th Cir. 1993)).

Oftentimes, to make out its *prima facie* case that the crime-fraud exception applies to a particular document, a party will ask the court to review that document *in camera*. The showing a party must make to justify an *in camera* review is less stringent than the showing it must make to present a *prima facie* case that the crime-fraud exception applies. *See Abbott Labs.* v. *Andrx Pharm., Inc.*, 241 F.R.D. 480, 489 (N.D. Ill. 2007). Specifically, before engaging in an *in camera* inspection of a potentially privileged document, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States* v. *Zolin*, 491 U.S. 554, 572, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989) (internal quotation omitted). Contrary to Defendants's assertions that an *in camera* review is "required" if this showing is made (dkt. 279 at 2), the Supreme Court has stated that once the proponent of the review makes a sufficient showing, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Zolin*, 491 U.S. at 572. Factors for the court to consider in deciding whether to undertake an *in camera* review include (1) the volume of materials it has been asked to review, (2) the relative importance to the case of the alleged privileged information, and (3) the likelihood that the evidence produced through the *in camera* review, together with other available evidence, will establish that the crime-fraud exception applies. *Id.* "The rule allowing for *in camera* review does not presuppose any particular quantum of evidence establishing the appropriateness of the exception itself, merely

7

enough evidence to support a 'good faith belief by a reasonable person' that such review may reveal evidence establishing the exception." *United States* v. *Boender*, 649 F.3d 650, 656 (7th Cir. 2011) (quoting *Zolin*, 491 U.S. at 572).

"Fraud consisting of the knowing pursuit of baseless litigation may bring the crime-fraud exception into play." *Motorola, Inc.* v. *Vosi Techs., Inc.*, No. 01 C 4182, 2002 WL 1917256, at *6 (N.D. Ill. Aug. 19, 2002) (citing *In re Richard Roe, Inc.*, 168 F.3d 69, 71-72 (2d Cir. 1999)). Typically, however, a party alleging that the crime-fraud exception applies in such a situation must show "probable cause" that the litigation or an aspect thereof "had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud." *Richard Roe*, 168 F.3d at 71.

The particular type of fraud that defendants invoke here, fraud on the court, involves fraud that is "directed to the judicial machinery itself." *Matter of Whitney-Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir. 1985) (quoting *Bulloch* v. *United States*, 721 F.2d 713, 718 (10th Cir. 1983)). This type of fraud "involves circumstances where the impartial functions of the court have been directly corrupted" and cases applying this fraud "have involved the most egregious conduct involving 'corruption of the judicial process itself." *Whitney-Forbes*, 770 F.2d at 718 (citing 11 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 2870, pp. 254-55 (1973)).

Some courts have recognized that committing "fraud on the court" is grounds to apply the crime-fraud exception. *See, e.g., 1100 West, LLC* v. *Red Spot Paint & Varnish Co.*, No. 1:05-cv-1670, 2009 WL 232060, at *6 (S.D. Ind. Jan. 30, 2009). For example, in *1100 West*, the court held that a party and its attorneys had committed fraud on the court and lost the protection of the attorney-client privilege and work product doctrine with respect to documents it had failed

to produce. *Id.* at *7. The defendant there consistently represented in court pleadings and in the Rule 30(b)(6) deposition of its corporate representative that a certain type of chemical was never used or spilled on its property. *Id.* at *4. Shortly before trial, however, the plaintiff discovered an Environmental Protection Agency report stating that the chemical was present and had been spilled on the defendant's property. *Id.* at *1. Because the defendant "took steps to deceive [the plaintiff] and the Court regarding its use, storage, and/or disposal of [the chemical], and used its attorneys to do so," it had committed fraud on the court and documents related to this fraud were discoverable. *Id.* at *6.

### B. Whether the Crime-Fraud Exception Renders the Memorandum Admissible

Defendants argued to Judge Cox that the crime-fraud exception applies to the memorandum because the memorandum demonstrates Peerless engaged in "fraud upon the Court" by bringing this litigation in the first place. (Dkt. 230 at 6.) To that end, they argued that the memorandum shows that "the instant litigation was filed with the intent to vex, harass, and bleed Defendants dry through the expense of protracted litigation." (*Id.* at 2.) They summarized the memorandum as admitting that "each of Plaintiff's claims are either meritless, resolved, or dismissed." (*Id.*) Given the deference afforded to a magistrate judge's conclusions, however, the court finds that it was not clear error or an abuse of discretion for Judge Cox to decline to conduct *in camera* review of the memorandum.

At the outset, the court addresses the standard of review. Defendants argue that Judge Cox "reached an incorrect conclusion of law by determining that the filing of a meritless lawsuit does not constitute a crime or fraud." (Dkt. 257 at 3.) But the court does not believe that Judge Cox's statement that "we simply cannot stretch the crime-fraud exception to reach this type of

circumstance" (dkt. 237 at 1) can be read in isolation as being "contrary to law." Fed. R. Civ. P. 72(a). Instead, the magistrate judge considered defendants' brief, including the quotations in it from the memorandum, in coming to this decision. She acknowledged these references to the memorandum and stated that defendants relied on these references to "argu[e] that plaintiff's counsel recognized plaintiff did not have a strong patent infringement claim, and noted that litigation would only 'distract and delay' defendants['] entry into the market place." (Dkt. 237 at 1.) Judge Cox thus chose "between two permissible views of the facts," *Banks*, 2012 WL 5995729, at *2, and the court reviews her decision for clear error. *See id.*; Fed. R. Civ. P. 72(a). In other words, the court considers whether it was clearly erroneous for Judge Cox to determine that Defendants had not met the standard the Supreme Court laid out in *Zolin*—that they could not make a showing of a factual basis to support a good faith belief by a reasonable person that *in camera* review of the materials might have revealed evidence to establish the claim that the crime-fraud exception applies. *See Zolin*, 491 U.S. at 572.

Although the "showing that justifies an *in camera* review is less stringent than the showing required to meet the *prima facie* burden" of showing the crime-fraud exception applies, *Abbott Labs.*, 241 F.R.D. at 489, it is not obvious to the court that Judge Cox erred in applying the *Zolin* standard based on the evidence before her. As far as the court can tell from the briefs and exhibits, the memorandum is an assessment of Peerless's chances of success, not an admission of fraud on the court. Defendant has not identified any other statement in the document that would have informed the magistrate judge's assessment. Based on the applicable case law, it was reasonable for Judge Cox to conclude that there was insufficient evidence to find that a reasonable person would have a good faith belief that an *in camera* inspection might

uncover evidence of a crime or fraud. *See, e.g., id.* at 489-90 (although there was sufficient evidence under *Zolin* to engage in an *in camera* review, the crime-fraud exception did not apply to documents allegedly demonstrating plaintiff's fraud on the U.S. Patent and Trademark Office even though they demonstrated a "material" omission the plaintiff made regarding test results related to the patent at issue, because there was no demonstrated "intent to conceal"); *Apotex*, 229 F.R.D. at 147 (counsel's characterization of evidence in earlier litigation did not support invocation of crime-fraud exception absent showing that evidence was withheld or concealed, or false evidence or testimony presented, "even if it now turns out that the evidence that was presented might not have represented the full story"); *Nat'l Educ. Corp.* v. *Martin*, No. 93 C 6247, 1994 WL 233661, at *3 (N.D. Ill. May 26, 1994) (plaintiffs did not make adequate showing for application of crime-fraud exception despite their allegations that party's attorney changed his stance on validity of contract at issue "in order to prevent inquiry into the actual existence or content of" written legal assessments of the contract).

Nor do the cases defendants cite before this court—all of which and more they cited to Judge Cox—compel a different conclusion. *See Richard Roe*, 168 F.3d 69; *H.K. Porter Co.* v. *Goodyear Tire & Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976); *Kupferman* v. *Consol. Research & Mfg. Co.*, 459 F.2d 1072 (2d Cir. 1972); *Dotson* v. *Bravo*, 202 F.R.D. 559 (N.D. Ill. 2001). Indeed, in very few of those cases did a court find that a fraud had been perpetrated against it based on the filing of a meritless suit or otherwise. While the cases may stand for the proposition that it is *possible* that filing a frivolous suit may constitute fraud on the court, Judge Cox did not clearly err in determining that the facts here did not present such a situation.

For example, in *Dotson*, 202 F.R.D. at 562-64, a case on which Gleyzer and Crimson

11

rely, the plaintiff lied about his name to police officers and to the court in his criminal prosecution, and then brought suit using his pseudonym under 42 U.S.C. § 1983 after he was released from prison. In ruling on the defendants' emergency motion for dismissal and discovery sanctions, the court noted that the suit "concerns a plaintiff who accused the defendants of having maliciously lied in connection with their efforts to frame him for a crime that he allegedly did not commit, and thereafter continued their deceit in a cover-up with respect to the matter, but who, himself, from the outset engaged in and continued to engage in an ongoing fraudulent concealment of his true identity." *Id.* at 570. As such, the court concluded there was "[i]ndisputable proof" that "clearly and convincingly" demonstrated that the plaintiff had "deliberately planned and carefully executed a scheme" to deceive state law enforcement, state court, and federal court. *Id.* Peerless and its attorneys cannot be said to have engaged in any such fraud here.

The defendants also cite *H.K. Porter*, 536 F.2d at 1122, a patent case in which the Sixth Circuit affirmed the district court's decision to deny the defendant's motion under Federal Rule of Civil Procedure 60(b) for post-judgment relief based on the district court judge's determination that no fraud had been perpetrated on the court. The defendant argued the plaintiff had knowingly concealed documents and that one of the plaintiff's witnesses perjured himself with the knowledge of the plaintiff's attorney. *Id.* at 1120. The Sixth Circuit, like the district court, acknowledged that these "serious but unsupported charges of fraud, perjury, and subornation of perjury" *could* constitute fraud on the court. *Id.* at 1122. But the court determined that there had not been fraud on the court because the alleged inconsistencies between the witness's testimony in that litigation and a previous litigation could be explained by

12

"differences in the questions to which he was responding, and considering the difficulty of recalling events which occurred twenty-three years prior to his testimony." *Id.* at 1120. Likewise, it was reasonable for Judge Cox to determine that the charges here were similarly "serious but unsupported," and find that defendants had not demonstrated that a reasonable person could have a good faith belief that Peerless and its attorneys committed fraud on the court.

In *Kupferman*, 459 F.2d at 1078-79, another cases cited by defendants, the Second Circuit noted that an attorney *could* commit fraud on the court by instituting a suit or allowing a judgment to be recovered in an action to which he knew there was a complete defense. But the court concluded there had been no fraud perpetrated where an attorney failed to disclose a piece of evidence that proved the opposing party had a complete defense because the attorney made no misrepresentations and the professional ethics code "could hardly be read as requiring [the attorney] to make certain that his opponent was fully aware of every possible defense that could be advanced." *Id.* at 1080-81. In any case, this court does not believe that a lawyer filing a suit while pessimistic of his client's odds of success is equivalent to filing a suit with *actual knowledge* that the defendant had a complete defense to the charges.

Defendants also rely on *Richard Roe*, 168 F.3d at 72, in which the Second Circuit conducted an *in camera* review of documents and determined that they "reflect[ed] varying degrees of optimism or pessimism over particular issues and the ultimate outcome of the case." But the court concluded that those opinions were "garden variety remarks that one would find in any defense file" and did not "suggest[ ] a hopelessness as to the merits of the defense." *Id.* To be sure, the court noted that *if* the litigation "objectively lacked a factual or legal basis," then "a

13

client's directing an attorney to make large numbers of motions solely for purposes of delay would be discoverable," as would be communications related to a witness if a party suborns perjury by that witness to bolster a claim or defense. *Id.* Judge Cox noted here that she was "aware of defendants' concern throughout this litigation that the lawsuit was brought for an improper purpose." (Dkt. 237 at 2.) Yet, with this consideration in mind, she declined to conduct an *in camera* review. Judge Cox stated in her order that she considered all the evidence and defendants's arguments regarding the memorandum, including quotes from it that the defendants insist demonstrate Peerless's improper purpose. (*Id.* at 1.) Having considered this same evidence, the court concludes that Peerless's litigation did not "objectively lack[ ] a factual or legal basis," *Richard Roe*, 168 F.3d at 72, and it was not clearly erroneous for Judge Cox to decide that a reasonable person would not have a good faith belief that an *in camera* review of the memorandum might show evidence of a crime or fraud.

Defendants have not cited to this court, nor was this court able to find, a case within the Seventh Circuit in which a plaintiff who allegedly pursued litigation partly to "delay and distract" a competitor was subject to the crime-fraud exception—as opposed to a situation where a party and its attorneys explicitly lie in pleadings about a central issue in the case. *See 1100 West*, 2009 WL 232060, at *6. Because the cases that defendants cited do not compel the conclusion that the Seventh Circuit would stretch the crime-fraud exception to cover situations such as this, Judge Cox properly determined that there was no basis to conduct an *in camera* review of the memorandum.

Defendants also argue that Foley & Lardner suborned perjury when Peerless's corporate representative testified in a way that is allegedly inconsistent with the reasons the memorandum

gives for Peerless's decision to bring this suit. But, like Judge Cox, the court is not persuaded that the deposition testimony is so inconsistent with the quoted portions of the memorandum as to constitute perjury that Foley & Lardner allegedly suborned. Peerless's 30(b)(6) witness explained that Peerless filed this suit to "stop those specific products or delay their entry into the market because we deemed them to be infringing on our patents." (Dkt. 257 at 6.) Without discussing the contents of the memorandum in this public opinion, the court does not believe that it was unreasonable for Judge Cox to conclude that this response lines up with the assessments of the case therein and the deposition testimony was not perjury. Instead, it was reasonable for Judge Cox to determine that any "alleged inconsistencies" between the memorandum and the Rule 30(b)(6) deposition testimony are not "evidence of perjury . . ., much less subornation of perjury by [Foley & Lardner]." *H.K. Porter*, 536 F.2d at 1120; *compare 1100 West*, 2009 WL 232060, at **4-6 (lie by corporate representative in Rule 30(b)(6) testimony regarding presence of certain chemical on defendant's property that was contradicted by EPA report supported application of crime-fraud exception).

Moreover, the cases that defendants cite to support this proposition suffer from similar infirmities as those discussed above. *See Cleveland Demolition Co.* v. *Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987) (noting that a verdict "may be set aside for fraud on the court if an attorney and a witness have conspired to present perjured testimony" but concluding that the "meager evidence" of perjury—conflict between a witness's testimony and a report—fell "woefully short of proving a fraud on the court"); *Rozier* v. *Ford Motor Co.*, 573 F.2d 1332, 1341-1345 (5th Cir. 1987) (relief pursuant to Rule 60(b) was appropriate where defendant failed to produce document in violation of district court's previously-entered order and lack of

15

document at trial prevented plaintiff from "fully and fairly presenting her case"); *Great Coastal Exp., Inc.* v. *Int'l Bhd. of Teamsters, Chauffeurs Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1357 (4th Cir. 1982) (stating that the involvement of an attorney, "as an officer of the court, in a scheme to suborn perjury would certainly be considered fraud on the court," but declining to consider the question of attorney involvement in the case because the fraud there—false testimony and false affidavits, one of which was incorporated into answers to interrogatories—was not the "d[id] not rise to the level of fraud on the court"); *Synanon Found., Inc.* v. *Bernstein*, 503 A.2d 1254, 1262-63 (D.C. 1986) (affirming dismissal of complaint where record demonstrated "the most egregious conduct" by plaintiffs' attorneys, who assisted plaintiffs in "engag[ing] in a massive scheme . . . to delete incriminating" evidence, and who lied to the judge to "improperly influence the court in its decision" on the defendants' motions to compel).   None of these cases presents a factually similar situation as that here, and none persuades the court that the magistrate judge clearly erred in failing to conduct an *in camera* review.

        Thus, in light of the foregoing, the court concludes that Judge Cox was not clearly erroneous in declining to undertake an *in camera* review of the memorandum.  As discussed above, the cases on which defendants relied did not provide Judge Cox with a convincing basis to conduct an *in camera* review.  Instead, they do support her statement that the crime-fraud exception does not apply "in this type of circumstance."  The statements in the memorandum were the "garden variety remarks that one would find" in any litigant's file, *Richard Roe*, 168 F.3d at 72, and the deposition testimony was not so inconsistent with the memorandum to convince the court otherwise.  Moreover, this court recently granted summary judgment to

16

Peerless on its claims of infringement, indicating that Peerless's suit is not "baseless," as argued

by defendants.[6] (*See* dkt. 330.) Judge Cox's refusal to conduct an *in camera* inspection of the

memorandum is affirmed.[7]

## II.      Sanctions

Defendants object to Judge Cox's failure to award sanctions pursuant to 28 U.S.C. §

1927. As noted above, the court reviews this decision *de novo*, *see Retired Chi. Police Ass'n*, 76

F.3d at 868-69, and affirms.

Section 1927 provides that the court may require an attorney to "satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred" if that attorney "multiplies the

proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "Sanctions against

counsel under 28 U.S.C. § 1927 are appropriate when 'counsel acted recklessly, counsel raised

baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise

showed indifference to statutes, rules, or court orders.'" *Grochocinski* v. *Mayer Brown Row &

Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (quoting *Kotsilieris* v. *Chalmers*, 966 F.2d 1181,

1184-85 (7th Cir. 1992)). Conversely, sanctions under Section 1927 are inappropriate where a

party's legal position "was not so frivolous (in the legal sense) as to call for taxing their lawyer

with fees," even if those positions were "indeed weak." *Boksa* v. *Keystone Chevrolet Co.*, 553 F.

Supp. 958, 962 (N.D. Ill. 1982) (denying motion for sanctions against plaintiffs' attorney for

moving for summary judgment in Truth in Lending Act action where "there was at least a

---

[6] To be sure, Defendants have contested that order by moving for reconsideration of it. (Dkt. 349.)

[7] Defendants include a footnote requesting that they be able to use the memorandum to impeach Peerless's corporate representative at trial. Because the court has determined that the memorandum is subject to the attorney-client privilege, the court denies this request.

minimal question of contractual and legal interpretation raised," even though plaintiffs ultimately lost); *see also Weiss* v. *Coca-Cola Bottling Co. of Chi.*, No. 91 C 1475, 1994 WL 327381, at *11 (N.D. Ill. July 6, 1994) (denying sanctions under Section 1927 even though the "court would characterize the evidence in plaintiff's favor as very weak," because the plaintiff's claim was not "objectively bereft of a factual basis").

The attorneys' conduct in the two Seventh Circuit on which defendants rely to argue that sanctions are appropriate were truly egregious—much more so than what defendants allege here. Both cases involved situations where the plaintiffs' attorneys had actual knowledge not just that their clients' claims were weak, but that they had no legally cognizable claims against the defendants at all. In *Lorentzen* v. *Anderson Pest Control*, 64 F.3d 327, 329-31 (7th Cir. 1995), for example, the court affirmed sanctions against the plaintiff's attorney in a "baseless" products liability action where the attorney knew for two years that the defendants' products could not have caused the plaintiff's maladies because the products were not present in the schools where the plaintiff was allegedly exposed to them, but refused to dismiss the defendants from the suit. Likewise, in *Finance Investment Company (Bermuda) Ltd.* v. *Geberit AG*, 165 F.3d 526, 532 (7th Cir. 1998), the court affirmed sanctions under Section 1927 where the plaintiff brought suit for violations of the Lanham Act even though it knew that the U.S. District Court for the Southern District of Florida had determined in a previous suit that the defendant had nothing to do with the incident that allegedly harmed the plaintiff. On the contrary, while Peerless's attorneys may have found their clients' claims to be weak, their suit was in no way "objectively bereft of a factual basis," *Weiss*, 1994 WL 327381, at *11, as evidenced by this court's recent opinion granting Peerless summary judgment on its infringement claims. (Dkt. 330.)

18

The court is not persuaded that defendants are entitled to sanctions. That Peerless's attorneys acknowledged weaknesses in their client's claims is insufficient to support sanctions. As discussed above, this court has already determined in another opinion that Peerless's claims are not meritless. (*Id.*) The excerpts of the memorandum that defendants presented do not convince the court that Peerless's sole motivations for bringing this suit were "unreasonabl[e] and vexatious[ ]." 28 U.S.C. § 1927. The court thus affirms Judge Cox's decision regarding sanctions.

## ORDER

For the aforementioned reasons, the court rejects defendants's objections to Judge Cox's May 14, 2013 order (dkt. 237), and affirms her decisions in whole. Defendants are to return the memorandum to Peerless without delay.

Date: November 14, 2013

_____
U.S. District Judge Joan H. Lefkow

19