# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PEERLESS INDUSTRIES, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 cv 1768 |
| v. ) | |
| ) | Judge Joan Lefkow |
| CRIMSON AV, LLC and VLADIMIR ) | |
| GLEYZER, ) | Magistrate Judge Susan E. Cox |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Peerless' renewed motion for sanctions.[1] For the reasons stated below, the Court recommends that the District Court grant the motion in part and deny in part.

## I. GENERAL BACKGROUND

Peerless sued Crimson alleging a number of wrongs arising out of the termination of its agreement with Sycamore, a Chinese company, to manufacture television mounts per Peerless' design and specifications. Shortly after termination, Sycamore began supplying a new company, Crimson, with television mounts. The District Court found that Sycamore was essentially Crimson's alter ego based on testimony to this effect from former Peerless employee and Crimson principal, Victor Gleyzer. Only one of Peerless' causes of action against Crimson is relevant to the instant motion. Peerless claims that Crimson misappropriated the proprietary and confidential information that Peerless supplied to Sycamore when Crimson began manufacturing its competing television mounts. Accordingly, Peerless claims that its trade secrets have been misappropriated by Crimson/Sycamore.

---

[1] Dkt. 321.

From the beginning of the case, Peerless has sought discovery from Crimson/Sycamore regarding information in their possession which they used to design their own competing products. Obviously, the purpose of this discovery is to learn whether Peerless' alleged proprietary information was misappropriated during this design and manufacturing process. However, the discovery process on this subject, like so many subjects in this highly contentious litigation, did not flow smoothly.

The first stumbling block was a dispute between the parties as to whether there was a close enough connection between Sycamore and Crimson to find that Crimson had control over documents maintained at Sycamore. On October 24, 2011, the Court ruled that it did, relying in part on testimony of Mr. Gleyzer at the preliminary injunction hearing before the District Court. After finding that Crimson was responsible for Sycamore's document production, this Court granted Peerless' motion to compel documents relating to its trade secret claim in the custody and control of Sycamore.[2] After this order, Crimson produced over 1500 pages of documents to Peerless, but there were no Sycamore documents produced. Therefore, Peerless filed a motion for sanctions based on Crimson's failure to comply with the Court's order of 3/13/12.[3] Some Sycamore documents were produced during the briefing on this motion. On June 27, 2012, this Court granted most of Peerless' motion for sanctions. The Court again ordered Crimson to produce the Sycamore documents and awarded fees and costs. Crimson filed a motion to reconsider this decision, but that motion was denied on July 17, 2012.[4] Crimson appealed the Court's order to the District Court, but the ruling was upheld on March 22, 2013.[5]

---

[2] Order dated 3/13/12 [dkt 93].
[3] Dkt. 94.
[4] Dkt. 104.
[5] Dkt. 181.

While Peerless sought to obtain the relevant documents regarding its trade secrets claim, it also sought to depose Tony Jin, the principal of Sycamore who was closely involved with the design of both Peerless' and Crimson's products. Peerless moved to compel Mr. Jin's deposition in November 2012. Crimson objected in part based on the fact that Mr. Jin was in China and not under their control. On January 8, 2013, the Court overruled that objection based on its previous ruling and ordered Mr. Jin to appear for his deposition.[6] The Court notes for the record that Mr. Jin is an American citizen (not a Chinese national as counsel for Crimson described him to this Court)[7], was educated in the U.S., and maintains a residence in Oakland, California.

On the same date, the Court ruled on Peerless' motion for sanctions concerning Crimson's inability to identify Sycamore's document retention policies. Although Mr. Jin stated in an affidavit that all requested documents had been produced, or no longer existed, the Court ordered that defendants show that they in fact searched for the requested documents "and, if those documents no longer exist or cannot be located they must specifically verify what it is they cannot produce."[8] This order, entered on January 8, 2013, was also appealed to the district judge who affirmed the decision on March 22, 2013.[9] The Court further notes that despite these two sanctions orders, which dealt with the same discovery omissions, Crimson neither produced all of the documents, nor paid the sanction fee award. Accordingly, on April 15, 2013, the Court ordered Crimson to pay the sanctions award.[10]

On April 23, 2013, on Peerless' further motion to compel, the Court ordered that Crimson comply with our order dated January 8, 2012.[11] The order stated: "[W]e previously ruled on

---

[6] Dkt 131.
[7] In its objection to producing Mr. Jin in the United States, Crimson described Mr. Jin as a Chinese national and directed Peerless to "follow the precepts of the Hague Convention." [dkt. 127, p. 8].
[8] Dkt. 132, p.7.
[9] Dkt. 181.
[10] Dkt. 207.
[11] Dkt. 218.

three separate occasions that defendants were to provide the documents at issue. When they did not do so, we sanctioned defendants for their failure to comply with her orders. We also ordered defendants to verify that they search for the requested documents and, if they no longer existed to verify what it is that could not be produced. Here defendants respond that they have served a declaration from Crimson to that effect. However, after reviewing what defendants attached to the response, Crimson has only provided a verification that they are 'in the process of obtaining a signed verification from Sycamore which will confirm Sycamore's search for all requested documents and produced everything responsive.'"[12] The Court further stated that this response did not comply with its previous orders and defendants were ordered to file a verification specifying what it is that cannot be produce or risk further sanctions from the Court.[13]

It is Crimson's compliance with this Order that is the subject of the instant motion. Peerless originally filed this motion on May 24, 2013, but we denied it without prejudice, ordering Peerless to be more specific about how Crimson allegedly violated the Court's orders and what prejudice it claimed from that alleged failure which could be redressed by an appropriate sanction.[14] Peerless filed a revised motion on September 23, 2013 which is now fully briefed and ready for ruling.[15]

## II. FACTS RELEVENT TO THIS MOTION

Peerless claims that the evidence surrounding this discovery dispute shows that Sycamore and Crimson did not take reasonable steps to preserve evidence when it learned of the possibility that Peerless would bring litigation to enforce its rights and that Crimson/Sycamore did not

---

[12] *Id.*
[13] *Id.*
[14] Dkt. 250; dkt. 262.
[15] Dkt. 321.

4

adequately search for relevant and responsive documents relating to Peerless' misappropriation claim. Certain facts relevant to this motion are not in dispute between the parties.

First, the documents sought by Peerless, documents concerning the mounts Sycamore first manufactured for Crimson after Peerless terminated its supply agreement with Sycamore, were in Sycamore's possession at some point in time before this litigation ensued. Second, it was Mr. Jin of Sycamore who had the primary responsibility for preserving and recovering those documents. Third, defendants have been on notice since at least January of 2010 that Peerless was considering legal action regarding its trade secrets claims. Finally, Crimson has only produced 176 documents which originate with Sycamore and they all date from March 2012 forward and not from the earlier period when Crimson and Peerless began to compete against each other.

Peerless argues that this paucity of materials demonstrates that Sycamore/Crimson did not preserve evidence even though they were aware that litigation was probable. It further argues that Mr. Jin ordered his engineers to "overwrite" files which may have contained relevant documents and failed to properly segregate and preserve electronic files concerning the development of Crimson's competing products. Peerless contends that it has been severely prejudiced by Crimson's failure to produce these materials because it is now unable to show that Sycamore's design of its competing mount for Crimson incorporated confidential design specifications it received from Peerless during their contractual relationship. Therefore, Peerless has requested a directed finding that Crimson has misappropriated its trade secrets or, at a minimum, that the Court shift the burden of proof to Crimson to show that it did not use Peerless' confidential information in the design of its competing products.

For its part, Crimson argues that the specification packages Peerless provided to Sycamore did not contain any confidential information which would rise to the level of trade secrets. Of course, this contention, if true, does not really address the alleged discovery violation, although it might be relevant to what sanction the Court should impose should it find one occurred. Crimson further maintains that Sycamore returned Peerless' toolings and drawings to it after the parties ended their supply contract and that it did not use any of these materials to manufacture any competing products. Crimson asserts that Mr. Jin's deposition testimony, considered in its entirety, shows that Sycamore not only preserved relevant documents, but produced everything that remained in its possession after Peerless requested it.[16] Finally, Crimson argues that there is no prejudice to Peerless because all of Sycamore's documents ultimately were produced by Crimson.

Both sides heavily rely on the testimony of Mr. Jin who worked with Peerless while Sycamore manufactured mounts per Peerless' designs as well as for Crimson when it began to compete against Peerless, to support their view of what occurred. Therefore, the Court turns to this testimony to determine what happened.

Mr. Jin's testimony was not easy to obtain by Peerless as the above recitation of the facts demonstrates. Once the Court ordered that the deposition take place in America (and before certain Peerless witnesses were required to testify), it was convened on May 10, 2013. Unfortunately, and in the Court's view quite unnecessarily, Crimson and Mr. Jin apparently required that his testimony be given in Chinese through an interpreter. However, as the deposition revealed, Mr. Jin understood and frequently communicated in English. The presence of the interpreter, which slowed the proceedings considerably and required frequent interruptions

---

[16] This last statement is demonstrably not accurate as it took several orders of the Court to compel Crimson/Sycamore to produce materials in Sycamore's possession.

of the deposition while the interpreter sought the most accurate Chinese translation, make the deposition testimony very difficult to follow. In addition, counsel for Crimson frequently objected to questions about the document preservation, retention, and production practices employed by Mr. Jin which devolved into quarrels between counsel that grew more heated as the day wore on.[17]

In spite of these problems, certain facts emerged from Mr. Jin's testimony. Mr. Jin described the process which Peerless used to enable Sycamore to manufacture its television mounts. He stated that Peerless would send Sycamore a package that included drawings, bills of material, packaging instructions, assembly instructions and other information about how to make the product. Sometimes Peerless also provided engineering help. After the agreement was terminated, Sycamore began discussing producing mounts for Crimson almost immediately. Mr. Jin then described his efforts to gather drawings and other documents, relating to Sycamore's work for Crimson, requested in this lawsuit. He stated that he asked his engineers to look for all relevant documents and believes that these engineers, with whom he communicated orally, produced these documents. Mr. Jin admitted that he did not do much to follow-up on his requests to the engineers and that counsel for Crimson was not involved in the search for relevant documents.

---

[17] For example, on page 139 of the transcript provided to the Court, after objecting to a question about whether any tooling was given to certain Peerless' personnel (which the witness had not actually answered, counsel for Crimson stated: "He has answered it. He has answered it four times now. He has answered it for you. You are wasting time. It is obvious now what you are trying to do, what you have been trying to do the whole case. It is one of the worst cases in the history of the world. You are wasting time spending these people's money trying to grind Crimson to the ground. And it is not going to happen. It is not going to happen. Your day of reckoning is about to come. I mean, anybody who reads this record, it only reinforces what we've telling the court from the beginning. He's got a bad case and you were – – any are trying to turn it into a discovery nightmare, which is – – which is... Go ahead, answer – – ask you questions. Keep asking the same question 12 times. Why don't you ask about the trade secrets. Show him the trade secrets that they are you saying? I want to see those. I can't wait until you guys show up with some trade secrets. Go ahead. I'm sorry." When counsel for Peerless commented that these remarks were inappropriate, counsel for Crimson retorted: "Too bad. Your whole case is inappropriate."

In addition, Mr. Jin stated that the individual in charge of the computer systems at Sycamore did not have involvement in the search for relevant documents. Mr. Jin also testified that once Sycamore stopped working for Peerless, there was no need for the engineers to retain documents relating to Peerless' products on their computers. He maintained that all of the specification packages were returned to Peerless before he instructed his engineers to delete Peerless' information from their systems. Mr. Jin stated that, as Sycamore updated and changed its production design and process, earlier iterations of their products would have been overridden by Sycamore's engineers. Finally, with respect to e-mail correspondence, Mr. Jin went through e-mails existing on the system and determined on his own which documents were relevant to this dispute and segregated these files in a single location. It was not clear from his testimony when exactly these efforts were made.

Other facts relevant to this motion also emerged. First, it is clear that there was no effort by Crimson or its counsel to place a preservation hold on Sycamore's documents after learning that this litigation was probable. Second, Mr. Jin was not guided by any attorney employed by Sycamore or Crimson regarding what documents should be produced in this lawsuit. Rather, he, on his own, was free to determine what was relevant and what was not. Third, once he decided something was not relevant, it is clear that those documents were destroyed. Finally, it is crystal clear that these documents, to the extent they ever existed, are now unavailable.

## III. LEGAL STANDARD

Both the Court's inherent powers as well as the Federal Rules of Civil Procedure give the Court the authority to sanction a party for failure to preserve documents.[18] A motion for discovery sanctions can be made when a party either destroys or fails to preserve evidence which

---

[18] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991); *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993).

it controls and which it could reasonably foresee to be material to a potential lawsuit.[19] The purpose of sanctions is to prevent abuses of the judicial system and to promote the efficient administration of justice.[20] The Court's power to sanction includes sanctioning parties that fail to preserve potential evidence that would have been discoverable.[21] Sanctions "must be proportionate to the circumstances surrounding the failure to comply with discovery."[22]

To find that sanctions for spoliation are appropriate, the Court must find the following: (1) that there was a duty to preserve the specific documents and/or evidence, (2) that the duty was breached, (3) that the other party was harmed by the breach, and (4) that the breach was caused by the breaching party's willfulness, bad faith, or fault.[23] If the Court finds that sanctions are appropriate, it must determine whether the proposed sanction can ameliorate the prejudice that arose from the breach; if a lesser sanction can accomplish the same goal, the Court must award the lesser sanction.[24]

First, a party has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action.[25] A document is potentially relevant, and thus must be preserved for discovery, if there is a possibility that the information therein is relevant to any of the claims.[26] The existence of a duty to preserve evidence does not depend on a court order.[27] Instead, it arises when a reasonable party would anticipate litigation.[28]

---

[19] *Porche v. Oden*, No. 02 C 7707, 2009 WL 500622, at *3 (N.D.Ill. Feb. 27, 2009) (citing Fed. R. Civ. P. 37(c)(1)).
[20] *Chambers,* 11 F.3d at 1367.
[21] *Wigninton v. Ellis*, No. 02 C 6832, 2003 WL 22439865, at *3 n. 5 (N.D. Ill. Oct. 27, 2003).
[22] *Langley v. Union Electric Co.*, 107 F.3d 510, 515 (7th Cir. 1997) (internal citations omitted).
[23] *Porche*, 2009 WL 500622 at *5.
[24] *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *9 (N.D. Ill. Aug. 18, 2005).
[25] *Bryant v. Gardner*, 587 F. Supp. 2d 951, 967-68 (N.D. Ill. 2008).
[26] *Ares-Serano, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 219 (D. Mass 1993).
[27] *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).
[28] *Id.*

Second, the duty to preserve evidence must have been breached.[29] In the Northern District of Illinois, a party's failure to issue a litigation hold is not *per se* evidence that the party breached its duty to preserve evidence.[30] Instead, reasonableness is the key to determining whether or not a party breached its duty to preserve evidence.[31] It may be reasonable for a party to not stop or alter automatic electronic document management routines when the party is first notified of the possibility of a suit.[32] However, parties must take positive action to preserve material evidence.[33]

Third, the breach must have harmed the other party and, fourth, there must be a sufficient level of fault to warrant sanctions.[34] Findings of willfulness, bad faith, and fault are all sufficient grounds for sanctions.[35] However, a court may only grant an adverse inference sanction upon a showing of bad faith.[36] Bad faith requires the intent to hide unfavorable information.[37] This intent may be inferred if a document's destruction violates regulations (with the exception of EEOC record regulations).[38] Fault is defined not by the party's intent, but by the reasonableness of the party's conduct.[39] It may include gross negligence of the duty to preserve material

---

[29] *Porche*, 2009 WL 500622 at *5.
[30] *Haynes v. Dart*, 08 C 4834, 2010 WL 140387 at *4 (N.D. Ill. Jan 11, 2010).
[31] *Id.*, *citing Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992).
[32] *Cache La Poudre, Inc. v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 624 (D. Colo. 2008).
[33] *Danis v. USN Communications, Inc.*, 2000 WL 1694325, at *36, *38 (N.D. Ill. Oct. 23, 2000).
[34] *Porche*, 2009 WL 500622 at *5.
[35] *Id.*; *But see Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) ("a showing [of bad faith] is a prerequisite to imposing sanctions for the destruction of evidence," thereby refusing to issue sanctions because the level of fault had not risen to the level of bad faith.)
[36] *Fass v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008); *But see OCE North America, Inc. v. Brazeau*, 09 C 2381, 2010 U.S. Dist. LEXIS 25523, at *17 (N.D. Ill. March 18, 2010) ("[a]n adverse inference may be appropriate if . . . the breach involved willfulness, bad faith or fault[.]")
[37] *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998).
[38] *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002).
[39] *Id.*

evidence.[40] Mere negligence is not enough for a fact finder to draw a negative inference based on document destruction.[41]

IV.   **ANALYSIS**

Our first task is to determine when Crimson's duty to preserve relevant materials arose and whether that duty was breached. A defendant has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action.[42] Documents are potentially relevant if there exists a possibility that the information in the documents would be relevant to any of the claims.[43] This duty arises when a reasonable party would anticipate litigation and does not depend on a court order.[44] In this case, there is no real dispute that Peerless alerted Crimson in January 2010 that it was anticipating litigation against Crimson for misappropriation of its confidential information. Of course, Crimson is not Sycamore, but as Mr. Gleyzer, Crimson's principal admitted, Sycamore essentially was Crimson's alter ego and, as its only supplier and the depository of all of Peerless' information, it is reasonable to impute Crimson's knowledge to Sycamore.

The next issue is whether Crimson/Sycamore breached its duty to preserve relevant documents. A party fulfills its duty to preserve evidence if it acts reasonably.[45] "More than good intentions [are] required; those intentions [must] be followed up with concrete actions reasonably calculated to ensure that relevant materials will be preserved," such as giving out specific criteria on what should or should not be saved for litigation.[46] In this case, the Court has no trouble finding that Crimson/Sycamore breached its duty to preserve relevant documents. For one thing,

---

[40] *Marrocco v. Gen. Motors*, 966 F.2d 220, 224 (7th Cir. 1992).
[41] *Rodgers v. Lowe's Home Ctrs, Inc.*, 05 C 0502, 2007 WL 257714 at *5 (N.D. Ill. Jan. 30, 2007).
[42] *Bryant*, 587 F. Supp. 2d at 967-68.
[43] *Ares-Serano*, 151 F.R.D. at 219.
[44] *Trask-Morton*, 534 F.3d at 681.
[45] *Haynes*, 2010 WL 140387, at *4, *citing Marrocco*, 966 F.2d at 224.
[46] *Danis*, 2000 WL 1694325, at *36, *38.

it is unclear from the record in this case whether there has ever been any litigation hold at Sycamore, let alone one imposed in January 2010, the date that Crimson first became aware that litigation was threatened. All that seems to have occurred, based on Mr. Jin's testimony, is that he orally informed his engineers to gather responsive documents and after they were collected, he allowed the engineers to overwrite the files. Overwriting the files eliminated any possibility that earlier design versions would be preserved in any meaningful way. Crimson's attorneys were not involved in this process so there was virtually no oversight of Mr. Jin's decision-making. Mr. Jin employed the same process for the collection of e-mail, preserving what he deemed relevant and deleting those he deemed irrelevant. If Crimson's agent, Sycamore, was using Peerless' trade secrets to design its new products, Mr. Jin would have no particular interest in preserving documents which demonstrated this. As the Court found in an another spoliation case, "it is unreasonable to allow a party's employees to make the decision about the relevance of such documents, especially when those same employees have the ability to permanently delete unfavorable email from a party's system."[47]

Perhaps the best evidence that relevant documents were not preserved is that there are no Sycamore documents dated before March 2012, more than two years after Crimson became aware that Peerless was threatening the instant lawsuit, and there are only 213 documents from Sycamore in total. According to Mr. Jin, Sycamore began manufacturing television mounts for Crimson a few months after Peerless terminated its supply contract with Sycamore. Even assuming design drawings are only minimally necessary for the production process, one would expect to find some documents of this kind from 2010 and 2011. Further, Mr. Jin testified that Peerless' specification packages included drawings, bills of material, packaging instructions, assembly instructions, and other information. One can fairly conclude that Crimson's products

---

[47] *Jones v. Bremen High School District* 228, 08 C 3538, 2010 WL 2106640, at *7 (N.D. Ill. May 25, 2010).

would have similar documentation, but none exists. Nor did Sycamore retain Peerless' information, although to be fair to Mr. Jin, he claims to have returned all of this information to Peerless before he allowed his staff to destroy it.

The resulting harm to Peerless is obvious. There are no documents in Crimson's possession which reveal how its products were designed or manufactured in 2010 or 2011 so there is no way for Peerless to determine whether its alleged trade secrets were used by Crimson. It has taken Peerless no less than four separate rulings from the Court to learn that there are no documents which inform on this issue.

The final factor for the Court to determine is the appropriateness of sanctions. The appropriate level of sanctions is determined by whether the defendant acted wilfully, acted in bad faith, or is merely at fault. To find bad faith, a court must determine that the party intended to withhold unfavorable information.[48] Bad faith may be inferred when a party disposes of documents in violation of its own policies.[49] Gross negligence of the duty to preserve material evidence is generally held to be fault.[50]

In this case, there is no way for the Court to determine as a certainty that Crimson acted with a specific intent to withhold unfavorable information from Peerless, but we have no trouble finding that it was grossly negligent. Crimson has not offered any convincing explanation for its failure to preserve evidence at the time it learned of the threatened lawsuit. It merely continues to repeat, as it has from the beginning of this particular discovery battle, that all responsive documents have been searched for and produced. On its face, this assertion is not accurate as it defies common sense to conclude that there are no Sycamore documents from before March 2012. It appears to the Court that in spite of their close relationship, Crimson neither informed

---

[48] *Mathis,* 136 F.3d at 1155.
[49] *Park*, 297 F.3d at 615.
[50] *Marrocco*, 966 F.2d at 224.

Sycamore of its obligations to preserve evidence, nor did it take control over the document retention and production at Sycamore, or even ask Sycamore for copies of Crimson's design and manufacturing documents which, of course, it was entitled to do. Instead the document production was done on an *ad hoc* basis under Mr. Jin's direction and with no oversight from any attorneys familiar with the discovery requirements of the Federal Rules of Civil Procedure.

This failure is inexcusable. Further, it is remarkable that it took more than two years after the Court's original order compelling Crimson to produce these documents to learn that these documents never could be produced because they were never preserved. The Court concludes that a sanction is appropriate in this case.

Having found that a sanction should be imposed, the Court must determine the appropriate level of sanction. Plaintiff has requested a directed finding that defendant misappropriated its trade secrets. Defendant correctly points out that there is no way for the Court to determine on this record whether plaintiff provided defendant with any confidential information which would be protected as a trade secret in the first place. In fact, Crimson intends to argue that the information was publically available and not secret. The Court agrees that this sanction, which presumes that plaintiff has protectable trade secret information, is too severe. Plaintiff does not need discovery from Crimson/Sycamore to demonstrate that the specification packages it provided to Sycamore were protected under the law. In fashioning an appropriate sanction, the Court is mindful that the proposed sanction must be able to ameliorate that prejudice that results from the breach and that if a lesser sanction can accomplish the same goal, the Court must award that lesser sanction.[51]

In this case, the prejudice to plaintiff is that it cannot compare Sycamore's designs of mounts to its own to determine whether its proprietary information was used in the design of the

---

[51] *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 265552509, at *9 (N.D. Ill. Aug. 18, 2005).

competitive product. Accordingly, the Court recommends that the district judge impose the following sanction on Crimson at the trial of this case. Once plaintiff proves that it provided confidential information to Sycamore which constitutes legally protected trade secrets, the burden will shift to Crimson to show that Sycamore did not use this information in its design and manufacture of Crimson's competitive products. Given the dearth of its documents on this point this might be hard to do, but that burden should be placed on the party at fault here and that is the defendant.

Specific written objections to this report and recommendation may be served and filed within 14 business days from the date that this order is served.[52] Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual, and legal made by this Court in the report and recommendation.[53]

**ENTERED: March 13, 2014**            /s/ Susan E. Cox_____
                                       **UNITED STATES MAGISTRATE JUDGE**
                                       Susan E. Cox

---

[52] Fed. R. Civ. P. 72(b)
[53] *See Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).