IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| PEERLESS INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 1768 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| CRIMSON AV LLC and VLADIMIR GLEYZER, | ) ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Before the court are the objections (dkts. 399, 402) filed by defendants, Crimson AV, LLC ("Crimson") and Vladimir Gleyzer ("Gleyzer," and together with Crimson, "defendants"), to Magistrate Judge Susan E. Cox's reports and recommendations of February 27, 2014 (dkt. 395) and March 13, 2014 (dkt. 398).[1] The objections relate to the magistrate judge's rulings on discovery motions. (Dkts. 321, 381.) For the following reasons, the court adopts in part, rejects in part, and modifies in part the February 27, 2014 Report and Recommendation, and adopts the March 13, 2014 Report and Recommendation in full with one addition.[2]

---

[1] Crimson and Gleyzer's objections were timely filed within 14 days of the magistrate judge's rulings and are properly before the court. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

[2] This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

## BACKGROUND

I.  **Underlying Facts**

The court assumes the reader's familiarity with the background of this protracted case, including earlier decisions and the underlying litigation, and will set out facts only as necessary for disposition of the issues before the court.

Peerless entered into a supply agreement with Sycamore Manufacturing Co., Ltd. ("Sycamore"), a Chinese manufacturer, in 2007. Under the supply agreement, Sycamore supplied Peerless with its television mounts. Peerless terminated the supply agreement in March 2010. In May 2010, Crimson was incorporated as a limited liability company with the Illinois Secretary of State. In July 2010, Sycamore began shipping audio-visual equipment to Crimson from China, and Crimson began producing television mounts for sale in the United States. Gleyzer, who had previously worked at Peerless, began working for Crimson on August 1, 2010 as managing director after Sycamore's president, Baohua "Tony" Jin, inquired if Gleyzer would be interested in starting a company in the United States. Peerless alleges that Crimson, with the help of Sycamore and Gleyzer, based the design of its television mounts on Peerless's confidential designs and drawings.

Peerless brought suit seeking damages for patent infringement and various violations of Illinois law. The court granted Peerless summary judgment as to infringement of United States Patent 7,823,850, held that Peerless's motion for summary judgment as to validity of that patent was moot, and denied Crimson's motion for summary judgment as to noninfringment. (Dkt. 330.) The parties are currently briefing Crimson's motions for summary judgment on the patent

claim based on invalidity or unenforceability of the patent (dkt. 409) and on the trade dress infringement and trade secrets claims (dkt. 426).

Over the course of this long-running and acrimonious law suit, the parties have engaged in extensive motion practice, much of it related to their interminable discovery disputes. The present Opinion and Order addresses two of those disputes. On February 27, 2013, the magistrate judge issued a Report and Recommendation recommending that the court deny Crimson's motion for sanctions against Peerless ("the February 27 R&R"). (Dkt. 395.) Crimson had moved for sanctions to obtain compliance with various discovery-related orders the magistrate judge had entered. (Dkt. 381.) In recommending that the court deny the motion for sanctions, the magistrate judge found that Peerless had complied with the orders and, although the timing of some of Peerless's production was "unfortunate," it did not "rise[ ] to the level of sanctionable conduct." (Dkt. 395 at 5.) She did, however, order Peerless to provide a final verification that it had searched for and produced all documents relevant to Crimson's outstanding invalidity contentions. (*Id.*)

Also at issue is the magistrate judge's March 13, 2014 Report and Recommendation ("the March 13 R&R") recommending that the court grant in part and deny in part Peerless's motion for sanctions against Crimson. (Dkt. 398.) Peerless had previously moved for sanctions against Crimson after taking Jin's deposition and learning that Sycamore/Crimson had not properly preserved or produced certain documents. (Dkt. 250.) The magistrate judge denied the motion with leave to refile "with specific references to Tony Jin's testimony and how evidence was either improperly destroyed or how preservation obligations were thwarted." (Dkt. 262.) Peerless accordingly filed a more detailed motion for sanctions, requesting that the court sanction

Crimson by "directing that it be taken as established fact that Sycamore used Peerless' drawings and spec packages, which are the only contemporaneous engineering documents presently in evidence, in its design and manufacture of the accused photos." (Dkt. 321 at 14.) The magistrate judge found that neither Crimson nor its counsel placed a preservation hold on Sycamore's documents after learning of the possibility of litigation in January 2010, that no attorney guided Jin regarding what documents should be produced in the suit, and that documents Jin did not think were relevant were destroyed. (*See* dkt. 398 at 8.) She concluded that Peerless is prejudiced by this spoliation because there is no way to determine whether its alleged trade secrets were used by Crimson, and that Crimson was at least "grossly negligent" in its behavior.[3] (*Id.* at 13.) The magistrate judge did not agree with Peerless's proposed sanction, finding that it was too severe. Instead, she recommended that this court impose the following sanction at trial: "Once plaintiff proves that it provided confidential information to Sycamore which constitutes legally protected trade secrets, the burden will shift to Crimson to show that Sycamore did not use this information in its design and manufacture of Crimson's competitive products." (*Id.* at 15.)

## LEGAL STANDARD

"When a magistrate judge prepares a report and recommendation for a district court, the governing statute provides that the district court 'shall make a *de novo* determination' with respect to any contested matter." *Kanter* v. *C.I.R,* 590 F.3d 410, 416 (7th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)(C)). "*De novo* review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to

---

[3] The magistrate judge stated that there was no way for her to determine whether Crimson acted with specific intent to withhold unfavorable information from Peerless. (*See* dkt. 398 at 13.)

4

the magistrate judge's conclusion." *Mendez* v. *Republic Bank,* 725 F.3d 651, 661 (7th Cir.2013). Although the district judge may take into account all available evidence, she also "may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process." *Id.* "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur* v. *L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 760 (7th Cir. 2009); *see also* Rule 72(b)(3).

## ANALYSIS

### I.  February 27 R&R

Defendants object to the February 27 R&R, arguing that the magistrate judge ignored her prior discovery orders, that she incorrectly found that Peerless followed these orders when it in fact ignored them, and that the magistrate judge is now prejudicially limiting Crimson's discovery.

First, Crimson argues that Peerless did not comply with the May 8, 2013 order, which denied without prejudice defendants' motions to compel production of certain documents but left open the possibility that the discovery could become relevant if Crimson's motion for summary judgment on noninfringement were to be denied. The magistrate judge granted defendants' motion to depose Gennady Plavnik. Peerless complied with this order. The order did not require Peerless to provide any discovery beyond producing Plavnik for a deposition. Defendants have now deposed Plavnik.[4]

---

[4] Defendants note that Peerless did not object to this order. (Dkt. 399 at 6.) Of course Peerless did not object—Judge Cox denied defendants' request.

Second, defendants argue that Peerless did not comply with the magistrate judge's July 23, 2013 order. Again, this order *denied* defendants' motion to compel "except any and all documents relating to the origination of the invention. However, documents relating to origination *do not need to be produced* unless and until there is an adverse ruling to Crimson on their motion for summary judgment." (*Id.* (emphasis added).) Once the court issued an adverse ruling, the magistrate judge revisited her order on October 24, 2013, as discussed below. As the magistrate judge found, Peerless complied with this order.

Third, defendants argue that the February 27 R&R ignores the magistrate judge's October 24, 2013 order (dkt. 359) and her December 3, 2013 order (dkt. 377) and that Peerless did not comply with either. In the October 24, 2013 order, the magistrate judge granted defendants' motion to compel discovery of documents referring to the origination and conception of the patent in suit, and to compel the deposition of Peerless's patent attorney, Marshall Brown. She also ordered Peerless, by November 1, 2013, to provide a verification stating that its production was comprehensive and whether certain documents exist. (Dkt. 359 at 3.) On November 4, 2013, Peerless produced additional documents plus a verification of Peerless's representative stating that Peerless had produced "everything." (Dkt. 399 at 10.)

Crimson filed another motion to compel on November 22, 2013 (dkt. 370), arguing that Peerless was withholding additional documents and the verification submitted by Potts was inadequate. At a hearing on Crimson's second motion, the magistrate judge told the parties she believed her orders were being read "as narrowly as possible" and instructed Peerless to produce all remaining documents that Crimson was requesting, a privilege log, and a verification regarding documents Peerless represented that it did not have. (*See* dkt. 381, ex. 4, Transcript of

6

Dec. 3, 2013 hearing before Judge Cox, at 21:17-22, 23:12-15, 24:8-19, 26:24-8.) After the hearing, Judge Cox memorialized her ruling in writing. (Dkt. 377.)

The court rejects the magistrate judge's February 27 R&R insofar as it finds Peerless complied with her October 24 and December 3 orders. Peerless clearly did not. It continued to produce documents throughout December 2013, and defendants argue it still has not produced everything that it has. (Dkt. 399 at 13.) Peerless was ordered to produce documents in November but continued its production until January, and its production may still be incomplete to this day. Given Peerless's failure to follow the magistrate judge's orders, sanctions are appropriate, as discussed below.

Fourth, defendants argue that Peerless's verifications are deficient because they do not address relevant documents in a request-by-request manner. The magistrate judge specifically stated in her February 27 order that "the Court *never* ordered a Request by Request verification." (Dkt. 395 at 4) (emphasis in original). A review of the magistrate judge's orders demonstrates as much. The magistrate judge also noted that regarding defendants' allegation that the declaration Peerless produced in December 2013 was deficient, Peerless "timely responded to this concern" and "agreed to produce documents which were moved or deleted from certain hyperlinked locations[.]" (*Id.* at 4-5.) She noted that while Peerless should have produced these documents earlier, "this hardly rises to the level of sanctionable conduct, especially as it appears that Peerless was attempting to confer with Crimson about its concerns."[5] (*Id.* at 5.) While Peerless was not obligated to produce request-by-request verifications, its verifications were untimely.

---

[5] The magistrate judge ordered Peerless to provide a final verification by March 2, 2014, which it did on March 3, 2014. Crimson argues that this verification is again deficient. Crimson does not point the court to the verification and its arguments are incomplete. The parties have not put the court in a position to determine this issue.

7

To this extent, the court rejects as clearly erroneous the magistrate judge's finding that this conduct was not sanctionable.

Fifth, defendants argue generally that the magistrate judge is improperly limiting their discovery.[6] They note that the magistrate judge stated in her February 27 R&R that, "given the limitations embodied in the district court's order on Crimson's invalidity defenses, [the discovery the magistrate judge ordered on October 24, 2013] was probably overly generous." (Dkt. 395 at 3.) Simply commenting on a previous order does not change the order. The magistrate judge did not narrow her previous rulings based on this court's limitation of Crimson's invalidity defenses. (Dkt. 331.)

Finally, defendants moved to file a brief in reply to Peerless's response. (Dkt. 405.) Most of the reply brief argues that Peerless mischaracterized defendants' arguments and the magistrate judge's rulings. Defendants can rest assured that the court was persuaded by the record of this suit and the magistrate judge's actual rulings, not by either parties' hyperbole or ubiquitous exclamation points.

Rule 37(b)(2)(A) specifies sanctions the court may impose for failure to comply with a discovery order. Further, "[i]nstead of or in addition to the [specified sanctions] the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" unless circumstances make the award unjust. Fed. R. Civ. P. 37(c). Because of Peerless's failure to make timely discovery, defendants were obliged to file multiple motions and make multiple court appearances to gain compliance with the court's orders. The rule plainly obligates Peerless to reimburse defendants for the

---

[6] But Crimson states in its reply that the magistrate judge did not limit its discovery. (Dkt. 405, ex. 1 at 5.)

expenses and attorneys' fees entailed in gaining Peerless's compliance with the magistrate judge's orders. Because the discovery was ultimately made, however, the court will impose this sanction for Peerless's untimeliness instead of any sanction set out in subsection A of Rule 37(b)(2).[7]

In summary, the court adopts the magistrate judge's February 27 R&R except to the extent that it finds Peerless complied with her October 24 and December 3 orders. As a sanction for failure to comply with those orders, Peerless is ordered to pay defendants' reasonable expenses and attorney's fees associated with their November 22, 2013 motion to compel (dkt. 370), their December 3, 2013 appearance before the magistrate judge on that motion (dkt. 377), their motion for sanctions (dkt. 381) and reply brief (dkt. 392), their January 24, 2014 appearance before the magistrate judge on that motion (dkt. 387), and their objections (dkt. 399) and reply brief (dkt. 405) to the February 27 R&R.

## II. March 13 R&R

By contrast, defendants, on the receiving end of proposed discovery sanctions under the March 13 R&R, object to the magistrate judge's recommended sanctions as not warranted. First, defendants argue that Sycamore acted reasonably in its retention and search for documents.[8] The duty to preserve documents arises when a party has a reason to anticipate litigation. *See Trask-Morton* v. *Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). As the magistrate judge

---

[7] This court is not limited to the sanctions set out by Rule 37(b)(2)(A), as it has inherent power to require "submission to their lawful mandates." *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

[8] For example, defendants argue that Sycamore returned all of Peerless's drawings at the conclusion of their relationship. They also argue that Jin preserved documents related to the lawsuit once the suit was initiated and instructed his employees to do the same, and that he segregated documents responsive to Peerless's requests. Defendants also contend that Crimson's counsel worked with Jin in directing the document search.

9

correctly found, Crimson's duty to preserve arose in January 2010 when Peerless notified Crimson and Sycamore that it intended to file suit against them. (Dkt. 398 at 5.) Jin's deposition is difficult to follow, as the magistrate judge pointed out, and the court agrees with her that it is unclear whether a litigation hold was put in place at any time, let alone in 2010. The magistrate judge was also correct in her assessment that Jin was largely left to decide on his own what documents should be preserved, leading to the destruction of documents. The mere fact that Jin testified that Crimson's attorneys instructed him as to some documents to produce does not change this result, as their duty extended beyond this. The court adopts the magistrate judge's conclusion that Crimson and Sycamore did not act reasonably in their document retention and search.

Second, defendants argue that Crimson breached no duty to preserve documents. There is ample evidence that Crimson did not preserve all documents it should have, as reflected in the magistrate judge's finding that "there are no Sycamore documents dated before March 2012, more than two years after Crimson became aware that Peerless was threatening the instant lawsuit." (Dkt. 398 at 12.) It was insufficient to leave Jin to his own devices to instruct employees to preserve documents he considered relevant. The court adopts the magistrate judge's conclusion that defendants' document preservation conduct was unreasonable.

Third, defendants argue that Peerless has suffered no prejudice by virtue of Crimson/Sycamore's failure to comply with document retention and production procedures. They disagree with the magistrate judge's determination that the non-existence of the early Sycamore/Crimson drawings leaves Peerless without a way to prove that defendants misappropriated Peerless's trade secrets. They contend, *inter alia*, that they could not have used

10

any of Peerless's alleged trade secrets in Crimson's products because Jin returned all drawings to Peerless at the conclusion of the parties' relationship. In any event, they argue, Peerless over-designated its trade secrets and does not know which of its designs it transmitted to Crimson. All of these arguments miss the operative point, which is that defendants did not properly retain and produce all relevant documents, rendering Peerless's task of proving that Crimson and Sycamore used its trade secrets very difficult if not impossible. The court adopts the magistrate judge's determination that Peerless suffered prejudice.

Finally, defendants argue that the burden-shifting sanction recommended by the magistrate judge is too harsh, and that it is more prejudicial to defendant than the adverse inference instruction she considered and rejected as too punitive. They argue that Peerless is better off with the burden-shifting sanction than it would have been had it received the missing documents.

To determine whether sanctions are appropriate, courts consider (1) whether a party breached its duty to preserve or produce documents; (2) whether that party was at fault for the breach; (3) whether the opposing party was prejudiced by the breach; and (4) the extent to which prejudice can be lessened by sanctions. *See, e.g., Top Tobacco, L.P.* v. *Midwestern Cash and Carry, LLC*, No. 11 C 4460, 2012 WL 4490412, at *1 (N.D. Ill. Sept. 27, 2012) (affirming magistrate judge's sanctions recommendation). "[S]anctions may be appropriate in any one of three instances—where the noncomplying party acted *either* with willfulness, bad faith *or* fault." *Marrocco* v. *Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (emphasis in original) (citing *Nat'l Hockey League* v. *Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976) (per curium)). "'Fault' . . . doesn't speak to the noncomplying party's disposition

at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation." *Id.* It is thus appropriate to impose sanctions when a party is grossly negligent, as the magistrate judge found, in fulfilling its discovery obligations. *See id.* (sanctions appropriate for grossly negligent mishandling of potential evidence).

The March 13 R&R indicated that all conditions for imposing sanctions were met and recommended that the most appropriate sanction would be that at trial, once Peerless shows it provided its trade secrets to Sycamore, the burden would shift to Crimson to show that Sycamore did *not* use the information in its design and manufacture of Crimson's products. (Dkt. 398 at 14.) The magistrate judge specifically did not recommend an adverse inference instruction because she could not determine "as a certainty that Crimson acted with a specific intent to withhold unfavorable information from Peerless," as required for an adverse inference instruction. (*Id.* at 13 (citing *Mathis* v. *John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)); *see also Norman-Nunnery* v. *Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010) ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information.").)

In its motion for sanctions Peerless requested the court to impose the sanction of Rule 37(b)(2)(A)(i), by directing the jury that it be taken as established fact that Sycamore used Peerless's drawings and spec packages in its design and manufacture of the accused products. (Dkt. 321 at 14.) Instead, the magistrate judge fashioned a less onerous instruction that merely assumes a *prima facie* showing of misappropriation, which allows defendants to show at trial

they did not do so.[9] Defendants, then, are not in a good position to argue that a narrower sanction than one specifically authorized by the Federal Rules of Civil Procedure is contrary to law. See *Gayton* v. *Kapus*, 181 F.R.D. 573, 580 (N.D. Ill. 1998) ("The federal courts' supervision of the discovery process, and the courts' concomitant authority to upbraid those who do not play by the rules, is rooted in the need for maintaining the integrity of the trial process. Hence the impetus behind a court's deployment of sanctions is not merely to punish a party for untoward acts or omissions; it is, equally, to deter other litigants from disregarding the imperatives of the Civil Rules.") (quoting *Thibeault* v. *Square D Co.*, 960 F.2d 239, 245 (1st Cir. 1992)).

The court has considered the alternative of a spoliation instruction, which can be used where a party has intentionally destroyed evidence. *See* Seventh Circuit Pattern Jury Instruction 1.20. The instruction permits a jury to infer that particular evidence would have been produced at trial had it not been unfavorable to the party who possessed it. These instructions require the jury to find bad faith in order to draw an inference against a party. *See Mathis*, 136 F.3d at 1155 ("'Bad faith' is a question of fact like any other, so the trier of fact is entitled to draw any reasonable inference."); *see also Norman-Nunnery*, 625 F.3d at 428 (defining bad faith

---

[9] The court agrees with the magistrate judge that determining the fact of misappropriation established is too harsh because, as she wrote, "there is no way for the Court to determine on this record whether plaintiff provided defendant with any confidential information which would be protected as a trade secret in the first place [in that] Crimson intends to argue that the information was publically available and not secret." (Dkt. 398 at 14.) *See, e.g., Knight* v. *F/T Endurance*, No. A94-121 CV, 1996 WL 376353, at *9 (D. Alaska Feb. 6, 1996 ("When spoliation of evidence is claimed, the burden of proof can be shifted to the other side . . . [if] the absence of the evidence . . . hinders the claimant's ability to establish a *prima facie* case.") (citing *Sweet* v. *Sisters of Providence in Wash.*, 895 P.2d 484, 491 (Alaska 1995)). Under this standard, burden shifting would be proper because, without access to the documents that defendants failed to preserve, Peerless cannot demonstrate that defendants misappropriated its trade secrets. On the other hand, at least one court has indicated that a finding of bad faith may be necessary for burden shifting. *See Beniushis* v. *Apfel*, No. 98 C 395, 2001 WL 303548, at *8 (N.D. Ill. Mar. 27, 2001).

pertaining to spoliation). In short, the spoliation instruction is not well suited to the situation. Inevitably, it would entail offering before the jury the complicated circumstances surrounding defendants' failure to preserve an array of documents. This would not only be an unseemly display, it would be a major distraction from the real issues in the case.

Having carefully considered the magistrate judge's March 13 R&R and the objections, this court agrees with her findings of fact, and her recommended sanction reflects a measured choice that is well founded in the Rules of Civil Procedure, and in keeping with this court's inherent power to require compliance with its orders. Therefore, the report and recommendation is adopted with respect to the March 13 R&R. Peerless is also awarded reasonable expenses and attorney's fees entailed in pursuing this discovery. In particular, Peerless is awarded its reasonable expenses and attorney's fees associated with its motion for sanctions (dkt. 321) and reply brief (dkt. 361), and its response to Crimson's objections to the March 13 R&R (dkt. 408).

## III. Conclusion

The very busy magistrate judge has done yeoman service to the parties and the court in resolving discovery disputes in this case. Lack of compliance with well-established discovery protocols and unnecessary discovery disputes have delayed this already stale litigation.[10] While inter-party disagreements are inherent to litigation, there is no need for parties unnecessarily to waste each other's, their clients', or the court's time and resources. *See Sommerfield* v. *City of Chicago*, 613 F. Supp. 2d 1004, 1005 (N.D. Ill. 2009) ("Some of what has gone on in the case is

---

[10] An extraordinary 450 docket entries were made during pretrial proceedings. The magistrate judge's frustration is palpable from the transcripts, and she even went so far as to state, "I don't know what the issue is, but I have to say, and I don't like saying this, but in six and a half years, going on seven in August, I have never had two entities that have been as contentious as the two entities before me right now. There has not been a single smooth thing that's happened in discovery in this case." (Dkt. 381, ex. 4 at 20:21-2.) The court agrees with her assessment.

simply inherent in an adversarial system in which discovery plays an integral role. But not all. And those aspects that were not have squandered scarce judicial resources. Each hour needlessly spent on a dispute that could be profitably spent on a case in which resolution of the issues could only come from the court is an hour wasted.") (citing *Chicago Observer, Inc.* v. *City of Chicago*, 929 F. 2d 325, 329 (7th Cir. 1991)). The time has come to require the parties to take responsibility for their conduct.

**ORDER**

Defendants' objections (dkts. 402, 399) to Magistrate Judge Susan Cox's Reports and Recommendations of February 27, 2014 (dkt. 395) and March 13, 2014 (dkt. 398) on the parties' motions for sanctions (dkts. 321, 381) are overruled in part and sustained in part. The court adopts the March 13, 2014 R&R in whole with the addition that defendants shall pay Peerless its reasonable expenses and attorney's fees associated with its motion for sanctions (dkt. 321) and reply brief (dkt. 361), and its response to Crimson's objections to the March 13 R&R (dkt. 408). The court adopts the February 27, 2014 R&R in part but orders Peerless to pay defendants' reasonable expenses and attorney's fees associated with their November 22, 2013 motion to compel (dkt. 370), their December 3, 2013 appearance before the magistrate judge on that motion (dkt. 377), their motion for sanctions (dkt. 381) and reply brief (dkt. 392), their January 24, 2014 appearance before the magistrate judge on that motion (dkt. 387), and their objections (dkt. 399) and reply brief (dkt. 405) to the February 27 R&R. The parties are directed to work together as set out in Northern District of Illinois Local Rule 54.3(d) to endeavor to resolve the expenses and fees.

Date: July 14, 2014

U.S. District Judge Joan H. Lefkow