UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PEERLESS INDUSTRIES, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 11 C 1768** |
| | ) | |
| | ) | **Hon. Joan H. Lefkow** |
| **CRIMSON AV LLC, and VLADIMIR** | ) | |
| **GLEYZER.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION AND ORDER</u>

Peerless Industries, Inc. has filed suit against Crimson AV LLC and Vladimir Gleyzer alleging patent infringement, trade dress infringement, tortious interference with contract, and conspiracy along with violations of the Illinois Trade Secrets Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and the Illinois Uniform Deceptive Trade Practices Act. (Dkt. 55.)

Before the court are two separate motions for summary judgment: one by Crimson only, asking for summary judgment on invalidity or, in the alternative, unenforceability and another by both Crimson and Vladimir Gleyzer, asking for summary judgment on Peerless's trade dress infringement and Illinois Trade Secrets Act claims. (Dkts. 409, 426.) The court also considers Peerless's motion to strike. (Dkt. 448.) For the reasons stated below, Crimson's motions for summary judgment are granted in part and denied in part. Peerless's motion to strike is denied as moot.

## I.     The Parties

Peerless Industries, Inc. ("Peerless") manufactures and sells audiovisual mounting equipment.  (Dkt. 55 ("Compl.") ¶ 7.)  Crimson AV LLC ("Crimson") competes with Peerless in the audiovisual mounting equipment industry.  (*Id.*)  At issue in this case are Peerless's mounts for flat panel televisions.  (*See id.* ¶ 7–8.)

## II.     The '850 Patent

Peerless owns U.S. Patent No. 7,823,850 ("the '850 Patent"), entitled "mounting bracket."  The bracket allows a flat panel television to be fixed to a wall.  What is unique about this bracket, according to the '850 Patent, is that it is designed to warn an installer "when the mounting bracket and the remainder of the mount are not properly aligned."  '850 Patent, 2:29–31.

The bracket includes "one or more ramping surfaces," which are configured so that if the bracket is positioned too high or too low, "one of the mount's retaining portions will come into contact with a ramp."  (Dkt. 445 at 1); '850 Patent, 2:32, 38–40.  "The contact of the ramp against the retaining portion will cause the mounting bracket to slide, providing a clear indication to the user that the mounting bracket is not properly aligned with the retaining portions."  '850 Patent, 2:40–43.  Thus, the possibility of misalignment is "greatly reduced."  '850 Patent, 2:44–46.

---

[1] The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage."  *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citing *Fresenius USA, Inc.* v. *Baxter Int'l Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009)).  In accordance with its regular practice, the court has considered the parties' objections to statements of fact and included in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of these motions.

The mounting bracket can take on a number of different forms.  *See, e.g.*, '850 Patent 3:31–32.  One such form is depicted below.



FIG. 6(A)          FIG. 6(B)

In the above figures, 122 and 126 are the "ramping portions" and 14 and 16 are the "retaining portions."  In Figure 6(A), the mounting bracket is too high.  '850 Patent, 5:14–16.  As the television moves toward the mount, the first retaining portion (14) comes into direct contact with the upper ramping surface (122).  '850 Patent, 5:17–20.  As a result, the television cannot be mounted upright, and the bracket (and the attached television) slide along the upper ramping surface.  '850 Patent, 5:20–25.  In Figure 6(B), the mounting bracket is too low.  '850 Patent, 4:56–58.  In this scenario, as the television comes toward the mount, the second retaining portion (16) comes into direct contact with the lower ramping surface (126) and the bracket slides along

the lower ramping surface. '850 Patent, 4:58–67. In both instances, the bracket's use of ramping portions protects against misalignment.

## III. Infringement

In response to Peerless's allegations of infringement of the '850 Patent, Crimson filed a motion for partial summary judgment in January 2013. (Dkt. 134.) In its motion, Crimson argued that there was no genuine dispute of material fact as to whether its products infringed the claims at issue—claims 1–7 and claims 9–11. (*See id.*) Peerless filed a cross-motion, arguing that Crimson's products infringed the above claims and asking the court to enter judgment on invalidity as well. (Dkt. 170.)

The court entered judgment in Peerless's favor, finding that Crimson's products infringed claims 1–7 and claims 9–11 of the '850 Patent. (Dkt. 330 at 16.) The court, however, did not enter summary judgment as to invalidity. As the court explained, because the '850 Patent carries a presumption of validity, Peerless's motion for summary judgment with respect to invalidity was unnecessary. (*Id.*)

## IV. The Sycamore Agreement

Crimson's third motion for summary judgment (the second of the two currently before the court) concerns Peerless's trade dress and trade secrets claims, which arise out of Peerless's agreement with its former manufacturer, Sycamore Manufacturing Co., Ltd. ("Sycamore"). Crimson and Gleyzer bring this motion together.

Gleyzer is a former Peerless executive. (Compl. ¶ 15.) While at Peerless, he served as Senior Vice President. (*Id.*) As Senior Vice President, he negotiated a supply agreement between Peerless and Sycamore, a manufacturer located in China. (*Id.*) Under the agreement, Peerless purchased mounting equipment and installation accessories manufactured by Sycamore.

(Dkt. 439 ("Pl. L.R. 56.1") ¶ 2.) According to Peerless, Sycamore had no experience with AV equipment, so Peerless provided Sycamore with a specifications package, or "spec package," for each product that contained all the information Sycamore needed to manufacture the product. (*Id.* ¶¶ 2, 4–5.) Peerless also provided tooling. (*Id.* ¶ 15.) Sycamore acknowledged that the packages included proprietary information and "promised to keep that information confidential even after the parties' relationship terminated." (Dkt. 438 at 1; Pl. L.R. 56.1 ¶ 3.) A few years later, Peerless decided to move its manufacturing operations back to the United States. (Pl. L.R. 56.1 ¶ 12.) Peerless claims that when it did, Sycamore hired Gleyzer, created Crimson, and started selling competing products manufactured using Peerless's proprietary information. (Dkt. 438 at 1; Pl. L.R. 56.1 ¶ 14) Crimson disputes Peerless's assertion that information Peerless sent Sycamore contained trade secrets and argues that, even if it did, there is no evidence that Crimson has misappropriated any trade secrets in manufacturing its products. (Dkt. 424 at 10–14.) This disagreement forms the basis of the parties' arguments over Crimson's motion for summary judgment on Peerless's trade secrets allegations.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving

party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

### I.     Crimson's Motion for Summary Judgment on Invalidity and Unenforceability

Crimson asks the court to enter judgment declaring the '850 Patent invalid or, in the alternative, unenforceable. In support of its argument for invalidity, Crimson contends that the Patent was anticipated by prior art and is obvious. (Dkt. 412 at 6, 14.) Crimson also contends that Peerless failed to disclose the best mode for the guiding surface.[2] (*Id.* at 10.) In support of its argument for unenforceability, Crimson accuses Peerless of engaging in inequitable conduct. (*Id.* at 20.)

---

[2] Crimson is limited to asserting invalidity based on anticipation, obviousness, and best mode, as those are the only invalidity defenses which it timely disclosed. (*See* dkt. 331.)

A.      **Anticipation**

1.      **Legal Standard**

Anticipation refers to the prior invention or disclosure of a claimed invention by another. *See* 35 U.S.C. § 102.  It is grounds for invalidating a patent because it means that the claimed invention lacks novelty.

"Although § 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis."  *Finisar Corp.* v. *DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).  To anticipate a claim under 35 U.S.C. § 102,[3] the prior art reference must first disclose each claim limitation, either expressly or inherently, so that a person of ordinary skill in the art could practice the invention without undue experimentation.  *ClearValue, Inc.* v. *Pearl River Polymers, Inc.*, 668 F.3d 1340, 1344 (Fed. Cir. 2012); *Retractable Tech., Inc.* v. *Becton, Dickinson & Co.*, 653 F.3d 1296, 1309 (Fed. Cir. 2011) (*en banc*).  Disclosure of each claim limitation, however, is not enough—the Federal Circuit has "long held that '[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim*.'"  *Finisar*, 523 F.3d at 1334–35 (quoting *Connell* v. *Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)) (emphasis in original).

Anticipation is normally a question of fact, *id.* at 1334, but it "may be resolved on summary judgment if no genuine issue of material fact exists."  *OSRAM Sylvania, Inc.* v. *Am. Induction Technologies, Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012) (citing *Ormco Corp.* v. *Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007)).  Because a patent is presumed valid, the evidentiary burden to show facts supporting a conclusion of invalidity is clear and convincing

---

[3] The Leahy-Smith America Invents Act amended § 102.  The prior version of § 102 applies to this case as the asserted claims have effective filing dates before March 16, 2013, the date the statute took effect.

evidence. *Transclean Corp.* v. *Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002)

(citing *WMS Gaming, Inc.* v. *Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999)).

### 2. Arguments and Evidence

Crimson argues the '850 Patent is anticipated by the ECN 6102 bracket and the Tech

Craft brackets. (Dkt. 412 at 6.) As a preliminary matter, Peerless claims that Crimson cannot

rely on the ECN 6102 bracket as prior art because it did not identify that bracket in its invalidity

contentions. Local Patent Rule 2.3 requires a party asserting invalidity to serve the other party

with its invalidity contentions. N.D. Ill. L.P.R. 2.3. This includes the identification—with

particularity—of relevant prior art. N.D. Ill L.P.R 2.3(b)(1). Crimson does not claim that it

identified ECN 6102 in its invalidity contentions. Instead, it argues that the court allowed it to

rely on the "Gennady brackets" in arguing obviousness (*see* dkt. 331 at 4 n.4), and that the ECN

6102 bracket is one of the Gennady brackets (dkt. 461 at 5–6). Therefore, Crimson reasons,

Peerless was put on notice in the same way it would have been had Crimson included the ECN

6102 bracket in its invalidity contentions. What the court stated, however, was that Crimson

may "rely on the 'Gennady brackets' listed as prior art in figures 1 and 2 of the '850 Patent."

(Dkt. 331 at 4 n.4.) Thus, the court's reference to the "Gennady brackets" is limited to those two

figures. Because Crimson has not offered any evidence that the ECN 6102 bracket is one of

those two figures, the court will not consider it.

Peerless also claims that Crimson cannot rely on the Tech Craft brackets, specifically

TRK50B, because the only evidence Crimson has submitted which suggests the bracket qualifies

as prior art is inadmissible hearsay. The document at issue is a printout from Amazon.com,

which shows that the TRK50B bracket was available before the '850 Patent's effective filing

date. (Dkt. 411-10 at 6–7.) The representation on the document as to when the product entered

the market is certainly hearsay.[4]  Nonetheless, the court admits the web page under Federal Rule

of Evidence 807 as evidence that the bracket was available for sale *on Amazon.com* (which

means in the market as well, of course) as of September 14, 2004.[5]  Since, Peerless has no

evidence rebutting Crimson's evidence that the TRK50B bracket was available in the market as

of September 14, 2004, the fact is deemed admitted.

### 3.  Anticipation Analysis

Crimson contends that the '850 Patent is anticipated under 35 U.S.C. § 102(a), which

states that an applicant is entitled to a patent unless the invention was "known or used by others

in this country" prior to the date the applicant claims to have invented it.  (Dkt. 412 at 6.)

Crimson focuses on the language of the statute, devoting the bulk of its argument to showing that

the invention claimed in the '850 Patent was, in fact, "known or used by others in this country"

prior to the date the applicant claims to have invented it.  (*Id.* at 6–8.)  Instead of a claim-by-

claim analysis, however, Crimson submits a photograph of the TRK50B bracket.  (*Id.* at 9.)

Crimson then labels that photograph with the same numbers used to label one of the figures in

---

[4] Crimson attempts to overcome its hearsay obstacle with the affidavit of Kirk Thomas, President of Northwest Performance Software, Inc., in which he states he is "an experienced user of Amazon.com and its web pages."  (Dkt. 458-3 at ¶ 3.)  Thomas represents that he contacted Amazon.com customer service through its "Contact Us" link and learned from an unidentified correspondent that the TRK50B was not only first available on Amazon.com but "first introduced to the market on September 14, 2004." (*Id.* ¶ 6–7.)  There is no way to know whether the correspondent was qualified to make this statement nor could the correspondent be cross-examined to ascertain the basis for or accuracy of his or her knowledge.

[5] *See, e.g.*, *Leveyfilm, Inc.* v. *Fox Sports Interactive Media, LLC*, No. 13 C 4664, 2014 WL 3368893, *2 (N.D. Ill. July 8, 2014) (taking judicial notice that web addresses reflected on copies of web page were correct web addresses for the displayed company "because they 'can be accurately and readily determined' by using well-known, non-party web browsers 'whose accuracy cannot reasonably be questioned'") (quoting Fed. R. Evid. 201(b)).  The September 14, 2004 date reflected on the web page is admissible under Federal Rule of Evidence 807 to show that the item was sold by Amazon.com on and after September 14, 2004, as it is unlikely that Amazon.com would have any motivation to make a false statement to that effect and Peerless has offered no argument as to why it would be untrustworthy. Another document, which Crimson identifies as a printout from the Tech Craft website, does not reflect a web address and is not otherwise authenticated by affidavit.  It is therefore inadmissible. (Dkt 411-10 at 8–9).

the '850 Patent.  (*Id.*)  No analysis accompanies the photograph.  Crimson also submits

TRK50B's mounting instructions, which it lays out next to a recitation of one of the '850

Patent's claims.  Although the mounting instructions are labeled with numbers that correspond to

the elements set forth in the claim, again there is no analysis.  (*Id.* at 10.)  This is insufficient to

establish that a single prior art reference "not only disclose[s] all of the elements of the claim

within the four corners of the document, but . . . also disclose[s] those elements arranged as in

the claim."  *Net MoneyIN, Inc.* v. *VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008).  Mere

labeling of parts is not clear and convincing evidence of anticipation.  Crimson must identify the

elements of the claims, determine their meaning in light of the specification and prosecution

history, and then explain why, in light of the prior art, they are not novel.  Summary judgment

must be denied on the defense of anticipation.

### B.    Best Mode

#### 1.    Legal Standard

Crimson also alleges that the '850 Patent is invalid because its inventors failed to disclose

the ideal form—or "best mode"—of one of the elements of its claims.  (Dkt. 412 at 10.)

35 U.S.C. § 112(a) requires that a patent's specification "shall set forth the best mode

contemplated by the inventor or joint inventor of carrying out the invention."  35 U.S.C.

§ 112(a); *Ateliers De La Haute-Garonne* v. *Broeje Automation USA Inc.*, 717 F.3d 1351, 1356

(Fed. Cir. 2013).  This requirement precludes inventors "from applying for patents while at the

same time concealing from the public preferred embodiments of their inventions which they

have in fact conceived."  *In re Gay*, 309 F.2d 769, 772 (C.C.P.A. 1962).  In order to establish

invalidity based on an inventor's failure to disclose the best mode, a defendant must show that

"the inventor possessed a better mode than was described in the patent, and that such better mode

was intentionally concealed." *Ateliers De La Haute-Garonne*, 717 F.3d at 1356–57. The first determination requires a subjective inquiry into the inventor's preference for a best mode of practicing the invention at the time the patent was filed. *Id.* at 1357. The second determination requires an objective inquiry into whether the inventor concealed the best mode of practicing the invention from the public. *Id.* (citing *Star Scientific, Inc.* v. *R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1373 (Fed. Cir. 2011)) (internal citations omitted).

### 2. Arguments and Evidence

The '850 Patent claims a mounting bracket with three elements: "a mounting contact portion," "two side portions," and a "guiding surface." '850 Patent 6:45–7:6. Crimson argues that Peerless failed to disclose the best mode of the third element, the "guiding surface." (Dkt. 412 at 10.) The "guiding surface" includes a "longitudinal surface directly joining the side portions to each other" and is used for "guiding the positioning of one of the one or more retaining portions." '850 Patent, 7:1–4. In its prior summary judgment opinion, the court held that the phrase "longitudinal surface" encompasses both a welded bridge plate construction and a box fold construction. (Dkt. 330 at 13–14, 16.) A welded bridge plate is a plate that is fused to the bracket's two side portions. A box fold, by contrast, does not involve a separate piece; it consists only of the two side portions bent at a 90-degree angle and then folded on top of each other. Crimson argues that, although not disclosed in the '850 Patent, "both the welded bridge plate and the box fold construction in fact function to retain a safety screw." (Dkt. 412 at 11.) According to Crimson, the box fold is the best mode for retaining the safety screw, and Peerless failed to disclose it. (*Id.* at 11–12.)

As a preliminary matter, Peerless argues that the inventors did not have to disclose the box fold because it is not claimed in the '850 Patent. (Dkt. 443 at 9–10.) Indeed, as the Federal

Circuit has explained, "subject matter that is not part of the invention that is claimed need not be included in the specification, and thus is not subject to the best mode requirement." *Cardiac Pacemakers, Inc.* v. *St. Jude Med., Inc.*, 381 F.3d 1371, 1379 (Fed. Cir. 2004). The '850 Patent discloses an "improved mounting bracket which provides clear information to the installer when the mounting bracket and the remainder of the mount are not properly aligned." '850 Patent, 2:28–31. It does not, as Peerless points out, disclose a security system for mounting brackets, such as a safety screw retention mechanism. (Dkt. 443 at 10.) Indeed, the '850 Patent never mentions a security system for mounting brackets, nor does it mention safety screws. Thus, Peerless argues, the inventors did not have to disclose the best mode for retaining safety screws. Crimson contends that the issue is one of "subject matter," not function. (Dkt. 461 at 15.) Although it was Crimson, and not Peerless, who originally framed the issue in terms of function (*see* dkt. 412 at 11), Crimson is correct. *See Engel Indus., Inc.* v. *Lockformer Co.*, 946 F.2d 1528, 1531 (Fed. Cir. 1991) ("The best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims."); *see also Bayer AG* v. *Schein Pharm., Inc.*, 301 F.3d 1306, 1315 (Fed. Cir. 2002) (stating that "the best mode disclosure requirement only refers to the invention defined by the claims"). Thus, the question before the court is not whether the box fold's function (the retaining of safety screws) is mentioned in the Patent, but whether the box fold is the preferred embodiment of *something* defined by the Patent's claims. The longitudinal surface is defined by the Patent's claims (*see* '850 Patent, 7:2–3 (describing a "guiding surface including a longitudinal surface")), and therefore is subject to the best mode requirement. Thus, the court turns to the two-step inquiry outlined above.

### 3. Best Mode Analysis

In order to establish liability under 35 U.S.C. § 112, a defendant must show that the inventors possessed a best mode of practicing the claimed invention at the time of filing and that the inventors concealed the best mode of practicing from the public. *See Ateliers De La Haute-Garonne*, 717 F.3d at 1356–57.

The first inquiry is subjective and focuses on the inventors' preference at the time of filing. *Id.* at 1357. Crimson cites to deposition testimony of two of the inventors, Lam and O'Keene, as evidence that they preferred the box fold at the time they gave their depositions. (Dkt. 412 at 11). Peerless contends that the deposition testimony does not demonstrate the inventors' opinion at the time of filing; the court agrees. Crimson also offers the inventors' drawings of box folds, which were released for production months before Peerless filed the '850 Patent as a provisional application, as evidence that the inventors preferred the box fold at the time of filing. (Dkt. 411 ("Def. L.R. 56.1") ¶ 51.) Indeed, Crimson argues that these drawings establish that Peerless "abandoned" the welded bridge plate in favor of the box fold construction. (Dkt. 412 at 12–13.)

The inventors' drawings show, at the very least, that the inventors used the box fold at the time of filing (*see* Def. L.R. 56.1 ¶ 51), but mere use does not establish preference, let alone abandonment. Crimson must show, by clear and convincing evidence, that there is no genuine issue of material fact as to whether the inventors preferred the box fold at the time of filing. Viewing the facts in the light most favorable to Peerless and drawing all reasonable inferences in Peerless's favor, the facts support only the conclusion that Peerless used the box fold, not that Peerless preferred it. *See Harris*, 550 U.S. at 378. Crimson has not met its burden.

Crimson's other arguments are similarly flawed. For example, Crimson argues that Peerless's reference to the box fold in a different patent shows that the inventors were aware of the construction prior to filing the patent. (Dkt. 412 at 13.) Awareness, much like use, does not establish preference. Because Crimson has not met the first prong of a two-prong test, the court will not consider Crimson's arguments that Peerless concealed the best mode from the public. Thus, the court will not grant summary judgment as to the defense of best mode.

C.     **Obviousness**

Crimson also argues that the '850 Patent is obvious. Under 35 U.S.C. § 103(a),[6] a patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068 (Fed. Cir. 2012). Indeed, an invention must represent enough of a qualitative advance over earlier technology to justify the granting of a patent. *See Graham* v. *John Deere Co.*, 383 U.S. 1, 9, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966).

"Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *In re Capsule Patent Litig.*, 676 F.3d at 1068 (citing *Graham*, 383 U.S. at 17–18). These factual findings are known as *Graham* factors. A party seeking to invalidate a patent as obvious must demonstrate, by clear and convincing evidence, "'that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan

---

[6] The Leahy-Smith America Invents Act also amended § 103. The prior version of § 103 applies to this case.

would have had a reasonable expectation of success from doing so.'"  *Id.* at 1068–69 (quoting *Procter & Gamble Co.* v. *Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)).  District courts must consider the underlying factual findings first before deciding whether to invalidate a patent in order to avoid the tendency to depart into "the tempting, but forbidden zone of hindsight."  *Loctite Corp.* v. *Ultraseal Ltd.*, 781 F.2d 861, 873 (Fed. Cir. 1985) *overruled on other grounds by Nobelpharma AB* v. *Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998).

### 1.      Scope and Content of Prior Art

Crimson bases its obviousness challenge on five prior art references:  (1) the ECN 6102 bracket (discussed above); (2) the TRK50B bracket (discussed above); (3) the VMPL2 bracket; (4) U.S. Design Patent D530,595; and (5) U.S. Design Patent D497,537.  Peerless contests the admissibility of the first four references.  For the reasons discussed above, the court will not consider the ECN 6102 bracket but will consider the TRK50B bracket.  (*See supra* Part I.A.2.) The court discusses Peerless's challenges to the VMPL2 bracket and U.S. Design Patent D530,595 below.

Peerless argues that the VMPL2 bracket is inadmissible hearsay.  (Dkt. 443 at 14.) Specifically, Peerless argues that the only evidence Crimson has that shows the VMPL2 bracket is prior art is a printout from the Internet.[7]  (*Id.*; *see* dkt 411-15 at 3.)  In its reply, however, Crimson shows that before November 14, 2004 Peerless cited the assembly instructions for the VMPL2 bracket as prior art in another of its patent applications.  (Dkt. 461 at 20–21.)  Thus,

---

[7] Peerless also argues that Crimson cannot establish that the VMPL2 bracket is prior art because it is dated after the inventors first conceived of the claimed invention which Peerless argues is January 5, 2005.  (Dkt. 443 at 15.)  Peerless does not explain, however, why the court should use the date the inventors first conceived of the invention instead of the presumed effective filing date—October 14, 2005. Thus, the court will consider the VMPL2 bracket as prior art for the purposes of this motion.

even if the printout is hearsay, Crimson can rely on other evidence at trial, including this patent, to establish that the bracket qualifies as prior art for the purposes of obviousness.[8]

Peerless also argues that U.S. Design Patent D530,595 does not qualify as prior art because Peerless owned the invention disclosed in the Patent. (Dkt. 443 at 15–16.) As Peerless observes, D530,595 would only preclude patentability under 35 U.S.C. § 102(e) or (f). (*Id.* at 15.) Under 35 U.S.C. § 103(c), however, subject matter developed by another person, which otherwise qualifies as prior art, does not preclude patentability under one or more of subsections (e), (f), and (g) of § 102 "where the subject matter and the claimed invention were, at the time the claimed invention was made, owned by the same person or subject to an obligation of assignment to the same person." 35 U.S.C. § 103(c). Thus, Crimson cannot rely on D530,595. This leaves three prior art references: the TRK50B bracket, the VMPL2 bracket, and U.S. Design Patent D497,537.

### 2.  Differences Between the Claims and the Prior Art

Crimson makes two arguments with respect to obviousness: that the Patent is obvious over VMPL2 in view of the ECN 6102 bracket or the TRK50B bracket and that the Patent is obvious over ECN 6102 or TRK50B in view of the design patents. The court will only consider these arguments to the extent they rely on the three prior art references mentioned above.

Crimson argues that it would have been obvious to a person having ordinary skill in the art (also called a "PHOSITA") to use TRK50B's welded bridge plate in a VMPL2 bracket (the VMPL2 bracket only has a safety bar). (*See* dkt. 412 at 17.) According to Crimson, the TRK50B bracket "used the same combination of ramps plus a safety retainer as in P'850, so the

---

[8] For example, in its statement of facts, Crimson states that Peerless had the VMPL2 bracket in its possession in the summer of 2004, a contention which it supports with exhibits and deposition testimony. (Def. L.R. 56.1 ¶ 60 A-1.) Peerless does not expressly deny this. (Dkt. 444 ("Pl. L.R. 56.1 Resp.") ¶ 60.)

combination itself was prior art." (*Id.* at 18 (emphasis omitted).) Crimson's conclusion that "the combination itself was prior art" seems to suggest that the TRK50B bracket *anticipated* the '850 Patent, which is the wrong inquiry. Crimson does not provide any additional information as to the differences between the '850 Patent and the TRK50B bracket other than to state that the '850 Patent is so broad that "[a]ny retainer design meets the language of the claims." (*Id.*) Although Crimson acknowledges that "the focus must be on the scope of the P'850 claims," it does not engage in an analysis of these claims beyond the above statements. (*Id.*)

There are, however, significant differences that Crimson does not address. For example, the TRK50B bracket has only one ramp to the '850 Patent's two. The VMPL2 bracket has no ramps; instead its middle is composed of an arch. Nor does Crimson address the potential effects of these differences. As Peerless argues, neither bracket, nor their combination, "provide any indication to an installer when a mount is not correctly aligned." (Dkt. 443 at 18.)

Crimson's second argument is that the Patent is obvious over the TRK50B bracket in view of U.S. Design Patent D497,537 ("the '537 Patent"). Crimson explains that, like the '850 Patent, the design patent has upper and lower ramps. (Dkt. 412 at 18.) Crimson then argues that it would be obvious to a PHOSITA to use the TRK50B bracket's welded bridge plate in the '537 Patent. (*Id.* at 18–19.) Crimson provides no additional arguments as to the other prior art references before the court other than the statement that the only difference between the '537 Patent and the '850 Patent is "the use of a welded bridge plate."[9] (*Id.* at 19.) Peerless takes issue with this statement, arguing that there are "substantial differences" between the '850 Patent and

---

[9] Crimson provides more detail in its statement of facts, but much of this detail is in the form of arguments and is therefore improper. *See* N.D. Ill. L.R. 56.1(a)(3) (directing parties to submit "a statement of material facts as to which the moving party contends there is no genuine issue" and noting that the statement shall consist of "short numbered paragraphs, including . . . references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph").

the '537 Patent. (Dkt. 443 at 16.) For example, the '537 Patent does not claim the limitations of a first ramped surface "terminating proximate the receiving region" or a "guiding surface for guiding the position of one of the one or more retaining portions." (*Id.* at 16–17 (internal quotation marks omitted).) According to Peerless, these claim limitations are critical to the success of the invention. (*Id.* at 17.)

### 3. The Level of Ordinary Skill in the Art

The level of skill in the art represents the "lens through which a judge or jury view the prior art and the claimed invention"—this lens "prevents those deciders from using their own insight, or, worse yet, hindsight, to gauge obviousness." *Al-Site Corp.* v. *VSI Int'l Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999). Crimson defines a person having ordinary skill in the art as "a person working in the AV mount field having familiarity with various brackets in that period." (Dkt. 412 at 14.) Peerless agrees, noting that under Crimson's definition, a PHOSITA would not have "any engineering or other specialized education or training" or "experience with designing audio visual mounts." (Dkt. 443 at 16.) Crimson objects to this characterization of its definition, noting that although it did not explicitly address education or experience, it did not agree that neither would be necessary. (Dkt. 461 at 22.) In its reply, Crimson argues, more specifically, that a PHOSITA is a person having the level of skill of "an AV mount bracket designer in 2004." (*Id.* (emphasis omitted) (internal quotation marks omitted).)

### 4. Objective Considerations of Nonobviousness

Objective considerations of nonobviousness include evidence that focuses on the impact of the claimed invention on the marketplace rather than its technical merits—such as the need for the invention or the success of the invention. *See Stratoflex, Inc.* v. *Aeroquip Corp.*, 713 F.2d 1530, 1538–39 (Fed. Cir. 1983). Peerless argues that Gleyzer "was the individual at Peerless

who noted the improvement disclosed in the '850 Patent over the prior art designs and suggested that Peerless patent the design." (Dkt. 443 at 18.) Peerless insists that these laudatory statements are "telling evidence" of nonobviousness. (*Id.*) Crimson disputes both the accuracy and relevancy of Gleyzer's statements. (Dkt. 461 at 24–25.)

### 5. Application

As indicated above, a party seeking to invalidate a patent as obvious must demonstrate, by clear and convincing evidence "'that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'" *In re Capsule Patent Litig.*, 676 F.3d at 1068–69 (quoting *Procter & Gamble*, 566 F.3d at 994).

Crimson argues that a skilled artisan would have combined the prior art in an effort to meet the "well-known requirement" that there be "some structure to keep the adapter brackets, to which the TV is fastened, from falling off or being dislodged from its wall mounting plate." (Dkt. 412 at 15.) Crimson further argues that the artisan would have had a reasonable expectation of success from doing so, as, in Crimson's words, "the prior art of 2004 is replete with various common solutions to the well-known problem of retaining the TV on its mount, including latches, bridge plates and tabs." (*Id.* at 15–16.) Crimson is clear that the purpose of the combination is retaining the TV on its mount; the misalignment problem discussed in the '850 Patent is, according to Crimson, "non-existent." (*Id.* at 16.)

Peerless takes issue with Crimson's combinations of prior art, arguing that they do not provide any indication to an installer when a mount is misaligned and that, in light of this deficiency, the '850 Patent is not obvious. (Dkt. 443 at 16–18.) Peerless also objects to Crimson's combination of TRK50B with the '537 Patent, arguing that it would create "a non-

functioning bracket." (*Id.* at 17.)  As Peerless explains, "[w]ith a bridge plate below the lower

hooks, there would be no way for the lower retaining portion of the wall plate (the lower rod) to

engage with the lower hook—the bridge plate would block access." (*Id.* at 17–18 (internal

quotation marks omitted).)  Thus, Peerless contends, Crimson has failed to establish that a skilled

artisan would have had reason to combine the teaching of the prior art references and would have

had a reasonable expectation of success from doing so.

Ultimately, it is Crimson's burden to establish that there is no genuine issue of material

fact.  Fed. R. Civ. P. 56(a).  In its reply, Crimson accuses Peerless of making numerous

unsubstantiated arguments—arguments that do not cite to depositions, answers to interrogatories,

admissions, affidavits and other parts of the record that are fodder for summary judgment.  *See*

Fed. R. Civ. P. 56(c).  Crimson is correct that the non-moving party cannot rest on bare pleadings

alone and must designate specific material facts showing that there is a genuine issue for trial.

*See Celotex*, 477 U.S. at 324; *Insolia*, 216 F.3d at 598.  The non-movant, however, only has this

burden if the party seeking summary judgment meets the initial burden of proving there is no

genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Crimson has not met this burden.

Instead of engaging in an analysis of the differences between the '850 Patent's claims and

the prior art—differences that are at the heart of the § 103 analysis—Crimson makes blanket

statements about the differences between the two.  For example, in discussing the differences

between the '850 Patent and the TRK50B bracket, Crimson states that the TRK50B bracket

"used the same combination of ramps plus a safety retainer as in the P'850, so the combination

itself was prior art." (Dkt. 412 at 18 (emphasis omitted).)  Crimson further states that the Patent

is so broad that "[a]ny retainer design meets the language of the claims." (*Id.*)  Crimson makes

no additional arguments as to the differences between the Patent's claims and the TRK50B

bracket. And Crimson does not address the differences between the Patent's claims and the VMPL2 bracket. As for the '537 Patent, Crimson argues that the only difference between the '850 Patent and the '537 Patent is "the use of a welded bridge plate." (*Id.* at 19.) This is insufficient. Vague statements suggesting an almost complete lack of differences not only bleed into an anticipation inquiry, they fail to provide the court with the information it needs to conduct an obviousness analysis.

If the differences between the Patent and the prior art are minimal, and the Patent's additions in view of the prior art are obvious, then Crimson needs to specify how those differences are minimal and why the additions are obvious. Although Crimson does provide additional detail on the prior art references in its statement of facts, it is still missing the required analysis comparing those references to the '850 Patent. In light of this deficiency, the court will not address the parties' disputes over the level of ordinary skill in the art and objective considerations of nonobviousness. Crimson has failed to show that there is no genuine dispute of material fact as to obviousness. Thus, it is an issue appropriate for trial.

### D.     Inequitable Conduct

Finally, Crimson argues that the '850 Patent is unenforceable due to inequitable conduct. Specifically, Crimson argues that Peerless intentionally withheld and misrepresented material information about relevant prior art in its application to the USPTO. (*Id.* at 20.)

Inequitable conduct is a defense to patent infringement that, if proved, bars enforcement. *Therasense, Inc.* v. *Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (*en banc*). The Federal Circuit, which has described the inequitable conduct defense as the "atomic bomb" of patent law, recently tightened the standards required to prove inequitable conduct. *See id.* at 1288–89; *see also 1st Media, LLC* v. *Elec. Arts, Inc.*, 694 F.3d 1367, 1372 (Fed. Cir. 2012).

After *Therasense*, "absent affirmative egregious misconduct, a defendant must prove by clear and convincing evidence both of the separate requirements that: (1) the patentee acted with the specific intent to deceive the PTO; and (2) the non-disclosed reference was but-for material." *1st Media*, 694 F.3d at 1372 (quoting *Therasense*, 649 F.3d at 1290–91) (internal quotation marks omitted); *see also Aventis Pharma S.A.* v. *Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012) ("To prevail on an inequitable conduct defense, a defendant must establish both the materiality of the withheld reference and the applicant's intent to deceive the PTO."). Thus, in a case involving nondisclosure of information, the movant must offer clear and convincing evidence that the applicant "'*made a deliberate decision* to withhold a *known* material reference.'" *Therasense*, 649 F.3d at 1290 (quoting *Molins PLC* v. *Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)) (emphasis in original). Both intent and materiality are questions of fact. *See Star Scientific, Inc.*, 537 F.3d at 1365.

Crimson offers no clear and convincing evidence of materiality—only unsupported conclusions. For example, Crimson argues that the '850 Patent's prior art figures were "missing the ramps, the bridge plate and its safety screw." (Dkt. 412 at 22.) According to Crimson, "[b]ased on that knowing misrepresentation by the inventors . . . P'850 falsely asserted that there was a 'misalignment problem,' purportedly solved by the addition of ramps and the bridge plate, functioning as a 'guiding surface.'" (*Id.*) Crimson proceeds to call the misalignment problem "clearly bogus." (*Id.* n.17.) Crimson provides no evidence, however, of this alleged inequitable conduct. Crimson also alleges that Peerless's failure to disclose the best mode and its attempts to enforce the design patents constitute fraud and misconduct, but Peerless offers no evidence in support of either assertion. (*Id.* at 22–23.) Crimson acknowledges the intent requirement only to the extent it argues that Peerless's patent attorney knew or should have known that the named

inventors were not the true inventors of the design patents (*id.* at 23), and that the inventors knew of the prior art (dkt. 461 at 30–31).  This is insufficient under *Therasense*.  The court declines to grant summary judgment on Crimson's inequitable conduct claim.

## II.     Crimson's Motion for Summary Judgment on Peerless's Trade Dress Infringement and Illinois Trade Secrets Act Claims

In a separate motion, Crimson moves for summary judgment on Peerless's trade dress and Illinois Trade Secrets Act claims.  (Dkt. 426.)

### A.      Trade Dress Infringement

In its response to Crimson's motion for summary judgment, Peerless informed Crimson and the court that it intended to seek dismissal of its trade dress claim under Federal Rule of Procedure 41.  (Dkt. 438 at 2 n.1.)  Peerless later filed a motion to amend, seeking leave to withdraw the claim under Rule 15.  (Dkt. 467.)  The court denied that motion, noting that district courts may deny leave where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment."  (Dkt. 482.)  As the court observed, Peerless failed to explain why it needed to withdraw its trade dress claim once dispositive motions were before the court.  (*Id.*)  Thus, the court will consider the claim on the merits, although only Crimson advances arguments.

Trade dress "refers to the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques."  *Computer Care* v. *Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1067 (7th Cir. 1992) (quoting *Roulo* v. *Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989)) (internal quotations omitted).  In order to succeed in an action for trade dress infringement, Peerless must show that (1) its trade dress is distinctive and (2) consumers are likely to be confused as to the source or affiliation of the

products because of the similarity between its products and those sold by Crimson.  *See Thomas & Betts Corp.* v. *Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998).

Crimson argues that Peerless has not established distinctiveness or a likelihood of confusion.  Crimson assumes that Peerless's trade dress claim is limited to product design, and notes that product design is only distinctive, and therefore protectable, upon a showing of secondary meaning.  (Dkt. 424 at 4); *see also Wal-Mart Stores, Inc.* v. *Samara Bros.*, 529 U.S. 205, 216, 120 S. Ct. 1339, 146 L. Ed. 2d 182 (2000).  Crimson argues that Peerless has provided no evidence of secondary meaning and that, as a result, there is no genuine issue of material fact as to secondary meaning.

Crimson further argues that Peerless has not offered any evidence establishing likelihood of confusion.  Crimson notes that, in determining likelihood of confusion, courts have found that the similarity of the marks, the defendant's intent, and evidence of actual confusion are the most important factors.  (Dkt. 424 at 7 (citing *Minemyer* v. *B-Roc Reps., Inc.*, 678 F. Supp. 2d 691, 708 (N.D. Ill. 2009)).)  Although Peerless has attached photographs of the products at issue to its third amended complaint, it has provided no evidence of Crimson's intent or of confusion on the part of consumers.  Thus, Crimson contends that, without any evidence in support of Peerless's trade dress claims, there is no genuine dispute of material fact.

Although it is not clear from the complaint that Peerless's trade dress claims are limited to product design (and thus that Peerless must establish secondary meaning), Peerless has not offered any evidence in support of inherent distinctiveness.  With respect to Peerless's trade dress claim, Crimson has met its burden under Rule 56 and is entitled to judgment as a matter of law.

### B. Illinois Trade Secrets Act

Crimson also moves for summary judgment on Peerless's claim under the Illinois Trade Secrets Act ("ITSA"). The ITSA defines "trade secret" as information that "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 Ill. Comp. Stat. 1065/2(d). In order to establish misappropriation under the ITSA, a plaintiff must demonstrate that its confidential information was (1) secret; (2) misappropriated; and (3) used in the defendant's business. *See Learning Curve Toys, Inc.* v. *Playwood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003).

Crimson argues that Peerless has not established the existence of an identifiable trade secret. According to Crimson, Peerless's assertion that its specification packages, or "spec packages," as well as its tooling constitute trade secrets is too broad. (Dkt. 424 at 10.) A plaintiff pursuing a trade secrets claim "must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." *IDX Sys. Corp.* v. *Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (citing *Composite Marine*, 962 F.2d at 1266). Rather, a party must "identify its trade secrets with sufficient specificity before the court will analyze the secrecy of that information." *GlobalTap LLC* v. *Elkay Mfg. Co.*, No. 13 C 632, 2015 WL 94235, at *6 (N.D. Ill. Jan. 5, 2015).

In *GlobalTap*, the court found that plaintiff's claim that its business plan—a 101-page document—included trade secrets was too vague. *Id.* at *7 (noting that the defendant had done nothing more than point to the document). As the court observed, there may have been trade secrets in the document, but it was the plaintiff's burden to identify them. *Id.* In *3M* v. *Prybl*,

however, the Seventh Circuit found that over 500 pages of operating manuals constituted a trade secret. 259 F.3d 587, 595–96 (7th Cir. 2001). There, as here, the defendants continually pressed 3M to "divulge what specific information could be considered secret," and in doing so, suggested that "if 3M cannot point to specific items within its manuals that are not known by the industry, then 3M cannot claim a trade secret in the combined product." *Id.* at 595. The court expressly rejected the argument. *Id.* It stated, "A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Id.* at 595–96 (7th Cir. 2001) (citing *Syntex Ophthalmics Inc.* v. *Tsuetaki*, 701 F.2d 677, 683 (7th Cir. 1983)).

The present case is closer to *3M* than to *GlobalTap*. Although there is far more material in this case than there was in *3M* (indeed, Peerless has identified 30,000 pages of "spec packages" and lists of tools that it claims are trade secrets), the material, like that in *3M*, affords a competitive advantage. According to Peerless, the "spec packages" include product specifications, product assembly instructions, packaging instructions, drawings, control plans, and engineering reports. (Pl. L.R. 56.1 ¶ 4.) These items, when taken together, may constitute "a unified system which is not readily ascertainable by other means." *See 3M*, 259 F.3d at 596. Although voluminous, as Peerless notes, "the fact that Peerless compiled a lot of information does not make it less protectable." (Dkt. 438 at 9.) The court agrees. Peerless has identified trade secrets under the ITSA.[10]

---

[10] Crimson's additional arguments, including that the "spec packages" cannot be considered trade secrets because Peerless's Rule 30(b)(6) representative was unfamiliar with them and because they are public, are unpersuasive. (*See* dkt. 424 at 11–12.)

Crimson also contends that Peerless has not established that Crimson misappropriated its trade secrets. (Dkt. 424 at 13.) As Crimson explains, Peerless does not have any knowledge that Sycamore has used any information from the "spec packages" in manufacturing its products. (*Id.* at 14.) Peerless, however, has submitted evidence that Sycamore had no experience with AV mounts before it started working with Peerless, that it had access to "spec packages" containing all the information necessary to manufacture Peerless's AV mounts, and that it kept that information after Peerless terminated the relationship. (Pl. L.R. 56.1 Resp. ¶¶ 2, 4–5, 11–12, 14.) Although this is not a smoking gun, "[c]ourts . . . have repeatedly recognized that plaintiffs in trade secret cases can rarely prove misappropriation by convincing direct evidence. *Lumenate Technologies, LP* v. *Integrated Data Storage, LLC*, No. 13 C 3767, 2013 WL 5974731, at *5 (N.D. Ill. Nov. 11, 2013) (citing *PepsiCo, Inc.* v. *Redmond*, No. 94 C 6838, 1996 WL 3965, at *15 (N.D. Ill. Jan 2, 1996)). "In most cases, plaintiffs . . . must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege did in fact take place." *Id.* (citing *PepsiCo*, 1996 WL 3965, at *15); *see also RKI, Inc.* v. *Grimes*, 177 F. Supp. 2d 859, 876 (N.D. Ill. 2001). Viewing this evidence in the light most favorable to Peerless, the court concludes that Peerless has demonstrated a genuine dispute of material fact. Peerless's ITCA claim is appropriate for trial.

## III. Peerless's Motion to Strike

Finally, Peerless moves to strike specific paragraphs of the April 28, 2014 declaration of Vladimir Gleyzer, as well as specific exhibits to Crimson's motion for summary judgment. (Dkt. 448.) Peerless argues that these paragraphs and exhibits contain expert testimony regarding claim construction and prior art which were not previously disclosed. (*Id.* at 1.) The court

agrees that the content of the declaration is unusual and that parts appear to constitute expert testimony under Federal Rule of Evidence 702 despite Gleyzer's characterization of his knowledge as "hands-on" and "experienced-based." (*See, e.g.*, dkt. 411-7 at 50 ¶ 21.) For the purposes of Crimson's two summary judgment motions, however, the court only relied on evidence presented in accordance with the applicable federal and local rules. Peerless's motion is denied as moot.

## CONCLUSION

For these reasons, defendant's motion for summary judgment of invalidity or, in the alternative, unenforceability of the '850 patent (dkt. 409) is denied. Defendants' motion for summary judgment on Counts II and III of Plaintiff's Third Amended Complaint (dkt. 426) is granted as to Count II and denied as to Count III. Peerless's motion to strike Gleyzer's expert testimony (dkt. 448) is denied as moot.

As stated, the court has denied Crimson's motion for summary judgment on its invalidity defenses as well as Peerless's trade secrets claim. Because Peerless did not respond with a counter-motion for summary judgment in its favor on these issues,[11] the question remains whether Crimson's evidence is sufficient to go to the jury on any of the claims, particularly considering the high burden of proof resting on Crimson's invalidity defenses. The parties

---

[11] Peerless may have believed the court would not entertain such a motion in light of its earlier ruling that Peerless does not need to prove its patent valid. Although similar in concept, a motion for summary judgment on the invalidity defenses would have been useful, though not necessary.

should discuss this issue before the status hearing and should consider whether a settlement conference or mediation would be a better alternative for bringing this case to a close.

Date:   March 17, 2015