UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| PEERLESS INDUSTRIES, INC., | |
|---|---|
| Plaintiff, | Case No. 1:11-cv-1768 |
| vs. | Honorable Joan H. Lefkow |
| CRIMSON AV, LLC, and VLADIMIR GLEYZER, | |
| Defendants. | |

**DEFENDANTS' MOTION FOR JUDGMENT
AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50**

Defendants, CRIMSON AV, LLC ("Crimson") and VLADIMIR GLEYZER ("Gleyzer'), by and through their attorneys, JOHNSON & BELL, LTD., hereby move this Honorable Court pursuant to FED. R. CIV. P. 50 for judgment as a matter of law on Plaintiff's claim and motion for preliminary injunction. In support of their motion, Crimson and Gleyzer state as follows:

## I. Introduction

This trial concerns Plaintiff's remaining two claims under its Third Amended Complaint – *i.e.*, violation of the Illinois Trade Secrets Act and patent infringement. Much like its other counts asserted in its various other complaints in this case, Plaintiff's remaining counts are entirely unsubstantiated and legally deficient. Plaintiff has utterly failed in its case-in-chief to present sufficient evidence of a *prima facie* case on either count and the jury should not consider either count.

*First*, Plaintiff's trade secret claim fails because the only evidence adduced by Plaintiff is that a Supply Agreement controlled the relationship between Plaintiff and Crimson/Sycamore. Under Illinois law, where a contract is executed between parties

defining the scope of the parties' obligations relative to disclosure and misappropriation, the contract sets forth the duties of the parties relative to the Illinois Trade Secrets Act. In the present case, no evidence has been adduced that Crimson/Sycamore breached the Supply Agreement. Indeed, the Supply Agreement specifically provides in § 2 that Crimson/Sycamore is *allowed* to manufacture products that contain "substantially the same appearance" or "any part of the design" of Plaintiff's products after one year. Further, Plaintiff has sought to establish "trade secrets" through 30,000 plus pages of documents. No witness who has testified has even looked at the 30,000 plus pages. No proper foundation has been laid for the "trade secrets" and no claims based upon the 30,000 plus pages may be allowed to stand.

*Second*, Plaintiff's patent infringement claim fails because there has been no evidence of willful infringement. In addition, the evidence adduced in Plaintiff's case-in-chief has firmly established that Plaintiff engaged in inequitable conduct in procuring its patent at issue.

## II. Standard For Judgment Under FRCP 50

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is not legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Dillon v. City of Chicago*, 2012 U.S. Dist. LEXIS 48724, at *3 (N.D. Ill. April 5, 2012) (citing *Murray v. Chicago Transit Authority*, 252 F.3d 880, 886 (7th Cir. 2001). Further, "The standard for granting judgment as a matter of law "mirror" the standard for granting summary judgment." *Id.*[1]

---

[1] Of course, this standard applies only to those matters that are to be submitted for the jury's determination. On those matters to be ultimately decided by the Court, the Court may properly weigh the relative evidence and the credibility of the witnesses, *etc.*

2

## III. Argument

### A. Plaintiff Has Not Met Its Burden And Judgment As A Matter Of Law Must Be Entered Against Plaintiff And In Favor Of Defendants On Plaintiff's Trade Secret Count

#### 1. The Supply Agreement Controlled Sycamore/Crimson's Obligations And Defined Its Duties For Purposes Of Misappropriation Of Any Trade Secrets

Illinois is abundantly clear that "where the parties have a contractual relationship that defines the duty of nondisclosure, the contract defines that duty for purposes of misappropriation under [the Illinois Trade Secrets Act]." *Morris Silverman Mgmt., v. W. Union Fin. Servs.*, 284 F.Supp.2d 964, 992 (N.D. Ill. 2003); *see also Nilssen v. Motorola, Inc.*, 963 F.Supp. 664, 680 (N.D. Ill. 1997) ("...the Illinois [Trade Secrets] Act does not purport to limit or override an express contractual arrangement governing the confidentiality of proprietary information (*see* Act § 8(b)(1))...Illinois law precludes the finding of any implied duty of nondisclosure that would directly contradict the express agreement of the parties"). In other words, a party who has abided by the terms of a contract that defines its duties of disclosure and misappropriation cannot then be found to have violated the Illinois Trade Secrets Act. *Morris Silverman, Nilssen supra.*

#### 2. No Evidence Has Been Adduced That Sycamore/Crimson Violated Section 2 Of The Supply Agreement

During its case-in-chief, Plaintiff introduced Pl.'s Exhibit 2 which is a "Supply Agreement" between Plaintiff and Sycamore/Crimson. *See* Supply Agreement (Pl.'s Ex. 2), Ex. A hereto. The Supply Agreement clearly sets forth the obligations of Sycamore/Crimson related to its ability to manufacture AV mounts related to Plaintiff's designs. Specifically Section 2 of the Supply Agreement provides *inter alia* as follows:

A "Peerless Product" is one which is designed by Peerless or which is normally

sold by Peerless under any Peerless Trademark or one which Supplier sells or has sold to Buyer. Supplier shall not make any Peerless Product except those to be sold to Buyer hereunder, or sell or otherwise provide any Peerless Products to anyone other than Buyer, during the terms of this Agreement or at any time thereafter. "Similar Products" means any mounts for any audiovisual equipment or monitors which, in Buyer's reasonable judgment, has substantially the same appearance as or reflects or contains any part of the design of any Peerless Product. During the term of this Agreement and for one (1) year thereafter, Supplier shall not sell or otherwise provide any Similar Products to anyone other than Buyer in the "Territory"...

*See* Supply Agreement (Pl.'s Ex. 2), Ex. A, at p. 1, § 2.

There has been absolutely no evidence introduced that Crimson/Sycamore has ever manufactured any "Peerless Product" in violation of the Supply Agreement. In fact, all of the testimony adduced in Plaintiff's case-in-chief has established that Crimson/Sycamore did *not* manufacture any "Peerless Product" upon the termination of the Supply Agreement. Mr. Gleyzer so testified. *See* 6/14/2016 A.M. Trans., Ex. B, at p. 318 ("Q: Does Crimson manufacture Peerless Product?; A: No."). In addition, Plaintiff's President, John Potts, also admitted that Crimson/Sycamore does not manufacture any "Peerless Product." *See* 6/14/2016 P.M. Trans., Ex. C, at p. 460 ("A: There are components that are the same. There are products that are similar. I'm not saying they're exactly the same."); at p. 461 ("Q: But they're not identical to Peerless products, correct?; A: I did not say the product on a whole was identical, no.").

Further, there has been no evidence adduced in Plaintiff's case-in-chief that Crimson/Sycamore ever sold any "Similar Products" within a year after the termination of the Supply Agreement. "Similar Products" are defined under the Supply Agreement as any mount that has *"substantially the same appearance as or reflects or contains any part of the design of any Peerless Product."* *See* Supply Agreement (Pl.'s Ex. 2), Ex. A, at p. 1, § 2 (emphasis added). This is what Plaintiff's President, Mr. Potts has admitted is at issue in this lawsuit. *See* 6/14/2016 P.M. Trans., Ex. C, at p. 460 ("A: There are components that are

4

the same. There are products that are similar. I'm not saying they're exactly the same."). However, under the express terms of the Supply Agreement, the restriction on Sycamore/Crimson's manufacturing of "Similar Products" only lasted one year. *See* Supply Agreement (Pl.'s Ex. 2), Ex. A, at p. 1, § 2. The Supply Agreement was terminated by Plaintiff on December 19, 2009. *See* Campagna Email (Pl's Ex. 177), Ex. D hereto; 6/14/2016 P.M. Trans., Ex. C at p. 415. There has been no evidence adduced in Plaintiff's case-in-chief that Crimson/Sycamore ever sold any "Similar Products" within a year after the termination of the Supply Agreement. Indeed, it would not be possible for Plaintiff to make any such showing as this Court has already determined that term is too indefinite to be enforced. (Doc. Nos. 52, 110).

Simply, there is no way that Plaintiff may legally prevail on its trade secret claim. Crimson/Sycamore's obligations or restrictions regarding its ability to manufacture products containing "substantially the same appearance" or "any part of the design" of Plaintiff's products were set in the Supply Agreement and expired after one year.[2] Plaintiff may not now try and entertain a trade secrets claim after it could not prevail on a breach of contract claim. Indeed, to allow Plaintiff to do so would be patently unfair as Crimson/Sycamore relied upon and abided by the terms of the Supply Agreement. It cannot now be sanctioned for its compliance with the Supply Agreement by being subjected to a collateral and inconsistent trade secrets claim. *Morris Silverman, Nilssen supra.*

---

[2] To the extent Plaintiff may argue that another section of the Supply Agreement may have prohibited Crimson/Sycamore's manufacture of products that contained "substantially the same appearance" or "any part of the design" of its products, any such claim would render the contract ambiguous at best. Plaintiff would have no case in such a scenario as Plaintiff drafted the Supply Agreement. *See* 6/14/2016 A.M. Trans., Ex. B, at p. 319. "An ambiguous contract as a matter of law must be construed against the drafter of the contract." *Bishop v. Lakeland Animal Hosp., P.C.*, 268 Ill.App.3d 114, 117, 664 N.E.2d 33, 36 (2nd Dist. 1994).

### 3. The Only Evidence Adduced Thus Far Regarding Any Identifiable Trade Secret Concerns Plaintiff's "Design" Which Cannot Form The Basis Of A Trade Secret Claim

To the extent Plaintiff is seeking to establish a trade secret case out of its drawings and designs, it is insufficient under Illinois law and judgment should be entered in favor of Sycamore/Crimson as a matter of law on any such claim. Plaintiff's President, Mr. Potts, testified that "drawings" and "design" are the same. *See* 6/14/2016 P.M. Trans., Ex. C, at p. 459. Peerless' reliance at trial on the Peerless "look and feel" to substantiate its trade secret claim is nothing more than a retread of its already dismissed trade dress claim.

Regardless, under Illinois law, "a design or process that can easily be ascertained from an examination of the product itself cannot be a trade secret." *Pope v. Alberto-Culver Co.*, 296 Ill.App.3d 512, 517, 694 N.E.2d 615, 618 (1st Dist. 1998); *see also United States Gypsum Co. v. LaFarge North America, Inc.*, 508 F.Supp.2d 601, 636 (N.D. Ill. 2007) ("...there generally can be no trade secret protection for a product that is available in the market"); *Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F.Supp.2d 919, 927 (N.D. Ill. 1999) (manufactured steel cannot be trade secret). No trade secret claim may be based upon a design as Plaintiff is attempting to assert in this case as Plaintiff's design is readily ascertainable from simply looking at its products which is publicly disseminated.

### 4. No Foundation For A Trade Secret Claim Based Upon The "Spec Packages" Has Been Laid

Presumably, Plaintiff's trade secret claim is premised upon the 30,000 plus pages of so-called "spec packages." However, Plaintiff did not display the 30,000 plus pages to the jury and Plaintiff called no witness in its case-in-chief who has ever actually examined the 30,000 plus pages or could testify that the 30,000 plus pages were ever sent to Sycamore. As such, no proper foundation was ever laid to admit the 30,000 pages. *See, e.g., Callahan*

*v. City of Chicago*, 78 F.Supp.3d 791, 824-25 (N.D. Ill. 2015) (citing FRE 602 and noting that a witness may only testify to matters to which the witness has "personal knowledge" and that "absent such a foundation, [a witness] offers only speculation...and mere speculation is not enough to satisfy the personal knowledge requirement..."). None of Plaintiff's witnesses – Potts, Schmitz, or Belcore – was able to testify that they had reviewed all 30,000 plus pages and could not therefore attest to their contents. It is simply not permissible to have a jury deliberate regarding the 30,000 plus pages and decide whether or not they contain "trade secrets" when they have not seen the 30,000 plus pages and have not heard testimony from any witness who has even looked at the 30,000 plus pages. No proper foundation was ever set for the admission of the 30,000 plus pages.

What Plaintiff has attempted to do in its case-in-chief (*i.e.*, dumping 30,000 plus pages without laying any foundation) has specifically been rejected by Illinois courts. It is not allowable for Plaintiff to point to thousands of pages as alleged "trade secrets" (which in this case have never even been looked at by any witness) and then place the burden on Defendants to go through the 30,000 plus pages and refute their alleged "trade secrets." *United States Gypsum Co. v. LaFarge North America, Inc.*, 508 F.Supp.2d 601, 636 (N.D. Ill. 2007) ("USG cannot simply point to an 11,000-page document covering many diverse topics and assert that the entire document constitutes a trade secret that defendants must refute page-by-page"). This is a practice which is manifestly unfair and is not allowable under the law in any event.

### 5. No Evidence Of Any Willfulness Or Malicious Appropriation Has Been Adduced

Plaintiff seeks exemplary damages under 765 ILCS 1065/4 as part of its trade secret claim. Any such claim should not be allowed to be presented to the jury as no evidence has been adduced to establish any willfulness or maliciousness by Crimson/Sycamore. In fact,

7

the evidence adduced in Plaintiff's case-in-chief has established exactly the opposite. As detailed *supra*, Sycamore/Crimson abided by the terms of the Supply Agreement and did not manufacture any "Peerless Product" and did not manufacture any "Similar Products" in the period proscribed by the Supply Agreement.

Further, the evidence adduced has established that at the conclusion of the Supply Agreement, Sycamore/Crimson returned all the tooling and prints in its possession and reached settlement with Plaintiff regarding the minimal tooling and prints that could not be accounted for. *See* 6/15/2016 A.M. Trans., Ex. E, p. 606 ("Q: Okay. And once that payment was made, that concluded all the business regarding tooling and missing prints between Sycamore and Peerless, correct?; A: In regards to what was on that list, yes."); Def's Ex. 84, Ex. F. There is no evidence of any willfulness or maliciousness and judgment should be entered in Sycamore/Crimson's favor on this issue.

### B. Plaintiff's Has Not Carried Its Burden That Crimson Willfully Infringed

Plaintiff has utterly failed in its burden of establishing the elements necessary for a finding of willful infringement. In this regard, Plaintiff has produced no evidence of objective recklessness by Crimson in the infringement of the patent as required to obtain a verdict for willful infringement. Further, there is no evidence that Crimson knew of the high likelihood that it was infringing a valid patent, or this likelihood was so apparent that Crimson should have known of it. On the contrary, the uncontested evidence demonstrates that Crimson did not even know of the existence of the patent in suit and therefore could not have willfully infringed something it did not know existed.

#### 1. The Evidence Adduced In Plaintiff's Case Demonstrates an Absence of Willful Infringement

The evidence adduced in Plaintiff's case has established that Plaintiff has not and cannot meet its burden of proof. Specifically, the evidence demonstrates:

8

- Crimson did not know of the existence of the '850 patent at the time of its issuance;

- In fact, the patent did not issue until AFTER Mr. Gleyzer was terminated from Peerless;

- Prior to his termination, Peerless was pursuing a patent on the tilt mechanism, not the bracket, which ultimately gained the patent;

- Mr. Gleyzer had no knowledge of the patent application on the '850 bracket as his knowledge was limited to efforts to patent a tilt mechanism; and

- Peerless filed a request with the Patent Office to keep the '850 application secret, so there is no evidence Crimson had knowledge of the patent, much less willfully infringed it.

To succeed on its contention that Crimson infringed the patent willfully, Peerless must prove two things by clear and convincing evidence:

1. There was a high likelihood that Crimson's actions constituted infringement of a valid patent, regardless of Crimson's state of mind; and

2. Crimson knew of the high likelihood that it was infringing a valid patent, or this likelihood was so apparent that Crimson should have known of it.

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 553 F. Supp. 2d 939, 2008 U.S. Dist. LEXIS 24414 (N.D. Ill. 2008); *Beatrice Foods Co. v. New Eng. Printing & Litho. Co.*, 923 F.2d 1576, 1991 U.S. App. LEXIS 930, 17 U.S.P.Q.2D (BNA) 1553 (Fed. Cir. 1991).

### 2. The Undisputed Evidence Demonstrates Crimson Did Not Know About the '850 Patent and Therefore Could Not Have Willfully Infringed

At trial, Mr. Gleyzer testified that he did not know of the '850 patent at the time of its filing. In this regard, he testified:

> Q. You claim to be fully familiar with the patent in suit, don't you?
> A. I am now after I was sued by your client, absolutely.
> Q. You weren't fully familiar at the time, sir, at the time that it was filed?
> A. I had no idea about the '850 patent, absolutely not.
> Q. You had no idea about the '850 patent at the time this—
> A. No, this patent did issue until what, 2010, I believe it was.
> Q. So you knew about the work that was being done that led to the patent, correct?

> A. I knew that there was an application that was being filed for product – for products relating to – it was a tilt mount, in fact. Yes I did.

See 6/14/2016 P.M. Trans., Ex. B, at pp. 261-62.

> Q. To your knowledge did Peerless pursue the patent on the tilt mechanism?
> A. Ultimately, Peerless dropped the pursuit of the tilt – tilt design that's shown in this picture. The tilt mechanism entirely in fact.

*Id.*, at pp. 308-09.

The undisputed evidence also demonstrated Mr. Gleyzer was terminated from Peerless in 2008, two years before the '850 issued. *Id.*, at p. 242.

The file wrapper history of the '850 also reveals that Peerless filed a request to the Patent Office that the '850 application be kept secret. *See* Request and Certification Under 35 U.S.C. 122 (b)(2)(B)(i) (D.'s Ex. 43), Ex. G hereto, at p. 1. Thus, Mr. Gleyzer had no way of even knowing of the existence of a patent on brackets. Furthermore, Plaintiff failed present any evidence that it sent a cease and desist letter to Crimson regarding the patent. There is simply no evidence that Crimson knew or could have known about the '850 bracket patent. Absent the establishment of Crimson's knowledge of the patent, Plaintiff cannot prove willful infringement and Defendants are entitled to directed verdict.

In addition, Peerless made a critical change at that tail end of the prosecution in June 2011 of P'850 to add the bridge plate of claim 8 into the broad claims (Def's Ex. 43), Ex. G, at pp. 23-30. Adding this element made all the claims a three element combination. This addition was in response to the Patent Office rejecting all the claims as anticipated by the Bremmon reference (Def's Ex. 43), Ex. G, at pp. 36-41. Therefore, but for the addition of the bridge plate into the combination, P'850 would not have been issued as a patent. Crimson could not and did not know of this addition to gain allowance of P'850.

10

### C. The Evidence Adduced In Plaintiff's Case-In-Chief Has Established That Plaintiff Engaged In Inequitable Conduct Which Would Preclude A Judgment Being Entered In Its Favor On Its Patent Infringement Claim

Presenting a patent application before the United States Patent and Trademark Office requires that one exercise the "highest duty of candor." *Phillips Petroleum Co. v. U.S. Steel Corp.*, 673 F. Supp. 1278, 1336 (D. Del. 1987), *aff'd*, 865 F.2d 1247, 9 U.S.P.Q.2D (BNA) 1461 (Fed. Cir. 1989). As the Supreme Court stated in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 89 L. Ed. 1381, 65 S. Ct. 993 (1945), "those who have applications pending . . . have an uncompromising duty to report to [the Patent and Trademark Office] all facts concerning possible fraud or inequitableness underlying the applications in issue." 324 U.S. at 818 (citation omitted). If one "fail[s] to disclose material information, or submi[ts] . . . false material information, with an intent to mislead, . . . [and there is] a threshold degree of materiality of the nondisclosed or false information," then such conduct is deemed inequitable and all claims of the patent are unenforceable. *J. P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1559, 223 U.S.P.Q. (BNA) 1089 (Fed. Cir. 1984), *cert. denied*, 474 U.S. 822, 88 L. Ed. 2d 60, 106 S. Ct. 73 (1985).

Inequitable conduct consists of "acts of commission . . . as well as omission," and is established if "there is a substantial likelihood that a reasonable examiner would have considered the omitted reference or false information important in deciding whether to allow the application to issue as a patent." *Id.* at 1559 (citation omitted)(this is a more liberal standard than the "but for" test); *see also Dick Co. v. Burroughs Corp.*, 617 F. Supp. 1382, 1394-95 (N.D. Ill. 1985) and 37 C.F.R. § 1.56(d) (1987). Inequitable conduct encompasses acts which may not otherwise constitute fraud. *J. P. Stevens*, 747 F.2d at 1559.

Here, the patent examiner considered the addition of the bridge plate as critical to the

issuance of the patent. However, Peerless misrepresented and withheld material information, not only that the prior art contained full width bridge plates, but also misrepresented the purpose of the bridge plate. The '850 patent identifies the bridge plate as a "guiding surface." But this is misdirection, as demonstrated by the inventor, William Lam.

Specifically, on April 27, 2010 the PTO issued a Rejection of all claims in the case, except Claim 8, as being anticipated under 35 USC 102 (e) over the prior art Bremmon publication (Def. Ex. 43, Ex. G, at pp. 36 – 41). The Examiner "read" the ramp language of Claim 1 on the features of Bremmon holding that a claim only covering ramps was anticipated by Bremmon.

However, the Examiner then indicated, (Def. Ex. 43, Ex. G, at p. 40), that if Claim 8 was incorporated in the broad main Claim 1, it would be allowable. Claim 8 contained the language about the bridge plate *as an additional element* to the main ramped-bracket claim 1.

Attorney Marshall Brown responded on June 25, 2010, (Def. Ex. 43, Ex. G, at pp 23 – 30), by cancelling Claim 8, (*Id.*, at p. 25), and incorporating, word for word, the language of Claim 8 as an additional element in Claim 1, (*Id.*, at p. 24). The Claim 8 bridge plate element was added at the end of broad independent main Claim 1. Claim 1 now covers only a 3-element combination, including the bridge plate language of Claim 8 as the third element. Brown acknowledged that the claims had been rejected as anticipated by Bremmon, p. 29, and that he put the Claim 8 "feature of a guiding surface including a longitudinal surface directly joining [the] . . . side portions to each other." (*Id.*, at p. 29). The Examiner only then allowed the application and it issued as P'850 with the claims amended to include the Claim 8 bridge plate language as part of the combination. But for the addition of the bridge plate into the combination, P'850 would not have been issued as a patent.

However, during Plaintiff's case-in-chief, Mr. Lam testified that feature 110 of the '850

patent is a security plate for a safety screw, not a guiding surface. *See* 6/15/2016 A.M. Trans., Ex. H, at p. 518. The patent identifies feature 110 as a "guiding surface." Again, at trial, Mr. Lam admitted that the feature 110, the "guiding surface" is not intended to guide anything. *Id.* Misrepresenting the bridge plate, which the prior art used to retain a security screw, as a "guiding surface," that doesn't really guide anything is a fraud upon the patent office. The evidence shows that Plaintiff hid the true purpose of feature 110 in order to obtain its patent in a textbook example of inequitable conduct.

## IV. Conclusion

For all of these reasons, Defendants ask that judgment be entered in their favor and against Plaintiff on Plaintiff's trade secret and patent infringement claims.

                             CRIMSON AV, LLC and
                             VLADIMIR GLEYZER

                             By: /s/ Joseph R. Marconi

Joseph R. Marconi
Victor J. Pioli
Peter R. Ryndak
JOHNSON & BELL, LTD.
33 W. Monroe Street
Suite 2700
Chicago, Illinois 60603
(312) 372-0770

# CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2016, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

/s/ Joseph R. Marconi