# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PEERLESS INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 C 1768 |
| ) | |
| ) | Hon. Joan H. Lefkow |
| CRIMSON AV LLC, and VLADIMIR ) | |
| GLEYZER. ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Peerless Industries, Inc. filed suit against Crimson AV LLC and Vladimir Gleyzer (together, Crimson) alleging patent infringement.[1] On summary judgment, the court found Crimson liable for infringing certain claims of U.S. Patent No. 7,823,850 (the '850 Patent), which is owned by Peerless. (Dkt. 330.) The case then proceeded to trial on Crimson's three invalidity defenses, and the jury found the '850 Patent (1) was obvious as to all claims at issue; (2) was anticipated as to certain claims; and (3) failed to disclose best method. (Dkt. 613.) The court entered a judgment affirming the same. (Dkt. 612.)

Peerless now renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) as to the invalidity of its patent and, in the alternative, a motion for a new trial pursuant to Federal Rule of Civil Procedure 59. (Dkt. 623.) The facts surrounding the

---

[1] The suit also alleged trade dress infringement, tortious interference with contract, and conspiracy along with violations of the Illinois Trade Secrets Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and the Illinois Uniform Deceptive Trade Practices Act. Those claims are not at issue here.

case are well-known to the parties and will only be repeated here as necessary.[2] For the following reasons, Peerless's motion is granted in part and denied in part.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 50(b), judgment as a matter of law may be entered where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." *Kossman* v. *Ne. Ill. Reg'l Commuter R.R. Corp.,* 211 F.3d 1031, 1036 (7th Cir. 2000) (quoting Fed. R. Civ. P. 50) (internal quotation marks omitted) (alterations in original). After reviewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party, the court must determine whether the verdict is supported by sufficient evidence. *Id.*; *Tincher* v. *Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1997). In doing so the court will not make credibility determinations or weigh the evidence. *Schandelmeier-Bartels* v. *Chicago Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011). The court will only overturn a jury verdict if it concludes that "no rational jury could have found for the [non-moving party]." *Collins* v. *Kibort*, 143 F.3d 331, 335 (7th Cir. 1998) (internal quotation marks omitted).

Rule 59(a)(1) states that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1). When deciding whether to grant a new trial, the court "must determine whether the verdict is against the weight of the evidence, the damages are excessive [or insufficient], or if for other

---

[2] The court instructed Crimson to respond to Peerless's brief by first pointing to trial record evidence establishing certain brackets as prior art. Then, Crimson was to point to trial record evidence establishing obviousness, then anticipation, and, finally, best mode. (Dkt. 632 at 12:1–13:9.) Crimson chose not to follow these clear instructions, however. Rather, it submitted a fifty-eight page brief that does not track the issues identified by the court and is riddled with misrepresentations of both the law and the record. The court regrets to write that, more than once, Crimson cites words spoken by its lawyers as witness testimony.

2

reasons the trial was not fair to the moving party." *Shick* v. *Ill. Dep't of Human Servs.,* 307 F.3d 605, 611 (7th Cir. 2002) (brackets in original) (internal quotation marks omitted). "The misconduct of counsel . . . justifies a new trial where that misconduct prejudiced the adverse party." *Davis* v. *FMC Corp., Food Processing Mach. Div.*, 771 F.2d 224, 233 (7th Cir. 1985) (internal quotation marks omitted). A court should grant a new trial based on the erroneous admission or exclusion of evidence only if that error "had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *Agushi* v. *Duerr,* 196 F.3d 754, 759 (7th Cir. 1999) (internal quotation marks omitted).

## ANALYSIS

**I.     The Clear and Convincing Standard Applies to Claims of Invalidity**

Because a patent is presumed valid, the evidentiary burden to show facts supporting a conclusion of invalidity is clear and convincing evidence. *Transclean Corp.* v. *Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002) (citing *WMS Gaming, Inc.* v. *Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999)). Accordingly, when evaluating a motion for judgment as a matter of law following a trial, the court "must determine whether the jury had substantial evidence upon which to conclude that [the defendant] met its burden of showing invalidity by clear and convincing evidence." *Koito Mfg. Co.* v. *Turn-Key-Tech, LLC*, 381 F.3d 1142, 1149 (Fed. Cir. 2004). *See also Verizon Servs. Corp.* v. *Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1337–38 (Fed. Cir. 2010) (quoting *U.S. Surgical Corp.* v. *Ethicon, Inc.,* 103 F.3d 1554, 1563 (Fed.Cir.1997) ("In reviewing the jury verdict of obviousness, we review . . . whether there was substantial evidence whereby a reasonable jury could have reached its verdict upon application of the correct law to the facts, recognizing that invalidity must be proved by clear and convincing evidence."); *Princeton Biochemicals, Inc.* v. *Beckman Coulter, Inc.*, 411 F.3d 1332,

1336 (Fed. Cir. 2005) ("Regarding the obviousness issue in this case, this court must determine whether the jury had substantial evidence upon which to conclude that [the defendant] met its burden of showing invalidity by clear and convincing evidence.").

Crimson argues that because certain prior art relevant to its obviousness and anticipation arguments was not before the Patent and Trademark Office when the '850 Patent was prosecuted, no presumption of validity should attach; therefore, its burden to establish invalidity was lower. This is incorrect. Although "new evidence may carry more weight," the clear and convincing standard applies to all allegations of invalidity. *Microsoft Corp.* v. *i4i Ltd. P'ship*, 564 U.S. 91, 110, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011). Accordingly, the court reviews each invalidity argument under the clear and convincing standard.

## II. Invalidity

### A. Prior Art

Peerless argues that Crimson did not introduce clear and convincing evidence that either the TRK50B bracket or the VMPL2 bracket qualified as prior art under 35 U.S.C. § 102(a).[3] Under the statute, each bracket would be prior art if it were "known or used by others in this country" prior to the invention of the Peerless bracket.[4] 35 U.S.C. § 102(a).[5] "Known or used by others in this country" means knowledge or use that is accessible to the public. *Carella* v.

---

[3] Peerless originally argued that the brackets were not prior art under § 102(b) but, beginning with Crimson's response, the parties instead focus on § 102(a). Therefore, the court examines the brackets under § 102(a).

[4] The clear and convincing standard applies when determining whether the brackets are prior art. *See Sandt Tech., Ltd.* v. *Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) ("The presumption of validity requires those challenging validity to introduce clear and convincing evidence on all issues relating to the status of a particular reference as prior art.")

[5] The Leahy-Smith America Invents Act (AIA) amended sections of the patent code at issue in this case. The previous versions of §§ 102, 103, and 112 apply here because the relevant claims have effective filing dates prior to March 16, 2013, the date the AIA took effect.

*Starlight Archery & Pro Line Co.*, 804 F.2d 135, 139 (Fed. Cir. 1986) (citations omitted). William Lam, one of three inventors listed on the '850 Patent, testified that he invented the Peerless bracket in approximately early 2005. (Trial Tr. 498:25–500:12.)

To establish that the TRK50B was accessible to the public prior to Lam's invention, Crimson introduced a print-out of an Amazon.com page that stated the TRK50B was available on Amazon.com as of September 14, 2004. The page, which was hearsay, was admitted under Federal Rule of Evidence 807. (*See* dkt. 548 at 5–6 (denying motion in limine to exclude the print-out).) Additionally, Vladimir Gleyzer testified that a physical TRK50B bracket, admitted into evidence and examined by the jury, appeared to be identical to the TRK50B depicted on the print-out. While the court concedes that the admission of the evidence was questionable and Crimson's evidence was minimal, Peerless offered no evidence indicating that the TRK50B was not the item shown on the Amazon print-out or that the date shown on it was unreliable.[6] The jury was instructed on the relevant law (trial tr. 1321:11–24), and it found the TRK50B to be prior art. The court cannot reweigh the evidence introduced at trial, and, therefore, will not disturb the jury's conclusion that the TRK50B is prior art.

To establish that the VMPL2 was accessible to the public prior to Lam's invention, Crimson introduced a cut-sheet[7] for the bracket dated July 15, 2004. At trial, Peerless objected to the exhibit for lack of foundation, which the court overruled after Lam identified it.[8]

---

[6] Peerless cites *United States* v. *Jackson*, 208 F.3d 633, 637 (7th Cir. 2000), for the proposition that "[a]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretations of the hearsay exception rules." The court notes that the websites in that case involved content posted by users. Additionally, the internet and its place in commerce have significantly advanced since 2000.

[7] A cut-sheet is essentially a blueprint of the bracket.

[8] When asked, "But you recognize it as a cut sheet for Sanus, isn't that correct?," Lam responded, "Yes, it looks like a cut sheet from them." (Trial Tr. 1000:16–17, 22.)

Additionally, Vladimir Gleyzer testified that the VMPL2 was examined at Peerless at least as early as September 2004. (Trial Tr. 1235:10–1236:9.) Again, Peerless offered no rebuttal evidence. For the reasons given above, the court will not disturb the jury's conclusion.

### B. Obviousness

At trial, the jury found that the '850 Patent was obvious in light of the TRK50B and the VMPL2. A patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068 (Fed. Cir. 2012). Indeed, an invention must represent enough of a qualitative advance over earlier technology to justify the granting of a patent. *See Graham* v. *John Deere Co.*, 383 U.S. 1, 9, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966).

"Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *In re Capsule Patent Litig.*, 676 F.3d at 1068 (citing *Graham*, 383 U.S. at 17–18). These factual findings are known as the *Graham* factors. A party seeking to invalidate a patent as obvious must demonstrate, by clear and convincing evidence, "'that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'" *Id.* at 1068–69 (quoting *Procter & Gamble Co.* v. *Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)). District courts must consider the underlying factual findings first before deciding

whether to invalidate a patent in order to avoid the tendency to depart into "the tempting, but forbidden zone of hindsight." *Loctite Corp.* v. *Ultraseal Ltd.*, 781 F.2d 861, 873 (Fed. Cir. 1985) *overruled on other grounds by Nobelpharma AB* v. *Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998).

The court first reviews the *Graham* factors established at trial.[9]

### 1. Scope and Content of the Prior Art

As to the first *Graham* factor, Crimson asserts "the jury heard testimony concerning both the TRK50B and the Sanus VMPL2." (Dkt. 649 at 19.) The citations for this assertion essentially show only that the physical brackets were introduced into evidence. Crimson does not identify any additional testimony further discussing the "scope and content" of the prior art brackets.

### 2. Differences Between the Claims and the Prior Art

Often, parties ultilize expert testimony to compare prior art to challenged claims. *See, e.g.*, *Koito*, 381 F.3d at 1152. But an expert is not always necessary where, as here, the technology involved is simple. *See Centricut, LLC* v. *Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004). Crimson chose not to proffer an expert; instead, it asserts that the primary evidence of the second *Graham* factor is "the Examiner's findings, [Marshall] Brown's testimony about those findings and the physical brackets providing information to the jury on which its verdict was based." (Dkt. 649 at 23.)

Crimson has admitted that the examiner did not have the TRK50B or VMPL2 during the prosecution of the '850 Patent, (*id.* at 11), which clearly means the examiner could not have compared them to the claims at issue. Additionally, Crimson cites no testimony by Brown, an attorney for Peerless who assisted in prosecuting the patent, regarding the TRK50B or VMPL2.

---

[9] The *Graham* factors provide a framework for the obviousness inquiry; they are not, as Crimson seems to argue, elements to be satisfied or proved.

7

Indeed, Crimson does not identify any testimony comparing the differences between TRK50B or VMPL2 and the claims of the '850 Patent.[10] Nor does Crimson address the potential effects of any of these differences.[11] Instead, it was left to the jury to determine and interpret, with no guidance from Crimson, the differences between the prior art and the claims of the '850 Patent.

### 3. Level of Ordinary Skill in the Art

The level of skill in the art represents the "lens through which a judge or jury views the prior art and the claimed invention"—this lens "prevents those deciders from using their own insight, or, worse yet, hindsight, to gauge obviousness." *Al-Site Corp.* v. *VSI Int'l Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999). A person of ordinary skill in the art is referred to as a POSITA. Crimson did not present an expert at trial to opine on the appropriate skill level just prior to the invention claimed in the '850 Patent. It states, however, that the jury determined the level of ordinary skill based on "the references cited by the Examiner . . . the way the Examiner applied the prior art in his rejections . . . the extensive testimony of the background of those working in this field of AV mount design, Gleyzer, Lam, Walters and Plavnik . . . and the repeated testimony of the maturity of designs in the field, that brackets were simple." (Dkt. 649 at 43.) Considering this evidence, the court adopts the parties' assertion at summary judgment that a POSITA was "a person working in the AV mount field having familiarity with various brackets at that period." (Dkt. 412 at 14.)

### 4. Objective Considerations of Nonobviousness

---

[10] Differences clearly exist. For example, the TRK50B bracket has only one ramp to the '850 Patent's two, and the middle of the VMPL2 is composed of an arch.

[11] In its sur-reply, Crimson states that the TRK50B and the VMPL2 "were shown to the jury by Gleyzer and the elements compared." (Dkt. 665 at 13.) None of the citations supports any comparison.

Objective considerations of nonobviousness include evidence that focuses on the impact of the claimed invention on the marketplace rather than its technical merits. *See Stratoflex, Inc.* v. *Aeroquip Corp.*, 713 F.2d 1530, 1538–39. Here, Peerless points to Lam's testimony that Gleyzer praised his invention. (Trial Tr. at 500:10–12.) Crimson attempts to diminish this evidence by claiming there was no nexus between the praise and the particular invention, but the testimony makes clear that Gleyzer was praising Lam's invention.

### 5. Analysis

Considering all of the *Graham* factors, the court can only conclude that the only evidence Crimson introduced at trial to support its obviousness argument was the physical TRK50B and VMPL2 brackets for the jury to compare to the claims of the '850 Patent.[12] But "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co.* v. *Teleflex Inc.*, 550 U.S. 398, 418, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007). Rather, a party seeking to invalidate a patent as obvious must demonstrate, by clear and convincing evidence, "that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Capsule Patent Litig.*, 676 F.3d at 1068–69 (quoting *Procter & Gamble Co.* v. *Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)); *see also Cheese Sys., Inc.* v. *Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013) ("Even when all claim limitations are found in prior art references, the fact-finder must determine . . . whether there was motivation to combine teachings from separate references.").

---

[12] The court "imputes an understanding of English grammar and usage to the jury," *Finisar Corp.* v. *DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008), meaning the jury was able to read the '850 Patent.

Peerless argues that Crimson provided no evidence at trial of any motivation for a POSITA to combine elements from the TRK50B and the VMPL2. In response, Crimson argues that "[t]he motive to combine is self-evident from the TRK50B bracket, which had the combination in place." (Dkt. 665 at 14.) This statement seems to confuse an anticipation argument with an obviousness argument. Regardless, the court has difficulty understanding how the motivation to combine these *two* pieces of prior art could be supplied solely by *one* of them, and self-evidently at that. Crimson offers no case law to help the court understand.

Crimson also states that "[t]he motivation to combine was well known in the art as a retainer for a safety/security screw [which] was required to keep the TV in place, i.e., from falling off the wall plate."[13] (Dkt. 649 at 52.) None of its citations for that sentence, however, establishes that a retainer and safety screw are necessary components of a bracket. Rather, the citations simply discuss how a security screw functions. In fact, Jim Walters, Crimson's own witness, testified that at least one Crimson bracket can be locked onto a mount without a screw. (Trial Tr. at 809:24–810:1). While the court acknowledges that Walters's testimony may be referring to a bracket not in existence prior to 2005, the *VMPL2 itself* functions without a safety screw. Crimson seems to rely on language from *KSR* that "any need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the matter claimed." *KSR*, 550 U.S. at 420. But it has not identified a need or problem in the field of brackets.[14]

---

[13] Though Crimson's response is convoluted, there is no question that this is its argument, doubling down in its sur-reply: "The *requirement* of a safety screw and retainer was well known as proved to the jury." (Dkt. 665 at 14 (emphasis added).)

[14] Crimson appears to focus on why Lam may have been motivated to add or claim a guiding surface. (*See, e.g.*, dkt. 649 (arguing that "the bridge plate element that was the 'but-for its addition there would be no P'850' was obtained by Lam from Plavnik.").) Throughout its briefing, Crimson argues that, but for the addition of a guiding surface, the '850 Patent would be invalid as anticipated by *other*

In its closing, Crimson "conclude[d] the road map on . . . obviousness by calling on the jurors to use *their* common sense and draw inferences." (Dkt. 649 at 41 (emphasis added).) And, according to Crimson, "[t]he jury relied upon simple common sense visual evidence, not hindsight." If Crimson seeks to rely on anyone's common sense, it must be the common sense of a POSITA. But that alone would not be sufficient, as Federal Circuit cases "repeatedly warn that references to 'common sense'—whether to supply a motivation to combine or a missing limitation—cannot be used as a wholesale substitute for reasoned analysis and evidentiary support." *Arendi S.A.R.L.* v. *Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016), *cert. denied sub nom. Google, Inc.* v. *Arendi S. A. R. L.*, No. 16-626, 2017 WL 1040877 (U.S. Mar. 20, 2017); *see also Mintz* v. *Dietz & Watson, Inc.*, 679 F.3d 1372, 1377 (Fed. Cir. 2012) ("The mere recitation of the words 'common sense' without any support adds nothing to the obviousness equation.")

Crimson has not articulated, let alone identified in the record evidence of, any motivation for a POSITA to combine the elements of the TRK50B and VMPL2. Accordingly, no rational jury could have found the '850 Patent invalid as obvious.

### B. Anticipation

Anticipation refers to the prior invention or disclosure of a claimed invention by another. *See* 35 U.S.C. § 102. It is grounds for invalidating a patent because it means that the claimed invention lacks novelty.

"Although § 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis." *Finisar Corp.* v. *DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008). To anticipate a claim under 35 U.S.C. § 102, the prior art reference must first disclose each claim limitation, either expressly or inherently, so that a person of ordinary skill in the art

---

*references not at issue here*. But Crimson, as a result of its own trial strategy, is limited to focusing on the TRK50B and the VMPL2 and why a POSITA would have seen fit to combine elements from each.

could practice the invention without undue experimentation. *ClearValue, Inc.* v. *Pearl River Polymers, Inc.*, 668 F.3d 1340, 1344 (Fed. Cir. 2012); *Retractable Tech., Inc.* v. *Becton, Dickinson & Co.*, 653 F.3d 1296, 1309 (Fed. Cir. 2011) (*en banc*). Disclosure of each claim limitation, however, is not enough—the Federal Circuit has "long held that '[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim.*'" *Finisar*, 523 F.3d at 1334–35 (quoting *Connell* v. *Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983) (emphasis in original).

Here, the jury found that the TRK50B anticipated claims 1, 2, 3, 6, and 7 of the '850 Patent. (Dkt. 613 at 2.) "Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory." *Koito* 381 F.3d at 1152 (citation omitted). As mentioned above, Crimson did not proffer an expert. In its briefing, Crimson attempts to rely on the examiner to establish anticipation, but this lengthy effort is misguided. Because the examiner did not have the TRK50B in his possession during the prosecution of the '850 Patent, he could not have determined that the bracket contained all the required limitations.[15] Rather, it was again left to the the jury, and again with little to no guidance from Crimson, to read the claims and compare them with the physical TRK50B

---

[15] Crimson argues that claim language is not applicable to determinations of invalidity. (Dkt. 649 at 22.) This is clearly incorrect. *See Zenith Elecs. Corp.* v. *PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363–64 (Fed. Cir. 2008) ("[I]t is the presence of the prior art and its relationship to the claim language that matters for invalidity.")

12

bracket.[16] The court has read the claims and examined the TRK50B bracket and finds that substantial evidence existed for the jury to find claims 1, 2, 3, 6 and 7 anticipated.

Peerless argues that Crimson never addressed the "guiding surface" limitation found in those claims. Crimson replies that at trial it proved that "the 'guiding surface' didn't even exist," (dkt. 665 at 9), and therefore it could ignore showing that limitation. Crimson provides no case law to support this proposition, and the court is dubious of the assertion. The court need not decide the issue, however, because "a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic in necessarily present, or inherent, in the single anticipating reference." *Schering Corp.* v. *Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (citation omitted).

The '850 Patent claims "a guiding surface for guiding the positioning of one of the one or more retaining portions, the guiding surface including a longitudinal surface directly joining the side portions to each other." ('850 Patent Col. 7:1–4.) The parties previously agreed that, as to the need for claim construction, the only disputed term was the language providing for a "longitudinal surface." (*See* dkt. 330 at 8.) The court found the longitudinal surface to be structural (id. at 13), and a longitudinal surface is clearly found in the TRK50B.

That leaves the court to contemplate the significance of the potentional functional limitation imposed by a "guiding surface." Contrary to Crimson's assertions, Lam did not testify "that there is no guiding function in the '850 bracket." (Dkt 665 at 9.) He testified that the guiding surface is "not used for guiding when you're mounting a TV from bolt down, correct.

---

[16] Peerless cites to *Koito* as holding that a defendant is required to provide an element-by-element comparison with the prior art. In *Koito*, the Federal Circuit held that merely entering prior art into evidence without providing any accompanying testimony does not satisfy a requirement of substantial evidence to prove anticipation or obviousness. *Koito*, 381 F.3d at 1152. But the patent at issue in that case was not "easily understandable," as the court noted. *Id.* at 1152, n.4. Here, the '850 Patent is easily understandable.

It's not doing that but it's *used for guiding when you push a TV upward*." (Trial Tr. at 519:10–12 (emphasis added).) *See also id.* at 521: 16–18 ("It guides you and tell [sic] you that you have reached a point where you can't go up anymore but you're not at a correct position yet.").) Essentially, according to Lam, when the Peerless bracket is too low and the installer is pushing it upward, a retaining portion will at some point come into contact with the guiding surface, alerting the installer that placement is not correct without giving the installer a false feeling that the bracket is correctly installed. (*See id.* at 521:24–522:1.) That guiding purpose, however, is accomplished by the structure of the TRK50B every time that bracket is used, and is therefore inherent in the prior art. *See Toro Co.* v. *Deere & Co.*, 355 F.3d 1313, 1321 (Fed. Cir. 2004) ("Simply put, the fact that a characteristic is a necessary feature or result of a prior-art embodiment . . . is enough for inherent anticipation, even if that fact was unknown at the time of the prior invention.").

Accordingly, there was substantial evidence for the jury to find claims 1,2, 3, 6, and 7 of the '850 Patent anticipated by the TRK50.

**C.      Best Mode**

35 U.S.C. § 112(a) requires that a patent's specification "shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." 35 U.S.C. § 112(a); *Ateliers De La Haute-Garonne* v. *Broeje Automation USA Inc.*, 717 F.3d 1351, 1356 (Fed. Cir. 2013). This requirement precludes inventors "from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived." *In re Gay*, 309 F.2d 769, 772 (C.C.P.A. 1962). In order to establish invalidity based on an inventor's failure to disclose the best mode, a defendant must show that "the inventor possessed a better mode than was described in the patent, and that such better mode

14

was intentionally concealed." *Ateliers De La Haute-Garonne*, 717 F.3d at 1356–57. The first determination requires a subjective inquiry into the inventor's preference for a best mode of practicing the invention at the time the patent was filed. *Id.* at 1357. The second determination requires an objective inquiry into whether the inventor concealed the best mode of practicing the invention from the public. *Id.* (citing *Star Scientific, Inc.* v. *R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1373 (Fed. Cir. 2011)).

As to the first prong of the test, Crimson claims that Lam knew that using the box fold design as opposed to a welded plate to create the longitudinal surface was the best mode of practicing the invention. Crimson states that Lam testified that the box fold was cheaper to manufacture. Lam's testimony, however, reveals that he "was told by the manufacturing engineer [the box fold] is cheaper." (Trial Tr. at 1007:3.) Crimson also alleges that Lam testified that the box fold was easier to manufacture. In fact, he testified that he assumed it was easier to manufacture in high volume, but he was not involved in the manufacturing. (*Id.* at 1008:14–1009:3). Lam also testified that, "for low volume, the weld is by far the easier one. It's a micro-fraction of the cost of the other one." *Id.* at 1006:22–24.) Additionally, Crimson points to testimony that Peerless was using the box fold design exclusively by the beginning of 2005. The court is not convinced that Crimson has established that Lam had a best mode for forming the bridge plate. At best, the cited testimony is evidence of *Peerless's* preference.

Regardless, none of this helps Crimson, as "the best mode requirement does not extend to production details." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001) (citing *Young Dental Mfg. Co., Inc.* v. *Q3 Special Prods., Inc.,* 112 F.3d 1137, 1143 (Fed.Cir.1997).

Production details include manufacturing considerations such as costs and expected volume of production.[17] *Id*.

Accordingly, because Crimson can only identify manufacturing details to support its claim of invalidity, no rational jury could have found the '850 Patent invalid for failure to disclose best mode.

## CONCLUSION

For these reasons, Peerless's renewed motion for judgment as a matter of law is granted with respect as to obviousness and best mode and denied as to anticipation, and its motion for a new trial is denied. (Dkt. 623.) The court denies without prejudice Peerless's request for a new trial to determine damages. The case will be called for status on April 18, 2017. Before that time counsel shall meet to discuss how to bring this case to conclusion as soon as practicable, including the need for a trial on damages and the possibility of settlement.

Date:  March 31, 2017                      _____

U.S. District Judge

---

[17] Because this issue is dispositive, the court expresses no opinion on the additional arguments presented by the parties.