**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PEERLESS INDUSTRIES, INC.,

       Plaintiff,

vs.

CRIMSON AV, LLC,

       Defendant.

Case No. 1:11-cv-1768

Honorable Joan H. Lefkow

Magistrate Judge Susan Cox

**AMENDED REPLY IN SUPPORT OF DEFENDANT'S RULE 50(B)
MOTION FOR JUDGMENT AS A MATTER OF LAW**

## TABLE OF CONTENTS

I.   PEERLESS'S PROCEDURAL OBJECTIONS ARE MERITLESS ..........................1

    A.   Denial of Rule 50(a) Motion Has NO Bearing on Deciding a Rule 50(b) Motion ...............................................................................................1

    B.   Crimson's Motion is Timely .................................................................2

    C.   It is Irrelevant that Crimson's Rule 50(b) Motion Exceeds its Rule 50(a) Motion .........................................................................................3

    D.   Peerless's Repeated Objections to Crimson's Offer of Proof Are Improper ...............................................................................................5

II.  PEERLESS'S MATERIAL MISREPRESENTATIONS AND OMISSIONS ...........6

    A.   Peerless Withheld But-For Material Prior Art From The PTO ......................6

        1.   The Sanus VMPL2 Prior Art is But-For Material .................................6

        2.   Peerless's AL-101 is But-For Material ............................................8

        3.   Peerless ECN 6102 Design Bracket is But-For Material ....................11

        4.   Peerless DFPF-220/320 Bracket is But-For Material ..........................12

    B.   Peerless Committed Several Egregious Acts of Affirmative Misconduct .......................................................................................12

III. PEERLESS ACTED WITH DECEPTIVE INTENT ....................................15

    A.   Deceptive Intent May Be Inferred by Peerless' Pattern Lack of Candor ..........................................................................................15

    B.   Peerless's Litigation Misconduct Supports an Inference of Intent to Deceive ..........................................................................................16

i

## TABLE OF CONTENTS

*Am. Calcar, Inc. v. Honda Motor Co.*
768 F.3d 1185 (Fed. Cir. 2014). ..................................................................................8

*Amphastar Pharms. v. Aventis,*
856 F.3d 696 (9th Cir. 2017) .......................................................................................9

*Aptix Corp. v. Quickturn Design Systems, Inc.*
269 F.3d 1369 (Fed. Cir. 2001)..............................................................................17, 18

*Aventis Pharma S.A. v. Hospira, Inc.,*
675 F.3d 1324 (Fed. Cir. 2012)...............................................................................8, 9

*Berry Plastics Corp. v. Intertape Polymer Corp.,*
No. 3:10-cv-00076-RLY-WGH,
2015 U.S. Dist. LEXIS 131980 (S.D. Ind. Sep. 30, 2015) ..........................................4

*Cleveland v. Cleveland Elec. Illuminating Co.,*
538 F. Supp. 1336 (N.D. Ohio 1981)..........................................................................1

*Exergen Corp. v. Brooklands Inc.,*
290 F. Supp. 3d 113 (D. Mass. 2018) .........................................................................2

*Laborers' Pension Fund v. A & C Envtl., Inc.,*
301 F.3d 768 (7th Cir. 2002) ...............................................................................1, 3-4

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
481 F.3d 1371 (Fed. Cir. 2007)....................................................................................2

*Mantek Div. of NCH Corp. v. Share Corp.,*
780 F.2d 702 (7th Cir. 1986) ......................................................................................6

*Murata Mfg. Co. v. Bel Fuse, Inc.,*
422 F. Supp. 2d 934 (N.D. Ill. 2006) .........................................................................17

*Ohio Willow Wood Co. v. Alps S. LLC,*
735 F.3d 1333 (Fed. Cir. 2013)..................................................................................20

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,*
984 F.2d 1182 (Fed. Cir. 1993)....................................................................................2

*Regeneron Pharm., Inc. v. Merus N.V.,*
864 F.3d 1343 (Fed. Cir. 2017).............................................................................16-20

*Remco, Inc. v. Faber Brothers, Inc.,*
34 F.R.D. 259 (N.D.Ill.1964)......................................................................................1

*S. Clay Prods. v. United Catalysts, Inc.,*
43 F. App'x 379 (Fed. Cir. 2002)..............................................................................2, 4

*Therasense, Inc. v. Becton, Dickinson & Co.,*
649 F.3d 1276 (Fed. Cir. 2011)...............................................................................15, 20

*Urso v. United States,*
72 F.3d 59 (7th Cir. 1995) ...........................................................................................4

*U.S. v. Vest,*
116 F.3d 1179 (7th Cir. 1997);  .................................................................................10

*Walker v. State of California,*
200 F.3d 624, 625-627 (9th Cir. 1999) .......................................................................9

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEERLESS INDUSTRIES, INC., | |
| Plaintiff, | Case No. 1:11-cv-1768 |
| vs. | Honorable Joan H. Lefkow |
| CRIMSON AV, LLC, | Magistrate Judge Susan Cox |
| Defendant. | |

**AMENDED REPLY IN SUPPORT OF DEFENDANT'S RULE 50(B) MOTION
FOR JUDGMENT AS A MATTER OF LAW**

Defendant, CRIMSON AV, LLC ("Crimson"), by and through undersigned counsel, submits the following Reply In Support Of Defendant's Rule 50(b) Motion for Judgment as a Matter of Law:

## I.      PEERLESS'S PROCEDURAL OBJECTIONS ARE MERITLESS

### A.      Denial of Rule 50(a) Motion Has No Bearing on Rule 50(b) Motion

Peerless makes several frivolous procedural arguments to confuse the issues before this Court. Peerless begins its response by arguing that this Court denied Crimson's Rule 50(a) motion. However, the denial of a motion for a directed verdict in an earlier trial does not preclude consideration of a renewed Rule 50(b) motion. *Cleveland v. Cleveland Elec. Illuminating Co.,* 538 F. Supp. 1336, 1338 (N.D. Ohio 1981)(*citing Remco, Inc. v. Faber Brothers, Inc.,* 34 F.R.D. 259, 260 (N.D.Ill.1964)). The purpose of a Rule 50(a) motion is to permit the moving party to move for a judgment as a matter of law at any time before the case is submitted to the jury, so that the responding party has the opportunity to cure any defect in its case before it is submitted to the jury. *Laborers' Pension Fund v. A & C Envtl., Inc.,* 301 F.3d

768, 777 (7th Cir. 2002). Thus, it makes no difference to the outcome of this motion whether Crimson's Rule 50(a) motion was denied.

This Court merely denied Crimson's Rule 50(a) motion and made no findings whatsoever on the merits of Crimson's inequitable conduct defense. Trial Tr. 1185:13-15. This is not equivalent to dismissing Crimson's inequitable conduct defense. Rather, the Court decided not to resolve the inequitable conduct defense before submitting the other issues to the jury, which presented questions of fact intertwined with Crimson's inequitable conduct defense.[1]

### B. Crimson's Motion is Timely

Peerless's argument that Crimson's Rule 50(b) motion is two years late ignores the procedural posture of this case. Only this Court, and not a jury, can rule on Crimson's inequitable conduct defense. *See Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, 1190 (Fed. Cir. 1993). During the jury trial, Crimson presented evidence on Crimson's inequitable conduct defense, so that this Court could rule on it. Dkt. 548, p. 8. As the Court must decide whether Peerless engaged in inequitable conduct, the jury verdict had no impact on the inequitable conduct defense. Dkt. 613, pp. 1-9. The Court did not rule on it, and as such, the defense is still pending. Dkt. 548; Dkt. 612; Dkt. 741. Further, because the jury invalidated every claim of the '850 Patent, Crimson's inequitable conduct defense became moot. *See Liebel-Flarsheim Co. v. Medrad, Inc.,* 481 F.3d 1371, 1383 (Fed. Cir. 2007)(upholding district court's ruling that inequitable conduct defense was moot in light of the invalidity of the patents at issue); *Exergen Corp. v. Brooklands Inc.,* 290 F. Supp. 3d 113, 119 (D. Mass. 2018). Crimson's Rule

---

[1] Crimson's invalidity defense based on obviousness required the jury to determine whether the VMPL2 bracket, in combination with the TRK50B bracket, rendered the '850 Patent obvious. *See S. Clay Prods. v. United Catalysts, Inc.,* 43 F. App'x 379, 385-86 (Fed. Cir. 2002) ("In this case, the inequitable conduct issue has factual questions that are intertwined with the validity issues. The materiality of some of the prior art references is directly at issue both in the validity context and the inequitable conduct context. Therefore, it was inappropriate for the judge to make the legal determination without submitting the factual issues to the jury.")

50(b) motion became ripe again after the Court overturned the jury's verdict. Dkt. 672, p. 16. However, Crimson did not need to file it until after the Court entered a judgment on the merits of Peerless's infringement, which it did April 25, 2018.

### C. It Is Irrelevant that Crimson's Rule 50(b) Motion Exceeds its Rule 50(a) Motion

Peerless contends that Crimson's Rule 50(b) motion must be denied because it includes arguments not included in Crimson's Rule 50(a) motion presented at trial. Peerless's argument ignores the unusual procedural posture of this case. Crimson filed its Rule 50(b) motion after the Court entered a Stipulated Judgment settling Peerless's patent infringement claim on the eve of the damages trial. Crimson's inequitable conduct defense was still at issue at that time, and this Court ruled Crimson would be allowed to introduce evidence of inequitable conduct to the jury during the damages trial. Dkt. 741, p. 3. The fact that the damages trial was averted by a Stipulated Judgment prevented Crimson from presenting additional inequitable conduct evidence, and from filing a second Rule 50(a) motion setting forth the same arguments found in the Rule 50(b) motion at issue.[2]

Peerless's mechanistic approach is improper in the unusual circumstances presented by this case. While Rule 50(a) does require the moving party to "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment," this is only because the purpose of the rule is to allow the responding party to cure any defect in its case before it is submitted to the jury. *Laborers' Pension Fund v. A & C Envtl., Inc.,* 301 F.3d 768, 777 (7th Cir. 2002). The question is whether the basis for the rule has been satisfied, and on this issue the Seventh Circuit has stated, "Strict application of the rule is not required where 'previously

---

[2] The Stipulated Judgment did not dispose of Crimson's inequitable conduct claim. The Stipulated Judgment states in relevant part, "Plaintiff and Defendant Crimson stipulate and agree that all other rights of both parties on all other issues of the Litigation, including those to file post-trial motions and appeals, are fully preserved." Dkt. 749, p. 2.

-3-

presented arguments (in an earlier Rule 50(a) motion, in trial briefs, in motions *in limine*, on summary judgment, or otherwise) have made the moving party's position clear for the court and opposing party.'" *Berry Plastics Corp. v. Intertape Polymer Corp.,* No. 3:10-cv-00076-RLY-WGH, 2015 U.S. Dist. LEXIS 131980, at *9 (S.D. Ind. 2015)(citing *Laborers' Pension Fund v. A & C Envtl., Inc.,* 301 F.3d 768 (7th Cir. 2002) and *Urso v. United States,* 72 F.3d 59 (7th Cir. 1995).).

In *Labors' Pension Fund v. A & C Envtl., Inc.,* the Seventh Circuit disregarded an argument analogous to Peerless's, in which the defendant argued that the plaintiff's "pre-verdict motion for JMOL did not preserve its arguments because the motion was not sufficiently specific." *Laborers',* 301 F.3d at 777. In that case, the Court stated that the purpose of the rule was satisfied because the defendant was put on notice of the grounds for the plaintiff's Rule 50(b) motion by plaintiff's summary judgment and motion *in limine* on those issues. *Id.* at 777-78. As these arguments were made "over and over again," the defendant was made well aware of the basis of the plaintiff's motion, and the function of Rule 50 had been served. *Id.*

Like the plaintiff in *Laborers',* Crimson's arguments in its Rule 50(b) motion have been made "over and over again" in other motions before this Court. Peerless itself recognizes this fact, and argues as much throughout its brief as to nearly every issue Crimson raised. Dkt. 772, pp. 5, 16, 18-21, 25, 27, 32.[3] A review of Crimson's motion for summary judgment, the supporting statement of undisputed facts, and the supporting reply brief, shows Crimson already argued all of the grounds that support its inequitable conduct argument presented in its Rule

---

[3] The mere fact that this Court denied Crimson's motion for summary judgment as to inequitable conduct has no bearing on whether Crimson has proven that Peerless committed inequitable conduct before the PTO during the first trial; at summary judgment, the question of whether the prior art references at issue anticipated the '850 Patent were still questions of fact that needed to be decided by the jury. *See S. Clay Prods. v. United Catalysts, Inc.,* 43 F. App'x 379, 385-86 (Fed. Cir. 2002). The numerous instances in which Peerless advances the argument that different arguments within Crimson's Rule 50(b) motion should be disregarded because Crimson's argument was rejected at summary judgment should be disregarded because such a ruling is not dispositive of the issue. Dkt. 772, p. 5, 16, 18, 19, 20, 21, 25, 27, 32.

50(b) motion. Dkt. 411, pp. 14-41; Dkt. 412, pp. 20-22; Dkt. 461, pp. 26-31. The "four references" that Peerless curiously fails to name specifically in its response are discussed at length in Crimson's motion for summary judgment and statement of undisputed facts. Dkt. 412, pp. 6-19; Dkt. 461, pp. 2-26. Peerless responded to Crimson's motion for summary judgment, and as such was put on notice of the factual basis of Crimson's inequitable conduct claims. Dkt. 443, pp. 19-22. These issues were also litigated in Crimson's responses to Peerless's pre-trial motions *in limine*. Dkt. 530, Dkt. 722. Peerless concludes its argument by claiming Crimson did not cite to the trial record to support its Rule 50(b) motion, and the unsupported argument(s) must be stricken. Crimson repeatedly cited to the trial transcript to support factual assertions made in its Rule 50 motion. Dkt. 758, pp. 3, 4, 6-12, 14-22. Ironically, Peerless did not cite to those portions of Crimson's argument allegedly unsupported by the trial record. For that reason alone the Court must disregard Peerless's argument. Dkt. 772, p. 5-6.

### D. Peerless's Repeated Objections to Crimson's Offer of Proof Are Improper

Peerless argues that Crimson's reliance on the offer of proof containing Plavnik's testimony barred at the jury trial is improper. Dkt. 772, pp. 10, 16-17, 28-30. It also claims Crimson referred to the offer of proof as a declaration, and that it cannot be treated as Plavnik's testimony because it was signed by Crimson's counsel. Peerless does not identify where in Crimson's brief Crimson made these assertions, and cites to no case law to support its contention that Crimson's use of an offer of proof in place of barred trial testimony is improper. Existing case law stands for the opposite proposition.

Crimson's offer of proof is not improper by mere virtue of being offered by Crimson and not Plavnik, nor is it improper for Crimson to rely on the offer of proof in its Rule 50(b) motion as testimony when asking this Court to consider the merits of its inequitable conduct defense.

-5-

*Mantek v. Share Corp.*, 780 F.2d 702, 708 (7th Cir. 1986). The court did not bar Plavnik from testifying on inequitable conduct. Further, it is evident that Plavnik was prepared to testify to these facts because Plavnik submitted a declaration to this Court on April 5, 2013, in which Plavnik attests to all of the facts that appear in Crimson's offer of proof. Dkt. 192-1. Crimson asks this Court to consider whether Plavnik's excluded testimony, and declaration testimony, would have relevance to Crimson's inequitable conduct defense, which it does. Further, if Peerless had a problem with the offer of proof Crimson filed, it should have objected to the substance of it at trial. It did not. Accordingly, Peerless's argument should be disregarded.

## II. PEERLESS'S MATERIAL MISREPRESENTATIONS AND OMISSIONS

### A. Peerless Withheld But-For Material Prior Art From the PTO

#### 1. The Sanus VMPL2 Prior Art is But-For Material

Peerless' reliance upon this Court's determination that "no rational jury could have found the '850 Patent invalid as obvious" is irrelevant. Dkt. 772, p. 8. District Courts and the PTO employ different evidentiary standards and rules for claim construction. Therefore, even if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance under the PTO's different evidentiary standards. *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1189 (Fed. Cir. 2014).

Relevant to the materiality analysis, Peerless does not contest that the VMPL2 bracket is prior art, because it already tried and failed on two occasions. Dkt. 483, p. 16 and Dkt. 672, pp. 4-5. The Court determined that the VMPL2 is prior art. Nor does Peerless contest that under the broadest reasonable construction of the claims, the VMPL2 individually covered all three elements of the '850 Patent combination. Instead, arguing the VMPL2 is not material, Peerless cites to William Lam's trial testimony that he did not know if the VMPL2 bracket predated his

invention (Trial Tr. 996:10-11), questions the veracity of the cited and unrebutted Gleyzer trial testimony, and ignores completely the VMPL2 cut sheet dated July 16, 2004 introduced at trial and recognized by W.Lam. Peerless made the exact same argument in its *Reply to Crimson's Corrected Response to Plaintiff's Rule 50(b) and 59 Motion* (See Dkt. 658, pp. 12-13), and the Court rejected it.

Trial testimony and trial exhibits show the VMPL2 bracket included a back and side walls configured with upper and lower ramps and had a straight longitudinal bar "connecting" the side walls of the bracket within the meaning of this Court's construction. Trial Tr. 1235:25-1237:14; Dkt. 758-4, D-70/252. Gleyzer testified that by September 2004 Peerless had all the Sanus mounts, including the VMPL2, mounted in the tool room where they were "dissected" and "pored over by the engineers." Trial Tr. 1236:5-14. Gleyzer's testimony is corroborated by the VMPL2 cut sheet dated July 16, 2014. That evidence was unrebutted at trial.

Peerless also argues the VMPL2 is not but-for material because Peerless disclosed the bracket to the Examiner during prosecution of the continuation 8,517,322 Patent, and the patent still issued. What Peerless fails to tell the Court is that it excluded material information in its disclosures for the '322 Patent. Peerless falsely represented that the VMPL2 bracket dated from September 29, 2005, as evidenced from the PTO's note indicating as much on the first page of the patent. Dkt. 445-2, p. 1. It did not provide any information on the existence, at Peerless in the summer of 2004, of a physical VMPL2 bracket. Nor did it provide the PTO the VMPL2 cut sheet available on the internet as of July 16, 2004. Partial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective. *Aventis Pharma S.A. v. Hospira, Inc*., 675 F.3d 1324, 1335-36 (Fed. Cir. 2012).

Therefore, the later-issued continuation patent should not be considered. In any case, the prosecution and issuance of the '322 Patent is not at issue in this case and is irrelevant.

### 2. Peerless's AL-101 is But-For Material

The Court's decision to bar Crimson's on-sale bar invalidity defense does not preclude Crimson from arguing based on the evidence that the '850 Patent is unenforceable due to Peerless' failure to disclose its AL-101 brackets to the PTO. The issue here is whether the *Examiner* would have issued the '850 Patent had Peerless submitted the AL-101 brackets, not the on-sale bar. The Court must look to the standard used by the PTO to allow claims during examination. To wit: The court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction. *Am. Calcar, Inc.,* 768 F.3d at 1189. Peerless misrepresents Crimson's arguments. The AL-101 mount bracket is material because based on unrebutted trial testimony and in trial exhibit D-303, Crimson showed that the AL-101 includes all three features of the claimed invention, the ramps, side walls, and a longitudinal surface with a security mechanism (Trial Tr. 824:4-9; 861:22-862:1; 860:9, D-303); it showed the AL-101 was developed prior to May 21, 2004 (Trial Tr. 863:7-11; 865:6-7; 866:14-867:7) and was on sale in 2004 (Trial Tr. 824:17-19; ), all prior to the purported January 5, 2005 invention date of the '850 Patent.

In addition, Jim Walters, a Peerless engineer from 2001-2013, testified credibly that he believed William Lam, the inventor of the '850 bracket, designed the earlier version AL-101. (Trial Tr. 865:20-25.) Crimson's position that it would be obvious to a person skilled in the art that the out-turned safety screw retaining tabs in AL-101 are equivalent to in-turned safety screw retainer tabs is not unreasonably broad in light of the Court's finding that the longitudinal surface directly joining means "a straight surface connecting the two sides or ramps together that is not

limited to a single, unbroken surface." Even if the Court rejects that position, the AL-101 is material in combination with the VMPL2 or other withheld references discussed herein.

Further, Peerless asks the Court to strike Walters and Plavnik's testimony, but cites to a discovery rule to complain about Crimson relying on properly admitted trial testimony. Fed. Rule of Civ. Pro. 37 does create a mechanism for various remedies in response to perceived discovery violations; however, the pre-trial phase of this matter ended long ago. Peerless points to the trial transcript to show Peerless raised blanket, preliminary objections to Walters' testimony; however, Peerless does not cite to the record where Peerless renewed its objections, stated the objections with particularity, or sought or received a ruling on the objections. The objection was waived because Peerless never renewed or supported its position and the objections were never heard or ruled on by this Court. Judgment has been entered.

Hoping to avoid the consequences of its failure to follow-up on the issue, Peerless claims Rule 37's bar is automatic. A host of ostensibly "automatic" rules are deemed waived if a party fails to seek the relief within the allotted time. *Walker v. State of California,* 200 F.3d 624, 625-627 (9th Cir. 1999)(enumerating examples). A party must preserve its Rule 37 objections by motion, objection at trial, and seeking a ruling on the objections. When an evidentiary objection is made, but no ruling is given, and the objecting party fails to seek a ruling on the objection, the objection is waived, the evidence comes in and may be considered for all purposes. *Amphastar Pharms. v. Aventis,* 856 F.3d 696, 710 (9th Cir. 2017)(Rule 26 and 37 objections waived and issue not preserved for appeal if ruling not sought from trial court). Where a court has heard an objection and granted the objecting party an opportunity to raise their objection at a later date, if the objecting party fails to re-assert the objection and seek a ruling, the objection is waived. *U.S.*

*v. Vest,* 116 F.3d 1179, 1189 n. 4 (7th Cir. 1997). Peerless did not ask this Court to strike Walters's testimony before or after trial. As such, Peerless waived this objection.

Similarly, Peerless's contention that an inequitable conduct defense was not within the allegations of its complaint is misplaced. Peerless explicitly alleged in its Third Amended Complaint that the '850 Patent was "duly and legally issued" by the PTO and that "Peerless is the owner of all right, title, and interest in and to the inventions covered by the '850 Patent, and Peerless is entitled to receive all damages and the benefits of all other remedies for Crimson AV's infringement." Dkt. 55, pp. 9-10. Implicit in Crimson's inequitable conduct defense is the argument that the '850 Patent was not "duly and legally issued" because Peerless repeatedly defrauded the PTO to secure the issuance of the '850 Patent. Further, Crimson alleges that because of this inequitable conduct, Crimson did not infringe the unenforceable '850 Patent, and Peerless is not entitled to recover damages or benefits from the '850 Patent. Thus, as disclosed, Walters' testimony is probative to an inequitable conduct argument. Peerless itself disclosed Walters as a potential witness on the design of Peerless's products, and as such cannot now claim surprise because Crimson called Walters at trial. Dkt. 758-15.

Likewise, Peerless's argument that Plavnik's testimony cannot be relied on for an inequitable conduct defense is nonsensical. Dkt. 772, p. 13. There is no requirement that a party identify by name in their Rule 26 disclosures what cause of action or affirmative defense a particular witness is being offered to support, nor does Peerless cite to any authority. The disclosed subject matter of Plavnik's testimony covers factual assertions supporting the inequitable conduct defense, and as such, Plavnik was properly disclosed. Dkt. 595, p. 2.

### 3. Peerless ECN 6102 Design Bracket is But-For Material

Peerless does not contest that the ECN 6102 design bracket contains all three elements of the '850 Patent. Dr. Plavnik testified that the product depicted in "Exhibit 1,"[4] which was the '850 Patent, was already developed by the time W. Lam began working at Peerless. Trial Tr. 906:1-18; 908:3-5; 918:16-23. Moreover, Dr. Plavnik testified the brackets depicted in the '850 Patent were shown at the CEDIA show (Trial Tr. 906:1-7), which took place in September 2004 (Trial Tr. 1236:5-7.) Peerless did not rebut any of the above evidence. Rather it claims "[b]ecause Crimson was barred from arguing the on-sale bar, Crimson is barred from arguing that there was inequitable conduct based on the ECN 6102 bracket allegedly being on sale." This is nonsensical, misunderstands the inequitable conduct analysis, and simply does not apply. The Court permitted Crimson to elicit facts on the CEDIA conference, sales to Wal-Mart in September 2004, and Dr. Plavnik's inventive contributions, but to the extent that this evidence goes to issues other than the precluded defenses. Dkt. 548, p. 8. The evidence goes to inequitable conduct, and the relevant analysis is whether the PTO would have issued the '850 Patent had Peerless timely submitted the ECN 6102 drawings from October 2004 to the PTO. Unrebutted evidence shows ECN 6102 is material. There is no evidence to the contrary.

After more than seven years of litigation, Peerless for the first time argues the ECN 6102 design bracket was cumulative of U.S. Patent No. 7,334,766 ("Legertwood"). Peerless does not however cite to any trial testimony or anything in the record to support its position, and as such, waived this argument. Dkt. 772, p.16. Regardless, the Legertwood reference proves Crimson's point that Peerless deliberately mischaracterized the bridge plate in Fig 3 of the '850 Patent, as a guiding surface. Had its true function as a safety screw retainer been drawn to the Examiner's

---

[4] There is no ambiguity in this testimony, as Peerless suggests in its Response on page 16, fn 12. Trial Tr. 918:16-23.

attention, the Examiner would have considered the safety screw material. Unlike the Legertwood reference, ECN 6102 has the bridge plate in the same orientation as Fig 3 claimed elements and functions as a "guiding surface." Further, Legertwood is not cumulative because the Examiner first cited it on January 8, 2009, so he did not rely on it, and it was not relevant beyond showing mounting brackets. Brown did not mention Legertwood in response to the Examiners citation of it, so they did not raise it.

### 4. Peerless DFPF-220/320 Bracket is But-For Material

Peerless confuses the inequitable conduct analysis with an invalidity argument and provides no substantive response to Crimson's argument. Peerless's mount model DFPF-320 was made commercially available in October 2004, and it included a pair of ECN 6102 brackets as seen in Trial Exhibit D-94/327, installation and assembly instructions for Peerless models D-FPF-320 and D-FPF-320S, approved October 6, 2004 and issued on October 7, 2004. Dkt. 602. The Exhibit shows the DFPF-220/320 bracket is but-for material because it has all three elements in the '850 Patent. The October 7, 2004 date indicates Peerless had this information prior to the conception date of the '850 Patent but did not disclose it to the PTO.

### B. Peerless Committed Several Egregious Acts of Affirmative Misconduct

The declaration the '850 Patent inventors submitted to the PTO represented 1) they did not know or believe "that the same invention was ever known or used by others in the [U.S.], or described in any printed publication in any country," before they invented it; and 2) "that the same invention was patented or described in any printed publication in any country, or in public use or on sale in the [US] for more than one year prior to the filing date" of the application. Trial Ex. D-43/158, p.180, 204-207, found in Dkt. 758-2.

As shown at trial, Peerless made and sold brackets containing some or all of the features claimed by the '850 Patent by selling mounting systems that utilized the Gennady Bracket, including models D-FPF-320, RTFPF-220, and AL-101 in mid-2004. Trial Tr. 499:10-11; 894:12-16; 860:9-863:20; 999:12-1001:3; 1235:10-15; 1236:23-1237:1. Walters testified the Peerless AL-101 was sold in 2004 (Trial Tr. 824:1-19, 826:22-827:2), was described in a printed publication, the AL-101 Installation and Assembly Instructions dated May 21, 2004 (Trial Tr. 860:9-863:20; Trial Ex. D-303), that the AL-101 was a modified version of a prior design (Trial Tr. 866:14-24), and that he believed that the AL-101 was designed by Lam (Trial Tr. 865:20-25.) Further, it is undisputed that Lam had knowledge of the Gennady Bracket, D-FPF-320, and AL-101, and that Lam was aware of the VMPL2 as early as 2004. Trial Tr. 499:10-11; 824:1-19; 826:22-827:2, 860:9-863:20; 865:20-25; 866:14-24; 899:6-13; 894:12-16; 990:24-991:7; 995:24-996:4; 998:6; 998:1; 999:12-1001:3; 1235:10-15; 1236:23-1237:1.[5] Specifically, Lam testified at trial that he recognized the VMPL2 cut sheet, dated July 16, 2004. Trial Tr. 999:12-21. Trial exhibit D-94/327 showed a publication of D-FPF-320 Installation and Assembly instructions dated October 7, 2004, was printed more than a year before the '850 provisional application was filed. As each of the aforementioned brackets were on sale before October 14, 2004 (*i.e.*, more than one year prior to the date provisional application was filed on October 14, 2005), the declaration of the inventors is undeniably false, yet submitted to the PTO to secure the issuance of the '850 Patent by swearing they had no knowledge as to whether the same invention was in use, or disclosed by others in any printed publication, or in public use/on sale in the US for more

---

[5] At one point, Peerless objects to Crimson's citation to pages 1230, and 1235 to 1237 of the Trial Transcript because Gleyzer's testimony on page 1230 pertains to Derrick Lam and not William Lam. Dkt. 772, p. 9-10. Peerless does not cite to a specific place in Crimson's brief where this alleged mistake occurs, and should be disregarded on this basis. Further, Peerless's argument is misleading, because only the testimony on page 1230 pertains to Derrick Lam. Trial Tr. 1230. Gleyzer's trial testimony on pages 1235 to 1237 pertain to William Lam, and as such Crimson's citations support Crimson's factual assertions. Trial Tr. 1235-1237. Peerless improperly makes several statements of fact pertaining to William Lam that are completely irrelevant to its argument, and without citing to the record for this information. As such Peerless's argument should be stricken.

than one year prior to the filing date of the provisional patent application on sale before October 14, 2004 (*i.e.*, more than one year prior to the date provisional application was filed on October 14, 2005). Dkt. 758-2, p. 180; Trial Ex. D-43/158.

Peerless misrepresents that Lam testified at trial that the Gennady Bracket did not have ramps. W. Lam did not testify at trial that the depiction in his invention disclosure statement was an accurate depiction of a rampless Gennady Bracket. W. Lam testified the depiction of the bracket in his invention disclosure statement was not of a bracket that actually existed. Trial Tr. 990:24-991:7. This means Peerless's contention that W. Lam testified at trial that the Gennady Bracket lacked upper and lower ramps is false. Dkt. 722, p. 20. As W. Lam's invention disclosure statement explicitly states that his depiction of these brackets reflects the state of the prior art, and states that at that time the prior art did not incorporate any ramps, it is evident that Lam's representation of the prior art to Brown is likewise false. Trial Ex. D-83/310; Dkt. 758-6, p. 2. Further, the Examiner granted Peerless's patent only after Brown misrepresented the function of the bridge plate in the mounting bracket as a "guiding surface," and incorporated the "guiding surface" language into Claim 1.[6] Trial Tr. 954:21-957:5; 959:12-21; 961:3-962:15; Defendant's Trial Exh. 43, p. 15-19, 24-31, 39-42 in Dkt. 758-2. Lam himself testified at trial that it is incorrect to refer to the bridge plate as a "guiding surface" because it did not "guide anything" while mounting the audio-visual unit, and that Peerless's mount would still work without the "guiding surface" in question. Trial Tr. 518:23-519:2; 1011:4-1012:14. Lam testified the primary function of the bridge plate was to hold the safety screw, not to act as a guiding surface. Trial Tr. 518:23-519:2; 1011:4-1012:14. Claiming the bridge plate as a "guiding surface," despite the fact that it does not actually function to guide anything into place is a

---

[6] Prior to the incorporation of the bridge plate into Claim 1, the patent examiner found that a claim only covering the ramps was anticipated by *Bremmon*. Dkt. 758-2; Trial Tr. 954:21-957:5; 959:12-21; 961:3-962:15.

material misrepresentation as to the nature of the claimed invention, and thus constitutes egregious misconduct before the PTO. Trial Tr. 518:23-519:2; 1011:4-1012:14.

Peerless' waiver argument is equally unavailing, and part of its strategy of objecting to Crimson's motion solely on flawed procedural arguments, while ignoring substantive arguments. The evidence provided herein is cited to establish materiality of Peerless' omissions and affirmative misrepresentations. Thus, while Crimson was barred from asserting specific invalidity defenses at trial, the Court may consider evidence of Peerless's egregious conduct before the PTO as part of an inequitable conduct analysis.

### III.    PEERLESS ACTED WITH DECEPTIVE INTENT

#### A.    Deceptive Intent May Be Inferred By Peerless' Pattern Lack of Candor

Peerless misrepresents Crimson's argument as advocating for applying a sliding scale between materiality and intent that conflicts with *Therasense*.   Rather, Crimson alleges Peerless's (mis)conduct, enumerated in its Rule 50(b) motion, constitutes a pattern lack of candor, from which intent to deceive is the only reasonable inference.   As each single misrepresentation to the PTO constitutes egregious misconduct, the fact that Peerless made multiple demonstrates Peerless acted with a pattern lack of candor in prosecuting the '850 Patent. When viewed in context with Peerless's misrepresentations, it is evident Peerless's decision to withhold the known prior art references that embodied the '850 Patent during examination were each one more deceptive act in a pattern of deceptive acts. Further, the fact that Peerless asked the PTO not to publish Peerless's patent application prior to issuance, demonstrates Peerless had knowledge the patent would not survive a challenge at the patent office, and sought to avoid such a challenge by not disclosing the invention until the '850 Patent had already issued. Dkt. 758-2, p. 212.

**B.    Peerless's Litigation Misconduct Supports an Inference of Intent to Deceive**

Peerless's contention that Crimson waived the litigation misconduct theory by not preserving it in its preverdict motion or presenting it at trial should be disregarded, as this theory was not available to Crimson until after the first jury trial. The *Regeneron Pharms., Inc. v. Merus N.V.* opinion was issued on July 27, 2017.  Contrary to Peerless's unsubstantiated allegation that Crimson did not produce any evidence of Peerless's litigation misconduct, Crimson cited to the numerous motions to compel and supporting exhibits filed to compel Peerless to produce all documents related to the '850 Patent. Dkt. 758, p. 27, 28-36.  Peerless's argument that Crimson is asking this Court to "sift through seven years of case history to fact-check all of Crimson's bald assertions," is a fundamentally dishonest argument that ignores the evidence that was actually cited, as Crimson's brief clearly directs this Court to the relevant evidence necessary to conclude that Peerless committed litigation misconduct. Further, Peerless cites to no case law suggesting it was improper for Crimson to rely on motions and exhibits already filed with the Court through the CM/ECF system, or that such a practice amounts to treating "Judges like pigs, hunting for truffles buried in briefs," as Peerless so contends. Crimson cited to the evidence, Peerless just employed an ostrich defense.

In fact, Peerless's argument overlooks the plethora of evidence cited in Crimson's brief that supports Crimson's factual contentions, including those made in Crimson's motions to compel (Dkts. 198; 212-15, 297, 333, 354, 370, 381), Peerless's responsive arguments (Dkt. 210, pp. 1-5; Dkts. 224-26), Court orders compelling Peerless to produce these documents, and statements by the Court indicating that it is evident that Peerless did not produce all of the responsive documents, (Dkts. 234-35; 359, p. 3; 377; the hearing transcript from July 23, 2013, p. 10, 359, 377, and the hearing transcript from Dec 3, 2103 4:5-6; 5:8-10; 6:20-21; 8:7-9; 15:16-

-16-

17), letters from Crimson's counsel to Peerless complaining of discovery deficiencies, (Dkt. 386-1, pp. 1-3; Dkt. 297-9), and Plavnik's declaration that he designed the bracket claimed by the '850 Patent and that he recalled displaying the Peerless bracket at trade shows in 2004 (Dkt. 192-1). These motions and documents demonstrate that after Crimson discovered the existence of Plavnik and his importance to the origination and conception of the '850 Patent, Crimson sought to compel the production of documents on the origination and conception of the '850 patent, only to be denied by Peerless. *Supra*, pp. 31-32. To this day, Peerless's document production is not complete. *Supra*, pp. 31-32. It is telling that Peerless does not refute any of Crimson's evidence of Peerless's litigation misconduct, and does not state that it produced all of the conception or origination documents. *See* Dkt. 297, pp. 7-10.

Instead, Peerless asks this Court to disregard *Regeneron* in favor of the dissent's opinion based on *Aptix Corp. v. Quickturn Design Systems, Inc. Regeneron* is Federal Circuit case law and binding precedent on this Court. *See Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 938 n.4 (N.D. Ill. 2006). *Aptix* is not applicable to the facts here. In *Aptix* the district court invalidated a patent for unclean hands because of the patentee's litigation misconduct. *Aptix Corp. v. Quickturn Design Sys.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001). Inequitable conduct was not at issue in *Aptix. Id.* The *Aptix* Court noted that in cases where the unenforceability of the property right itself is properly at issue because of inequitable conduct before the PTO, the Court can declare the patent unenforceable. *Id. at* 1377. Peerless's argument ignores the entire portion of the majority opinion in *Regeneron* distinguishing *Aptix*.

The present case can be distinguished from *Aptix* on the same basis as *Regeneron* because Crimson's inequitable conduct defense put the enforceability of the property right at issue (*i.e.*, the '850 Patent). As in *Regeneron*, Crimson argues Peerless withheld a bevy of evidence from

-17-

discovery that would have proven Peerless deceived the PTO during prosecution of the '850 Patent, and that Peerless's litigation misconduct obfuscated Crimson's ability to discover that evidence and rely upon it at trial. Dkts. 198, 212-15, 297, 333, 354, 370, 381. Crimson is not alleging unclean hands as in *Aptix* and as such *Regeneron* applies. The fact that a federal district court has not yet applied *Regeneron* is meaningless, especially considering that the *Regeneron* opinion was published on July 27, 2017.

Instead of looking at the conduct at issue in *Regeneron* as cumulative conduct undertaken by a party acting to conceal its deceptive conduct before the PTO, Peerless asks this Court to look at the three specific factors applied in *Regeneron* and to apply them strictly here. Dkt. 772, p. 34. Peerless's argument overlooks the purpose of the *Regeneron* holding, which stated that Regeneron was being sanctioned because "Regeneron's behavior suggested 'a pattern' of misconduct." *Regeneron,* 864 F.3d at 136. Specifically, Peerless contends Crimson is not alleging "a violation of the local patent rule regarding infringement contentions or proposed claim constructions." Therefore, *Regeneron* cannot apply. However, like the defendant in *Regeneron*, Crimson did allege Peerless violated a local patent rule. Peerless's argument that Crimson admitted its initial disclosures included production numbers misrepresents Crimson's argument. Crimson's position is that Peerless produced a small portion of documents to feign compliance with LPR 2.1(a), but intentionally withheld documents that would have invalidated the Peerless patent. Peerless itself admitted it withheld documents relevant to LPR 2.1(a) in a response to one of Crimson's motions to compel and in Potts's and Berkley's Verifications. Dkt. 225, p. 3. In light of the fact that LPR 2.1(a) required Crimson to disclose information that certainly would have supported Crimson's inequitable conduct defense, LPR 2.1(a) is certainly more pertinent to an adverse inference in this case than the patent rule in *Regeneron*.

-18-

Peerless's contention that Crimson did not allege misconduct on the use of attorney-client privilege as a sword and shield is also not supported by the record. During trial, Peerless specifically objected to Brown testifying on the inventor's state of mind when applying for the '850 Patent and on information the inventor withheld from the PTO on the basis of attorney-client privilege. Trial Tr. 162-163. Likewise, Peerless used the attorney-client privilege and work product to object to Brown testifying at trial on his own knowledge or opinion formed as the lawyer prosecuting the '850 Patent. Trial Tr. 881-882. While this Court allowed Crimson to call Brown as a witness, the Court ordered Crimson not to ask him questions about his communications with Peerless. Trial Tr. 164; 885. The Court sustained Peerless' objections on the basis of attorney-client privilege. Trial Tr. 932, 987, 988. Likewise, Peerless objected to similar questions on Lam's discussions with Brown when filing the application for the '850 Patent. Trial Tr. 1004. Thus, at trial, Crimson was precluded from asking any questions on the prosecution of the '850 Patent. Likewise, the Potts Verification and Declaration indicates Peerless withheld an unspecified number of documents on the basis of privilege. Dkt. 370-8, pp. 2-3. These facts are curious given that Peerless itself concedes that in *Regeneron*, "the withholding of documents during discovery as to the mental impressions of prosecuting attorneys could potentially bear on the issue of intent to deceive during prosecution." Dkt. 772, p. 37. Peerless withheld that very information from Crimson in this case, and prevented it from being disclosed at trial.

The fact is Peerless has withheld a bevy of damning evidence it alleges was protected by attorney-client privilege. First, Peerless ignores the fact that it did not produce the entire ECN 6102 file. Second, Peerless produced a memorandum discussing Peerless's litigation strategy, in which Peerless's attorneys admitted this lawsuit was filed for an improper purpose. Dkts. 230;

Dkt. 231. Peerless asserted attorney-client privilege and petitioned the court for the memorandum's return. This memorandum is analogous to the Jones Memorandum in *Regeneron*, in that it is a privileged document that proves Peerless acted with improper intent when bringing its suit against Crimson. The fact that the attorney who prosecuted the '850 Patent, Marshall Brown, and Peerless's trial counsel are both partners at Foley & Lardner, further shows that Peerless had a greater motive to hide information about the prosecution of the '850 Patent. Trial Tr. 161. There is a nexus between prosecution and litigation counsel with the same intent to hide. Had Peerless used other lawyers to litigate this case, presumably they would have produced the critical origination and conception documents pursuant to LPR 2.1. The use of the same law firm for prosecution of the '850 Patent and litigation based on said patent certainly supports the conclusion that Peerless has used attorney/client privilege to shield the disclosure of information harmful to its case. Peerless contends that *Ohio Willow Wood Co. v. Alps S. LLC* is inapposite because it conflicts with *Therasense* and deals with reexamination proceedings before the PTO. Peerless's argument is incorrect because *Therasense* dealt with only inequitable conduct defenses arising from allegations that the patentee withheld material prior art references. Peerless cites to no case law to suggest that misrepresentations made during a reexamination proceeding cannot provide the basis for an inequitable conduct claim.

Finally, Peerless's egregious pattern of dishonesty before the PTO, in combination with withheld prior art references, and its litigation strategy to suppress evidence of origination and conception, all demonstrate the only reasonable inference that Peerless acted with intent to deceive the PTO in obtaining the '850 Patent. It is telling that Peerless does not even attempt to provide an alternative narrative casting its conduct in a benign light, and instead focuses on totally irrelevant procedural arguments.

WHEREFORE, Defendant CRIMSON AV, LLC respectfully requests that the Court grant Crimson's Rule 50(b) motion, hold the '850 Patent unenforceable due to Plaintiff's inequitable conduct before the U.S. Patent and Trademark Office, and for such other relief the Court deems just and proper.

Respectfully submitted,

CRIMSON AV, LLC and VLADIMIR GLEYZER

By: */s/ Peter R. Ryndak*

Joseph R. Marconi
Peter R. Ryndak
Ava L. Caffarini
JOHNSON & BELL, LTD.
33 W. Monroe St., Suite 2700
Chicago, IL 60603
(312) 372-0770

M. Miles Sukovic
Sukovic Law Group, PC
423 Central Avenue, Suite 203
Northfield, Illinois 60093
(312) 810-5123

-21-

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

/s/ Peter R. Ryndak